Harold J. McElhinny*
Kevin M. Coles*
Elizabeth G. Balassone*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
Email:  HMcElhinny@mofo.com
Email:  KColes@mofo.com
Email:  EBalassone@mofo.com

Colette Reiner Mayer*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile:  (650) 494-0792
Email:  CRMayer@mofo.com

Attorneys for Plaintiffs

*Pro hac vice motions forthcoming

Additional counsel listed on signature page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JANE DOE #1; JANE DOE #2; NORLAN FLORES, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>Jeh Johnson, Secretary, United States Department of Homeland Security, in his official capacity; R. Gil Kerlikowske, Commissioner, United States Customs & Border Protection, in his official capacity; Michael J. Fisher, Chief of the United States Border Patrol, in his official capacity; Jeffrey Self, Commander, Arizona Joint Field Command, in his official capacity; Manuel Padilla, Jr., Chief Patrol Agent-Tucson Sector, in his official capacity,<br><br>                    Defendant. | Case No.<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

I.    INTRODUCTION ............................................................................................1

II.   STATEMENT OF FACTS ................................................................................2

    A.   Tucson Sector Detention Practices ........................................................2

    B.   Representative Plaintiffs .......................................................................5

III.  ARGUMENT ....................................................................................................6

    A.   The Rule 23(a) Requirements for Class Certification Have Been
        Satisfied .................................................................................................6

        1.   The Proposed Class Is So Numerous That Joinder Is
             Impracticable ...........................................................................6

             a.   Numerosity ...................................................................6

             b.   Impracticability of Joinder ...........................................7

        2.   The Class Presents Common Questions of Law and Fact ...............8

        3.   The Claims of the Named Plaintiffs are Typical of the Claims
             of the Members of the Proposed Class...........................................11

        4.   The Named Plaintiffs and Their Counsel Will Adequately
             Protect the Interests of the Proposed Class and Counsel are
             Qualified to Litigate this Action ...................................................12

             a.   Named Plaintiffs...........................................................12

             b.   Counsel.........................................................................14

    B.   Plaintiffs' Proposed Class Meets the Legal Standard Under
        Rule 23(b)(2) ........................................................................................14

IV.   CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdullah v. United States Sec. Assocs., Inc.,*
　731 F.3d 952 (9th Cir. 2013), *cert. denied,*
　135 S. Ct. 53 (2014) ................................................................................................ 9

*Ali v. Ashcroft,*
　213 F.R.D. 390 (W.D. Wash. 2003), *aff'd,*
　346 F.3d 873 (9th Cir. 2003), *vacated on other grounds,*
　421 F.3d 795 (9th Cir. 2005)................................................................................ 7, 8

*Armstrong v. Davis,*
　275 F.3d 849 (9th Cir. 2001)................................................................................ 11

*Bates v. United Parcel Serv., Inc.,*
　511 F.3d 974 (9th Cir. 2007) (en banc)................................................................ 13

*Bell v. Wolfish,*
　441 U.S. 520 (1979) ............................................................................................... 1

*Brown v. Plata,*
　131 S. Ct. 1910 (2011)......................................................................................... 10

*Cnty. of Riverside v. McLaughlin,*
　500 U.S. 44 (1991) ............................................................................................... 13

*Ellis v. Costco Wholesale Corp.,*
　657 F.3d 970 (9th Cir. 2011)............................................................................. 9, 11

*Evon v. Law Offices of Sidney Mickell,*
　688 F.3d 1015 (9th Cir. 2012).............................................................................. 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
　528 U.S. 167 (2000)............................................................................................. 14

*Gen. Tel. Co. of the Sw. v. Falcon,*
　457 U.S. 147 (1982) ............................................................................................ 11

*Gray v. Cnty. of Riverside,*
　No. EDCV 13-00444-VAP,
　2014 U.S. Dist. LEXIS 150884 (C.D. Cal. Sept. 2, 2014) ............................... 10

*Haro v. Sebelius,*
　747 F.3d 1099 (9th Cir. Ariz. 2014)...................................................................... 13

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964)............................................................. 7

*Henderson v. Thomas*,
    289 F.R.D. 506 (M.D. Ala. 2012)..................................................... 8

*Hernandez v. Cnty. of Monterey*,
    No. 5:13-cv-2354-PSG,
    2015 WL 399975 (N.D. Cal. Jan. 29, 2015) .................................. 10

*Inmates of San Diego Cnty. Jail in Cell Block 3B v. Duffy*,
    528 F.2d. 954 (9th Cir. 1975)......................................................... 13

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004)........................................................... 1

*Leyva v. Buley*,
    125 F.R.D. 512 (E.D. Wash. 1989) .................................................. 8

*Lynch v. Rank*,
    604 F. Supp. 30 (N.D. Cal. 1984), *aff'd*,
    747 F.2d 528 (9th Cir. 1984), *amended on reh'g*,
    763 F.2d 1098 (9th Cir. 1985)..................................................... 8, 14

*Marcus v. Heckler*,
    620 F. Supp. 1218 (N.D. Ill. 1985)................................................. 14

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982)........................................... 6, 7, 12

*Ortega-Melendres v. Arpaio*,
    836 F. Supp. 2d 959 (D. Ariz. 2011), *aff'd*,
    695 F.3d 990 (9th Cir. 2012)......................................................... 10

*Parsons v. Ryan*,
    289 F.R.D. 513 (D. Ariz. 2014), *aff'd*,
    754 F.3d 657 (9th Cir.2014)............................................................ 7

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014), *reh'g denied*,
    784 F.3d 571 990 (9th Cir. 2015) (en banc) .............................. 6, 9, 15

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000)........................................................... 8

*Perez- Funez v. Dist. Dir. Immigration & Naturalization Serv.*,
    611 F. Supp. 990 (C.D. Cal. 1984) ...................................................................... 13

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010).................................................................... 6, 13

*Sherman v. Griepentrog*,
    775 F. Supp. 1383 (D. Nev. 1991)........................................................................ 8

*Wade v. Kirkland*,
    118 F.3d 667 (9th Cir. 1997)............................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2451 (2011) ........................................................................................ 9

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998)..................................................................... 12, 15

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001), *amended on other grounds*,
    273 F.3d 1266 (9th Cir. 2001)..................................................................... 14, 15

**STATUTES AND RULES**

5 U.S.C. § 706(1) ...................................................................................................... 1

Fed. R. Civ. P. 23................................................................................................*passim*

**OTHER AUTHORITIES**

*Sector Profile—Fiscal Year 2013*, United States Border Patrol , *available at*
    http://www.cbp.gov/sites/default/files/documents/U.S.%20Border%20Patrol%20Fisca
    l%20Year%202013%20Profile.pdf........................................................................ 2

*Sector Profile—Fiscal Year 2014*, United States Border Patrol,  *available*
    *at*  http://www.cbp.gov/sites/default/files/documents/USBP%20Stats%20FY2014%20
    sector%20profile.pdf............................................................................................. 2

William B. Rubenstein, et al., *Newberg on Class Actions*, § 3.12 at 198 (5th ed. 2011) .............. 6

1  **I.    INTRODUCTION**

2          The Due Process Clause of the Fifth Amendment to the United States Constitution

3  prohibits the federal government from punishing people who have not been convicted of a

4  crime.  *Bell v. Wolfish*, 441 U.S. 520, 536-39 (1979); *Jones v. Blanas*, 393 F.3d 918, 931

5  (9th Cir. 2004).  Yet in U.S. Customs and Border Protection ("CBP") detention facilities

6  throughout the Tucson Sector of the U.S. Border Patrol ("Tucson Sector"), thousands of

7  civil detainees are held under punitive, inhumane conditions of confinement.  These men,

8  women, and children are packed into overcrowded and filthy holding cells (or "hold

9  rooms") with the lights glaring through the night; exposed to brutally cold temperatures;

10  deprived of sleep; denied adequate food, water, health screenings, and medical care, and

11  basic sanitation and hygiene items such as soap, sufficient toilet paper, sanitary napkins,

12  diapers, and showers; and held virtually incommunicado while the government decides

13  their fates.  These unconscionable and plainly unlawful conditions exist in all of the

14  Tucson Sector facilities and are a direct result of Defendants' policies and practices.

15          Plaintiffs, who are civil immigration detainees confined by Defendants in the

16  Tucson Sector, have brought the instant suit as a class action to challenge these

17  conditions.  On behalf of themselves and others who are similarly situated, Plaintiffs seek

18  to enjoin Defendants from detaining them, and members of the proposed class, under

19  harsh, excessive, and punitive conditions of confinement in violation of the Due Process

20  Clause of the Fifth Amendment.  They further seek to compel Defendants to abide by

21  CBP's rules governing conditions of detention.  5 U.S.C. § 706(1).

22          Pursuant to rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure,

23  Plaintiffs respectfully move this Court to certify the following class with all named

24  Plaintiffs appointed as class representatives:

25                  All individuals who are now or in the future will be detained
                   for one or more nights at a CBP facility, including Border
26                  Patrol facilities, within the Border Patrol's Tucson Sector.

27

28

## II.     STATEMENT OF FACTS

### A.     Tucson Sector Detention Practices

CBP maintains and operates multiple detention facilities in the Border Patrol's Tucson Sector.  These facilities, located in the Cochise, Pima, Pinal, and Santa Cruz Counties of Arizona, contain holding cells in which individuals apprehended by CBP are confined pending processing and transport or release.

Of the 479,371 CBP apprehensions along the U.S.-Mexico border reported for Fiscal Year 2014, approximately 18 percent occurred in the Tucson Sector; CBP apprehended more than 200,000 individuals in the Tucson Sector in the past two years alone.[1]  Defendants thus confine tens of thousands of these apprehended individuals—men, women, and children—in its Tucson Sector holding cells annually and will continue to do so.

Plaintiffs are among those detained by the Tucson Sector Border Patrol.  They and those they seek to represent are all civil detainees who have been or will be confined for one or more nights in Tucson Sector holding cells subject to unconscionable conditions of confinement.

In all the Tucson facilities defendants confine detainees for one or more nights in holding cells, commonly known as "hieleras" (Spanish for "iceboxes") for their frigid temperatures.  These brightly lit cells are routinely crowded beyond their capacity, and are not designed for extended detention.  They are not equipped with beds, and Defendants generally do not provide detainees with bedding or blankets.  As a result, detainees must sleep on cold concrete floors and benches, and due to overcrowding, they frequently must sit or stand for extended periods of time.  (*See*, *e.g.*, Declaration of James Duff Lyall in Support of Plaintiffs' Motion for Class Certification (hereinafter "Lyall Decl."), Ex.1

---

[1] *Sector Profile—Fiscal Year 2014*, United States Border Patrol, *available at* http://www.cbp.gov/ sites/default/files/documents/USBP%20Stats%20FY2014%20sector%20profile.pdf; *Sector Profile—Fiscal Year 2013*, United States Border Patrol *, available at* http://www.cbp.gov/ sites/default/files/documents/U.S.%20Border%20Patrol%20Fiscal%20Year%202013%20Profile. pdf.

Pablo Lopez Ruiz Decl. ¶¶ 5, 11; Ex. 2, Julio Jimenez Tucum Decl. ¶ 7; Ex. 3, Adrian Tapia Rascon Decl. ¶ 7; Ex. 4, Aurelio Ignacio Morales-Soto Decl. ¶ 12; Ex.5, Anselma Angela Ambrosio Diaz Decl. ¶¶ 6, 7.)  As a result, detainees are unable to get adequate sleep, if sleep is possible at all.  (*See, e.g.*, Lyall Decl., Ex. 6, Fernando Munguilla Erasno Decl. ¶ 8; Ex. 7, Juan Jesus Padron Rios Decl. ¶ 13; Ex. 8, Guadelupe Felipe Gaspar Decl. ¶ 9; Ex. 9, Maria de Jesus Lopez Magdaleno Decl. ¶ 9; Ex. 10, Julio Chavez Ortiz Decl. ¶ 12; Ex. 11, Jose Buelna Camacho Decl. ¶¶ 14,15; Ex. 12, Jose Cruz Ruvalcaba Martinez Decl. ¶ 11; Ex.13, Brenda Chilel Lopez Decl. ¶¶ 7, 8; Ex. 14, Mario Roberto Zamora Diaz Decl. ¶¶ 9,11; Ex. 15, Dolores Gonzalez Martin Decl. ¶ 10.)

In all facilities, Defendants subject detainees to painfully low temperatures in the holding cells and do not provide detainees with clothing or blankets to alleviate the cold. In fact, Defendants force detainees, including young children, to remove extra layers of clothing.  (*See e.g.*, Lyall Decl., Ex. 16, Maria Ordonez Ortiz Decl. ¶ 23; Ex. 17, Jose Luis Vergara Jimenez Decl. ¶ 10; Ex. 18, Luis Alberto Franco-Cruz Decl. ¶ 7; Ex. 19, Odilia Velasquez Vasquez Decl. ¶¶ 8, 9; Ex. 20, Victor Hugo Rosas Garcia Decl. ¶ 8; Ex. 21, Valdemar Perez Perez Decl. ¶¶ 8, 23; Ex. 22, Araceli Castro Vasquez Decl. ¶¶ 5, 8, 13, 14.)  In some instances, agents threaten to turn down the temperature further if detainees complain or request that the temperature be turned up or, in the estimation of the guards, make too much noise. (*See, e.g.*, Lyall Decl., Ex. 23, Maria Lorena Lopez Lopez Decl. ¶ 17; Ex. 18, Luis Alberto Franco-Cruz Decl. ¶ 8; Ex. 24, Francisco Chay Quinones Decl. ¶ 8.)

In all the facilities Defendants systematically deprive detainees of basic hygiene items—soap, sufficient toilet paper, sanitary napkins, diapers for babies and toddlers— and provide detainees no opportunity to bathe.  (*See, e.g.*, Lyall Decl., Ex. 25, Veronica Rodriguez Alvarado Decl. ¶ 11; Ex. 26, Domitila Gomez Bartolom Decl. ¶ 14; Ex. 27, Jose Garcia Rodriguez Decl. ¶ 18; Ex. 28, Soledad Hernandez Yescas Decl. ¶¶ 11, 22; Ex. 29, Nelvia Mazariegos Morales Decl. ¶ 15; Ex. 30, Maura Velasquez Hernandez Decl. ¶¶ 17, 18; Ex. 10, Julio Celso Chavez-Ortiz Decl. ¶ 15.)  In addition, Defendants hold

detainees in unsanitary holding cells that are not regularly or properly cleaned, lack waste receptacles, and often have one or more non-functioning toilets.  (*See*, *e.g.*, Lyall Decl., Ex. 31, Cecilio Medina Valencia Decl. ¶ 9; Ex. 32, Celifora Rodriguez Juarez Decl. ¶ 11; Ex. 33, Nasario Gonzalez-Peleaz Decl. ¶ 9; Ex. 16, Maria Ordonez Ortiz Decl. ¶ 12; Ex. 34, Angel Hernandez Reyes Decl. ¶¶ 10, 11; Ex. 35, Flora Elizabeth Gonzalez Gomez Decl. ¶¶ 23, 24; Ex. 36, Irma Veronica Lima Galicia Decl. ¶¶ 19, 20, 21.)

Defendants do not mandate or provide adequate screening of detainees for health problems upon admission to these CBP detention facilities even though many detainees have medical conditions resulting from their journey through punishing desert environments.  In addition, Defendants do not consistently provide access to qualified medical personnel or medically appropriate administration of medicine, often refusing or failing to meet detainees' explicit pleas for medical treatment or medicine adequately. (*See*, *e.g.*, Lyall Decl., Ex. 37, Yuri Perez Lopez Decl. ¶¶ 21, 29; Ex. 38, Sequen-Tesen Reyes Ovidio Decl. ¶ 14; Ex. 9, Maria de Jesus Lopez Magdaleno Decl. ¶¶ 14 12, 13, 14, 27; Ex. 19, Odilia Velasquez Vasquez Decl. ¶ 19; Ex. 39, Adriana Trujillo Hernandez Decl. ¶ 4; Ex. 40, Luis Carlos Valladares Martinez Decl. ¶ 15; Ex. 41, Adrian Vasquez Morales Decl. ¶ 18; Ex. 5, Anselma Angela Ambrosio Diaz Decl. ¶ 10; Ex. 42, Judith Soledad Morales Perez Decl. ¶¶ 9, 16; Ex. 10, Julio Celso Chavez-Ortiz Decl. ¶ 15; Ex. 6, Fernando Munguilla Erasno Decl. ¶ 15; Ex.35, Flora Elizabeth Gonzalez Gomez Decl. ¶¶ 29, 30.)

Defendants deny detainees in these facilities, who often are dehydrated, hungry and sick when they are taken into CBP custody, sufficient access to clean drinking water or adequate amounts of edible food.  (*See*, *e.g.*, Lyall Decl., Ex. 43, Jesus Alfredo Mesa Barbosa Decl. ¶¶ 18, 32; Ex. 44, Reginalda Lopez Gomez Decl. ¶ 14; Ex. 45, Juan Reyes Martinez Decl. ¶ 28; Ex. 46, Gustavo Huerta Saenz Decl. ¶ 12; Ex. 47, Jessica Margarito Catarino Decl. ¶ 3; Ex. 26, Domitilia Gomez Bartolom Decl. ¶ 18; Ex. 48, Roberto Vargas Martinez Decl. ¶ 11; Ex. 5, Anselma Angela Ambrosio Diaz Decl. ¶¶ 13, 17; Ex. 30, Maura Velasquez Hernandez Decl. ¶¶ 17, 18; Ex. 42, Judith Soledad Morales Perez Decl.

¶¶ 12, 21; Ex. 11, Jose Buelna Camacho Decl. ¶ 20; Ex. 21, Valdemar Perez Perez Decl. ¶¶ 15, 25; Ex. 44, Reginalda Gonzalez Gomez Decl. ¶ 11; Ex. 49, Hugo Emilio Cuy Solis Decl. ¶¶ 20, 28; Ex. 36, Irma Veronica Lima Galicia Decl. ¶ 22.)

Defendants' policies and practices in these facilities ensure that the detainees are cut off from the outside world, including prohibiting telephone calls to family members or to counsel.  (*See*, *e.g.*, Lyall Decl., Ex. 37, Yuri Perez Lopez Decl. ¶ 20; Ex. 40, Luis Carlos Valladares Martinez Decl. ¶ 14; Ex. 41, Adrian Vasquez Morales Decl. ¶ 17; Ex. 50, Cesar Vergara Jimenez Decl. ¶¶ 13, 14.)

### B.    Representative Plaintiffs

Plaintiff Jane Doe #1 has been detained for approximately thirty hours in CBP custody in Tucson Sector.  During that time, Plaintiff Jane Doe #1 has been held in extremely cold cells and has had difficulty sleeping due to the cold, the lack of beds, and the lights being left on all night.  Plaintiff Jane Doe #1 has had no access to beds or bedding, showers, hygiene supplies, or to adequate food and water.  Plaintiff Jane Doe #1 has not received a medical screening.

Plaintiff Jane Doe #2 has been detained for approximately thirty hours in CBP custody in Tucson Sector.  During that time, Plaintiff Jane Doe #2 has been held in extremely cold cells with no access to beds or bedding, showers, hygiene supplies, or to adequate food and water.  Plaintiff Jane Doe #2 has not received a medical screening.

Plaintiff Norlan Flores has been detained on two occasions in CBP custody in Tucson Sector.  In 2007, Plaintiff Flores was detained for approximately seventy-two hours.  In 2014, Plaintiff Flores was detained for approximately thirty-six hours.  In both instances, Plaintiff Flores was held in extremely cold cells and was unable to sleep due to the severe cold, overcrowding, and lack of bedding.  Plaintiff Flores had no access to beds or bedding, showers, hygiene supplies, or to adequate food and water.  Plaintiff Flores did not receive any medical screening and was not able to contact his attorney or consulate.  Because of his prior detentions, Plaintiff Flores believes there is, and there is in fact, a

substantial likelihood that he will again be detained overnight in CBP custody in Tucson Sector.

The conditions confronted by Plaintiffs Jane Doe #1, Jane Doe #2, and Norlan Flores mirror those of the putative class members.  A detailed description of these conditions is set forth in the Complaint at ¶¶ 15-64.

## III.   ARGUMENT

This is the paradigmatic case for class certification, as it challenges Defendants' Sector-wide policies and practices that result in intolerable and unconstitutional conditions of confinement for Plaintiffs and the class members they seek to represent.

### A.   The Rule 23(a) Requirements for Class Certification Have Been Satisfied

Courts in this Circuit have a long history of certifying classes of detained and imprisoned individuals challenging conditions of confinement generally, and immigration detention policies and practices specifically.  *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 681-82 (9th Cir. 2014), *reh'g denied*, 784 F.3d 571 (9th Cir. 2015) (en banc); *Rodriguez v. Hayes*, 591 F.3d 1105, 1111 (9th Cir. 2010); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 372 (C.D. Cal. 1982).  Like the classes in these suits, the instant class satisfies the requirements for class certification under of rule 23(a) as discussed in detail below.

#### 1.   The Proposed Class Is So Numerous That Joinder Is Impracticable

##### a.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder is impracticable." A class with 40 or more members is presumed to be sufficient to satisfy the numerosity requirement.  William B. Rubenstein, et al., *Newberg on Class Actions*, § 3.12 at 198 (5th ed. 2011).

The proposed class far exceeds the minimum level needed.

1    The Border Patrol apprehends and detains tens of thousands of men, women and

2    children in its Tucson Sector annually.  Documents produced by CBP in response to a

3    Freedom of Information Act ("FOIA") request indicate that during a six-month period,

4    from January 1, 2013 to June 30, 2013, 72,198 individuals were detained in Tucson Sector

5    CBP facilities.  (*See* Declaration of Guillermo Cantor in Support of Motion for Class

6    Certification ¶ 6.)  The agency's FOIA response additionally shows that 58,083 of these

7    individuals, 80.4 percent of the total number detained, were in CBP custody for 24 hours

8    or longer.  (*See id.* at ¶ 10.)

9    Given the volume of apprehensions in the Tucson Sector, the number of

10   individuals who are or will be forced to spend one or more nights in a CBP Tucson Sector

11   holding cell is surely in the many thousands per year.  Moreover, "[w]here the exact size

12   of the class is unknown but general knowledge and common sense indicate that it is large,

13   the numerosity requirement is satisfied." *Orantes-Hernandez*, 541 F. Supp. at 370

14   (citation omitted); *see also Ali v. Ashcroft*, 213 F.R.D. 390, 408 (W.D. Wash. 2003), *aff'd*,

15   346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir.

16   2005) (citations omitted) ("[T]he Court does not need to know the exact size of the

17   putative class, 'so long as general knowledge and common sense indicate that it is

18   large.'") (citing *Perez- Funez v. Dist. Dir.*, *Immigration & Naturalization Serv.*, 611 F.

19   Supp. 990, 995 (C.D. Cal. 1984)).

20                    **b.    Impracticability of Joinder**

21   In addition to class size, the Court must consider the impracticability of redressing

22   the claims of detainees by joinder or individual lawsuits; neither is a practical solution

23   here. "[I]mpracticability does not mean 'impossibility,' but only the difficulty or

24   inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine*

25   *Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted); *Parsons v. Ryan*,

26   289 F.R.D. 513, 516 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014) (finding joinder

27   of thousands of inmates would be "impracticable, if not impossible").

28

First, joinder is impracticable where, as here, the geographic location of proposed class members includes multiple facilities spread across four counties in the Border Patrol's Tucson Sector. *See Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding that poor, elderly plaintiffs dispersed over a wide geographic area could not bring multiple lawsuits without great hardship). Second, joinder is impracticable where, as here, proposed class members, by reason of such factors as financial inability, fear of challenging the government, lack of understanding that a cause of action exists, and lack of representation are unable or unlikely to pursue their claims individually. *See Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) (noting that limited economic means may interfere with class members' ability to bring individual lawsuits and should be considered when analyzing impracticability of joinder). The proposed class members have little to no financial resources and no ability to contact family members or counsel while detained. In addition, these individuals often have limited if any familiarity with the legal process, including what rights they have. *See, e.g.*, *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989) ("[J]oinder of 50 individual migrant workers as plaintiffs would be extremely burdensome, especially in light of their . . . limited knowledge of the American legal system [and] limited or non-existent English skills).

Finally, where, as here, the class is inherently transitory, and "includes unnamed, unknown future members," joinder is impracticable. *Ali*, 213 F.R.D. at 408-09 (citations omitted); *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("the fact that the class includes unknown, unnamed future members also weighs in favor of certification"); *Henderson v. Thomas*, 289 F.R.D. 506, 510 (M.D. Ala. 2012) ("[T]he fluid nature of a plaintiff class—as in the prison-litigation context—counsels in favor of certification of all present and future members.") (citing *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

### 2.    The Class Presents Common Questions of Law and Fact

Rule 23(a)(2) requires questions of law or fact that are common to the class and

that "class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2451, 2551 (2011) (citation omitted).  To satisfy the commonality requirement, "[a]ll questions of fact and law need not be common."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citation omitted); rather, one shared legal issue can be sufficient, *Abdullah v. United States Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 53 (2014).  Upholding certification of a class of Arizona prisoners alleging systemic Eighth Amendment violations, the Ninth Circuit explained, "'[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'"  *Parsons*, 754 F.3d at 675 (citation omitted).

For a common question of law to exist, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct at 2551.  Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.*  (citation omitted).

Here, the class—individuals who have been or will be confined to a Tucson Sector holding cell for at least one night—shares a common core of salient facts and challenges policies and practices that exist in all Border Patrol Stations that hold detainees within the Tucson Sector.  The class members also share the following common questions of law:

- Whether, as set out in Plaintiffs' first and sixth causes of action and ¶¶ 15-64 of the Complaint, Defendants' policies and practices result in the deprivation of Plaintiffs' and putative class members' right to sleep, in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

- Whether, as set out in Plaintiffs' second and sixth causes of action and ¶¶ 15-64 of the Complaint,  Defendants' policies and practices result in the deprivation of Plaintiffs' and putative class members' right to hygienic and sanitary conditions, in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

1

2

3

- Whether, as set out in Plaintiffs' third and sixth causes of action and ¶¶ 15-64 of the Complaint,  Defendants' policies and practices result in the deprivation of Plaintiffs' and putative class members' right to adequate medical care, in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

4

5

6

- Whether, as set out in Plaintiffs' fourth and sixth causes of action and ¶¶ 15-64 of the Complaint,  Defendants' policies and practices result in the deprivation of Plaintiffs' and putative class members' right to adequate food and water, in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

7

8

9

- Whether, as set out in Plaintiffs' fifth and sixth causes of action and ¶¶ 15-64 of the Complaint,  Defendants' policies and practices result in the deprivation of Plaintiffs' and putative class members' right to warmth, in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"In a civil rights suit, 'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)), *aff'd*, 695 F.3d 990 (9th Cir. 2012). Defendants' system-wide policies and practices found in each of the Tucson sector facilities, result in inhumane and punitive conditions that violate the law and create a significant risk of serious harm to all class members.  The instant action is in line with numerous decisions following Dukes that confirm commonality is appropriate in civil rights cases alleging endemic system-wide deficiencies in detention conditions.  *See*, *e.g.*, *Hernandez v. Cnty. of Monterey*, No. 5:13-cv-2354-PSG, 2015 WL 399975, at *18 (N.D. Cal. Jan. 29, 2015) (without class actions challenging "systemic deficiencies in prison conditions," "it is unlikely that … prison conditions that violate the Eighth Amendment could ever be corrected by legal action" (quotations and citation omitted)); *Gray v. Cnty. of Riverside*, No. EDCV 13-00444-VAP (OPx), 2014 U.S. Dist. LEXIS 150884, at *109 (C.D. Cal. Sept. 2, 2014) (commonality satisfied where class challenged systemic policies —both written and unwritten—that governed the provision of medical and mental health care in County jails; *see also Brown v. Plata*, 131 S. Ct. 1910 (2011) (affirming class-wide injunctive relief to remedy inadequate medical and mental health care in all California prisons).

1    Here, Plaintiffs are subjected to CBP's systemic confinement practices and policies

2    and the common answer as to the legality of each set of resulting conditions will "'drive

3    the resolution of the litigation.'" *Ellis*, 657 F.3d at 981 (quoting *Dukes*, 131 S. Ct. at

4    2551).  For example, should this Court find that forcing civil detainees to sleep on the

5    floor, alone or in combination with other adverse conditions, deprives them of sleep in

6    violation of the Fifth Amendment's Due Process Clause, Plaintiffs will prevail on this

7    claim.  Necessarily there will be some factual variations in individual cases but these are

8    insufficient to defeat commonality.

9             **3.    The Claims of the Named Plaintiffs are Typical of the Claims of**
                     **the Members of the Proposed Class**
10

11    Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the

12    claims . . . of the class."  Meeting the typicality requirement follows from the presence of

13    common questions of law.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13

14    (1982).  To establish typicality, "a class representative must be part of the class and

15    possess the same interest and suffer the same injury as the class members."  *Id.* at 156

16    (quotations and citation omitted).  As with commonality, factual differences among class

17    members do not defeat typicality provided there are legal questions common to all class

18    members.  *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (recognizing that a

19    class of prisoners subject to discriminatory treatment by defendants would suffer different

20    injuries due to different disabilities, but  those "minor" differences were "insufficient to

21    defeat typicality").

22    The claims of the named Plaintiffs are typical of the claims of the proposed class.

23    As described in the Complaint, all named Plaintiffs have spent one or more nights in

24    Border Patrol holding cells within the Tucson Sector and have been exposed to the

25    appalling conditions in these cells that result from Defendants' policies and practices.

26    Plaintiffs seek to represent a class challenging Defendants' practices and policies and the

27    resulting unlawful detention conditions, which create a substantial risk of harm to

28    detainees.  The named Plaintiffs and putative class members are united in their interest

1    and injury, share a common core of salient facts, and raise common legal claims.  Thus,

2    the element of typicality is met.

3          **4.      The Named Plaintiffs and Their Counsel Will Adequately Protect
                   the Interests of the Proposed Class and Counsel are Qualified to
4                   Litigate this Action**

5          Rule 23(a)(4) requires that "the representative parties will fairly and adequately

6    protect the interests of the class."  "In making this determination, courts must consider

7    two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest

8    with other class members and (2) will the named plaintiffs and their counsel prosecute the

9    action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*,

10   688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted).  "Whether the class

11   representatives satisfy the adequacy requirement depends on 'the qualifications of counsel

12   for the representatives, an absence of antagonism, a sharing of interests between

13   representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Walters v.*

14   *Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (citation omitted).

15                       **a.      Named Plaintiffs**

16         The named Plaintiffs will fairly and adequately represent the interests of all

17   proposed class members as they seek declaratory and injunctive relief on behalf of the

18   class as a whole, share a common interest in ensuring the protection of their constitutional

19   rights, and have no interest antagonistic to other members of the class.  *See, e.g.*, *Orantes-*

20   *Hernandez*, 541 F. Supp. at 371.  The class members' mutual goal is to have the Court

21   declare Defendants' challenged policies and practices unlawful and to enjoin further

22   inhumane detention conditions.  All Plaintiffs are detained in Tucson Sector holding cells,

23   and have spent at least one night there, suffering from the harsh, punitive conditions at

24   issue.  All Plaintiffs contend that Defendants' policies and practices governing the

25   conditions in these facilities violate Plaintiffs' due process rights and CBP's own

26   guidelines on detention conditions.

27         The fact that a named Plaintiff may no longer be detained when this motion is

28   decided does not impact their ability to fairly and adequately represent the class.

1   *Perez-Funez v. Dist. Dir. Immigration & Naturalization Serv.*, 611 F. Supp. 990, 997-98

2   (C.D. (rejecting defendant's argument that because an immigration detainee representative

3   could win immigration relief and thus leave the class, he would be an inadequate class

4   representative).  The short-term nature of the detention makes the class members' claims

5   "inherently transitory" and protected under an exception to the mootness doctrine for class

6   actions.  The certification of the class would "relate back" to the original complaint,

7   overriding the intervening fact that a named plaintiff's individual claim has become moot.

8   *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (the mootness of the named

9   plaintiff's claim did not moot the action on behalf of a class of Medicare beneficiaries

10  when the claim was "inherently transitory" (quotations and citation omitted)); *Wade v.*

11  *Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997) (finding the district court could certify a class

12  of short-term inmates pursuant to the "relation back" doctrine even if the named plaintiffs

13  claims were moot); *see Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (when

14  named plaintiffs' claims have become moot, the "relation back" doctrine should apply if

15  the class is "inherently transitory" (quotations and citations omitted)); *Inmates of San*

16  *Diego Cnty. Jail in Cell Block 3B v. Duffy*, 528 F.2d. 954, 956 (9th Cir. 1975) (finding the

17  certification of a class of pretrial criminal detainees "relat[ed] back" to the filing of the

18  complaint when the original named plaintiffs' claims were mooted out before the court

19  could rule on the class certification motion (quotations and citation omitted).  Because of

20  the short-term nature of Plaintiffs' claims, Defendants' unlawful conduct will never be

21  redressed absent class-wide relief.  *Cf. Rodriguez v. Hayes*, 591 F.3d at 1123 (finding that,

22  without class certification, putative class members' claims would become moot before the

23  district court could come to a decision).[2]

24

25        [2] Plaintiffs have article III standing because "[i]n a class action, standing is
    satisfied if at least one named plaintiff meets the requirements"—i.e., alleges a personal
26  injury fairly traceable to the defendant's unlawful conduct and likely to be redressed by
    the requested relief.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)
27  (en banc).  Plaintiffs are filing their complaint simultaneously with the filing of this
    motion, and while currently detained by CBP under unconstitutional conditions of
28  confinement.  An injunction prohibiting CBP from so detaining Plaintiffs would redress

1

### b. Counsel

Plaintiffs also will be able to prosecute this matter vigorously and will adequately protect the interests of the absent class members. Counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch*, 604 F. Supp. at 37; *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985). Plaintiffs are represented by the ACLU Foundation of Arizona, the American Immigration Council, the National Immigration Law Center, the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and Morrison & Foerster LLP, which collectively have extensive expertise in class action litigation regarding the rights of immigrants and conditions of detention. Counsel have been counsel of record in numerous class actions and cases that successfully obtained relief for immigrant classes. (*See, e.g.*, Declarations of Mary A. Kenney, Victoria Lopez, Linton Joaquin (with exhibit), and Harold J. McElhinny in Support of Plaintiffs' Motion for Class Certification.) In sum, Plaintiffs' counsel will vigorously represent both the named and absent class members.

### B. Plaintiffs' Proposed Class Meets the Legal Standard Under Rule 23(b)(2)

Plaintiffs also meet the requirements of rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs challenge—and seek declaratory and injunctive relief from—systemic policies and practices that subject them and others similarly situated to inhumane and unconstitutional conditions of confinement. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (finding

---

Plaintiffs' injury. Because standing is determined as of the time the complaint is filed and need not be maintained throughout all stages of the litigation, it matters not that Plaintiffs might be released before an injunction is granted. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-91 (2000).

1    certification under rule 23(b)(2) appropriate "where the primary relief sought is

2    declaratory or injunctive"), *amended on other grounds*, 273 F.3d 1266 (9th Cir. 2001);

3    *Walters*, 145 F.3d at 1047 ("We note that with respect to 23(b)(2) in particular, the

4    government's dogged focus on the factual differences among the class members appears

5    to demonstrate a fundamental misunderstanding of the rule. . . .  It is sufficient if class

6    members complain of a pattern or practice that is generally applicable to the class as a

7    whole.").  Courts have found that "[e]ven if some class members have not been injured by

8    the challenged practice, a class may nevertheless be appropriate."  *Walters*, 145 F.3d at

9    1047.

10          As the Ninth Circuit has explained, rule 23(b)(2) "was adopted in order to permit

11   the prosecution of civil rights actions."  *Id*.  In this vein, courts have certified classes in

12   cases like this one that allege unconstitutional conditions of confinement resulting from

13   systemic policies and practices.  *See, e.g.*, *Parsons*, 754 F.3d at 687 ("injunctive relief

14   stemming from allegedly unconstitutional conditions of confinement are the quintessential

15   type of claims that Rule 23(b)(2) was meant to address").

16          Here Defendants have created and applied policies and practices that affect all

17   individuals who spend one or more nights in Border Patrol holding cells in the Tucson

18   Sector.  Defendants' actions meet the requirements of rule 23(b)(2) as Defendants' actions

19   are generally applicable to Plaintiffs and unnamed class members alike.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    **IV.    CONCLUSION**

2         For the foregoing reasons, Plaintiffs satisfy the requirements of rules 23(a) and

3    23(b)(2).  Accordingly, Plaintiffs respectfully request that the Court certify this case as a

4    class action as proposed by Plaintiffs and appoint Plaintiffs' counsel as class counsel.

5

6    Dated: June 8, 2015              By:   */s/ Harold J. McElhinny*
                                      _____

7                                          Harold J. McElhinny*
                                           Kevin M. Coles*
8                                          Elizabeth G. Balassone*
                                           MORRISON & FOERSTER LLP
9                                          425 Market Street
                                           San Francisco, CA  94105-2482
10                                         Telephone: (415) 268-7000
                                           Facsimile:  (415) 268-7522
11                                         Email:  HMcElhinny@mofo.com
                                           Email:  KColes@mofo.com
12                                         Email:  EBalassone@mofo.com

13                                         Louise C. Stoupe*
                                           Pieter S. de Ganon*
14                                         MORRISON & FOERSTER LLP
                                           Shin-Marunouchi Building, 29th Floor
15                                         5-1, Marunouchi 1-Chome
                                           Tokyo, Chiyoda-ku  100-6529, Japan
16                                         Telephone: +81-3-3214-6522
                                           Facsimile:  +81-3-3214-6512
17                                         Email:  LStoupe@mofo.com
                                           Email:  PdeGanon@mofo.com
18

19                                         Colette Reiner Mayer*
                                           MORRISON & FOERSTER LLP
20                                         755 Page Mill Road
                                           Palo Alto, CA  94304-1018
21                                         Telephone: (650) 813-5600
                                           Facsimile:  (650) 494-0792
22                                         Email:  CRMayer@mofo.com

23

24

25

26

27

28

1   Dated: June 8, 2015        By:             */s/ Linton Joaquin*

2                                Linton Joaquin*
Karen C. Tumlin*

3                                Nora A. Preciado*

4                                NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850

5                                Los Angeles, CA  90010
Telephone: (213) 639-3900

6                                Facsimile:  (213) 639-3911

7                                Email:  joaquin@nilc.org
Email:  tumlin@nilc.org

8                                Email:  preciado@nilc.org

9

10

11   Dated: June 8, 2015        By:              */s/ Mary Kenney*

12                                  Mary Kenney*
Emily Creighton*

13                                Melissa Crow*

14                                AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200

15                                Washington, DC 20005
Telephone: (202) 507-7512

16                                Facsimile:  (202) 742-5619

17                                Email:  mkenney@immcouncil.org
Email:  ecreighton@immcouncil.org

18                                Email:  mcrow@immcouncil.org

19

20   Dated: June 8, 2015        By:             */s/ Victoria Lopez*

21                                Victoria Lopez (Bar No. 330042)**
Daniel J. Pochoda (Bar No. 021979)

22                                James Duff Lyall (Bar No. 330045)**

23                                ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235

24                                Phoenix, AZ  85014

25                                Telephone: (602) 650-1854
Facsimile:  (602) 650-1376

26                                Email:  vlopez@acluaz.org

27                                Email:  dpochoda@acluaz.org
Email:  jlyall@acluaz.org

28

1

Dated: June 8, 2015

By: _____ /s/ Travis Silva
Travis Silva*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA  94105
Telephone: (415) 543-9444
Facsimile:  (415) 543-0296
Email:  tsilva@lccr.com

Attorneys for Plaintiffs

*Pro hac vice motions forthcoming
**Admitted pursuant to Ariz. Sup. Ct. R. 38(f)