Harold J. McElhinny*
Kevin M. Coles*
Elizabeth Balassone*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
Email:  HMcElhinny@mofo.com
Email:  KColes@mofo.com

Colette Reiner Mayer*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile:  (650) 494-0792
Email:  CRMayer@mofo.com

Attorneys for Plaintiffs

* Admitted pursuant to Ariz. Sup. Ct. R. 38(a)

Additional counsel listed on signature page

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JANE DOE #1; JANE DOE #2; NORLAN FLORES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Jeh Johnson, Secretary, United States Department of Homeland Security, in his official capacity; R. Gil Kerlikowske, Commissioner, United States Customs & Border Protection, in his official capacity; Michael J. Fisher, Chief of the United States Border Patrol, in his official capacity; Jeffrey Self, Commander, Arizona Joint Field Command, in his official capacity; Manuel Padilla, Jr., Chief Patrol Agent-Tucson Sector, in his official capacity,<br><br>Defendants. | Case No. 4:15-cv-00250-DCB<br><br>**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**CLASS ACTION**<br><br>**Oral Argument Requested**<br><br>**(Assigned to the Honorable David C. Bury)**<br><br>Action Filed: June 8, 2015 |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3
TABLE OF AUTHORITIES ...................................................................................ii

4
MEMORANDUM OF POINTS AND AUTHORITIES....................................2

5
I.      PROCEDURAL BACKGROUND .........................................................2

6
II.     FACTUAL BACKGROUND .................................................................2

7
III.    ARGUMENT .........................................................................................6

8
        A.      Limited Expedited Discovery Is Needed To Prevent
                Irreparable Physical And Psychological Harm To Future Civil
9
                Detainees ....................................................................................7

10
        B.      Good Cause Exists For Limited Expedited Discovery ..............7

11
IV.     CONCLUSION ...................................................................................12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) ...................................................................... 9

6

7

*Meritain Health Inc. v. Express Scripts, Inc.*,
No. 4:12-CV-266-CEJ, 2012 WL 1320147 (E.D. Mo. Apr. 17, 2012) ........................ 8

8

9

*Monsanto Co. v. Woods*,
250 F.R.D. 411 (E.D. Mo. 2008) .................................................................. 9

10

*Oglala Sioux Tribe v. Van Hunnik*,
298 F.R.D. 453 (D.S.D. 2014) ..................................................................... 8

11

12

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ............................................................... 7, 8

13

14

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,
202 F.R.D. 612 (D. Ariz. 2001) .................................................................... 7

15

RULES

16

Fed. R. Civ. P.
Rule 26 ............................................................................. 1, 7, 8, 11

17

Rule 34 ............................................................................................. 1

18

Local Rule 7.2 ....................................................................................... 1

19

OTHER AUTHORITIES

20

U.S. Constitution .................................................................................... 6

21

22

23

24

25

26

27

28

1    Pursuant to Federal Rule of Civil Procedure 26(d), 34(a), and Local Rule 7.2,

2   Plaintiffs Jane Doe #1, Jane Doe #2, and Norlan Flores ("Plaintiffs") hereby move this

3   Court to allow limited expedited discovery of Defendants Jeh Johnson, Secretary, United

4   States Department of Homeland Security; Michael J. Fisher, Chief of the United States

5   Border Patrol, R. Gil Kerlikowske, Commissioner, United States Customs & Border

6   Protection; Jeffrey Self, Commander, Arizona Joint Field Command; and Manuel Padilla,

7   Jr., Chief Patrol Agent-Tucson Sector, in their official capacities (collectively,

8   "Defendants").

9    Specifically, Plaintiffs seek an order requiring Defendants to permit a group of

10   Plaintiffs' counsel and experts, numbering no more than five individuals, to inspect and

11   photograph, for no more than a day each, United States Customs and Border Protection

12   ("CBP") detention facilities located at Tucson, Douglas, Nogales, and Casa Grande on or

13   before July 27, 2015, including permission to 1) inspect and photograph all holding cells

14   and all fixtures contained therein, any other areas used for or accessed by detainees,

15   supply storage areas, food preparation and delivery areas, waste facilities and laundry

16   facilities; 2) review and reproduce documents sufficient to show current detainee in-

17   processing and detention practices and procedures, including representative in-processing

18   areas; and 3) review and reproduce all logs and systems for tracking compliance with

19   detention standards over the past six months, including any manuals or guidance, as well

20   as maintenance logs, supply logs, detainee call logs, cell occupancy logs, detainee medical

21   logs, incident reports, surveillance video footage, and emergency drill logs.

22    In support of their motion, Plaintiffs submit the accompanying Memorandum of

23   Points and Authorities and attached exhibits, and incorporate by reference the pleadings

24   and motions on file in this action, and any oral argument or such other matters as the

25   Court may consider.

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    PROCEDURAL BACKGROUND

3      Plaintiffs, as civil immigration detainees, filed their class action complaint on

4  June 8, 2015, challenging the conditions of their confinement.  On the same date,

5  Plaintiffs also moved to certify a class of individuals who are now or in the future will be

6  detained for one or more nights at a CBP facility, including Border Patrol facilities, within

7  the Border Patrol's Tucson Sector.  On June 22, Plaintiffs' counsel met and conferred by

8  telephone with Defendants' counsel regarding Plaintiffs' expedited discovery requests and

9  were unable to come to a satisfactory resolution.  By the instant motion, Plaintiffs seek

10  limited expedited discovery due to the time-sensitive nature of their claims and to support

11  Plaintiff's forthcoming motion for a preliminary injunction to stop the ongoing threat of

12  imminent harm to putative class members.

13

### II.    FACTUAL BACKGROUND

14      Plaintiffs and putative class members are civil detainees confined in a

15  U.S. Customs and Border Protection ("CBP") facility within the Tucson Sector of the

16  United States Border Patrol ("Border Patrol"), a division of CBP.  Men, women, and

17  children, including Plaintiffs and putative class members, are routinely apprehended by

18  Border Patrol, most often near the Mexican border, and detained.  Many of these men,

19  women, and children have fled dangerous conditions in their home countries.  Most travel

20  by foot across the Sonoran desert with little or no food or water.  By the time they are

21  apprehended by CBP, these individuals are often injured and are commonly parched,

22  blistered, exhausted, and sick with dehydration, heat stroke, diarrhea, bleeding, or other

23  health conditions requiring medication and medical attention.  Many arrive traumatized by

24  the dangers they escaped and experienced during the journey to the United States.

25      The Tucson Sector Border Patrol detains tens of thousands of these individuals

26  each year in short-term detention facilities maintained and operated by Defendants and

27  located in southern Arizona.  These facilities, which include Border Patrol Sector

28  Headquarters, Stations, Substations, and Forward Operating Bases, contain short-term

1  holding cells where Plaintiffs and putative class members are confined pending processing

2  and transport or release.  Many detainees are detained in multiple CBP facilities prior to

3  being transferred to another agency, repatriated, or released.

4         Defendants have promulgated various policies and procedures related to the

5  operation of holding cells, such as detention standards governing the provision of food,

6  water, and medical care, including a June 2, 2008 Memorandum regarding "Hold Rooms

7  and Short Term Custody" issued by CBP (hereafter "2008 Memorandum")[1] and a CBP

8  Security Policy and Procedures Handbook, HB1400-02B (hereafter "2009 CBP

9  Handbook").[2]

10        Defendants have failed for years to enforce the governing detention standards.

11  Numerous civil rights complaints to DHS, as well as human rights reports, media

12  accounts,[3] lawsuits, and proposed legislation have documented the unlawful,

13  _____

14        [1] (*See* Declaration of Kevin M. Coles in Support of Plaintiffs' Motion for
Expedited Discovery ("Coles Decl."), Ex. A, Memorandum, *Hold Rooms & Short Term
Custody*, U.S. Customs & Border Patrol (June 2, 2008), *available at* https://

15  www.documentcloud.org/documents/818095-bp-policy-on-hold-rooms-and-short-term-
custody.html (last visited June 16, 2015).)

16

17        [2] (*Id.* Ex. B, *Security Policy & Procedures Handbook, HB1400-02B*, CBP at p. 492
(Aug. 13, 2009) (Excerpt), *available at* https://publicintelligence.net/cbp-security-
procedures-handbook/ (last visited June 16, 2015).)

18

19        [3] (*Id.* Ex. C, Ed Pilkington, *It Was Cold, Very Cold: Migrant Children Endure
Border Patrol "Ice Boxes"*, Guardian (Jan. 26, 2015), *available at* http://

20  www.theguardian.com/us-news/2015/jan/26/migrant-children-border-patrol-ice-boxes
(last visited June 16, 2015) ("Tatiana was 16 at the time of her detention, a child herself.

21  'The room was so cold you almost couldn't breathe, it made your nose hurt,' she said.
There was no bedding, not even a blanket, and she slept fitfully with [her infant son]

22  Rafael in her arms.  After a few days the baby caught a cold and stopped eating solids, and
for a couple of days he wouldn't even take his mother's milk.  His weight fell from 23lbs.

23  when he arrived at the border station to 15lbs."); *id.* Ex. D, Ed Pilkington, *Freezing Cells
& Sleep Deprivation: The Brutal Conditions Migrants Still Face After Capture*, Guardian

24  (Dec. 12, 2014), *available at* http://www.theguardian.com/us-news/2014/dec/12/migrants-
face-brutal-conditions-after-capture-sleep-deprivation (last visited June 16, 2015)

25  ("Among those subjected to harsh treatment . . . are numerous migrant children.  Children
have described temperatures in the cells that turned their lips blue and made their fingers

26  numb."); *id.* Ex. E, Brianna Lee, *Child Migrants Report Freezing in "Icebox" U.S. Border
Patrol Centers*, Int'l Business Times (Aug. 1, 2014), *available at* http://

27  www.ibtimes.com/child-migrants-report-freezing-icebox-us-border-patrol-centers-
1646428 (last visited June 16, 2015); *id.* Ex. F, John Burnett, *Amid Wave of Child

28  Immigrants, Reports of Abuse By Border Patrol*, NPR (July 24, 2014), *available at*

(Footnote continues on next page.)

1  unconstitutional, and punitive conditions of confinement in CBP holding cells—both in

2  the Tucson Sector and in other similar CBP facilities—beginning as early as 2009 and

3  continuing to date.  In 2014, DHS's own Office of Inspector General (OIG) acknowledged

4  "recurring problems" in CBP detention facilities,[4] and reported that CBP's "E3" data

5  system, which is intended as a tool for CBP to track compliance with its detention

6  guidelines, was subject to frequent system outages and therefore was "not a reliable tool

7  for CBP to [use to] provide increased accountability for [unaccompanied children's]

8  safety and well-being."[5]

9

10  (Footnote continued from previous page.)

11  http://www.npr.org/2014/07/24/334041633/amid-wave-of-child-immigrants-reports-of-abuse-by-border-patrol (follow URL to "Listen to Story", then follow "See Full Story" hyperlink) (last visited June 16, 2015); *id.* Ex. G, Molly Redden, *Why Are Immigration Detention Facilities So Cold?*, Mother Jones (July 16, 2014), *available at* http://www.motherjones.com/politics/2014/07/why-are-immigration-ice-detention-facilities-so-cold (last visited June 16, 2015); *id.* Ex. H, *Border Patrol Lockups Called Inhumane*, Courthouse News (May 22, 2014), *available at* http://www.courthousenews.com/2014/05/22/68102.htm (last visited June 16, 2015); *id.* Ex. I, Alfonso Chardy, *Immigrants Recount Horror of Being Detained in "Iceboxes" Before Transfer to South Florida*, Miami Herald (Apr. 19, 2014), http://www.miamiherald.com/news/local/community/miami-dade/article1963111.html (last visited June 16, 2015); *id.* Ex. J, Peter O'Dowd & Rachael Bale, *Cold Storage: Migrants Refer to Border Cells as Freezers*, Fronteras (Nov. 18, 2013), *available at* http://www.fronterasdesk.org/content/9237/cold-storage-migrants-refer-border-cells-freezers (last visited June 16, 2015); *id.* Ex. K, Cindy Carcamo & Richard Simon, *Immigrant Groups Complaint of "Icebox" Detention Cells*, Los Angeles Times (Dec. 5, 2013), http://articles.latimes.com/2013/dec/05/nation/la-na-ff-detention-centers-20131206 (last visited June 16, 2015); *id.* Ex. L, Brian Epstein, *Crossing the Line: Part II*, Need to Know on PBS (July 20, 2012), *available at* http://www.pbs.org/wnet/need-to-know/video/video-crossing-the-line/14291/ (to view related video, follow URL to "Crossing the Line", then follow video hyperlink) (last visited June 16, 2015); *id.* Ex. M, Brad Poole, *Report Alleges Border Patrol Abuse of Illegal Immigrants*, Reuters (Sept. 21, 2011), *available at* http://www.reuters.com/article/2011/09/21/us-usa-mexico-study-idUSTRE78K6NV20110921 (last visited June 16, 2015).)

23  [4] (Coles Decl. Ex. N, Press Release, *Improvements Continue at Detention Centers*, Dep't of Homeland Sec., Office of Inspector Gen. (Oct. 6, 2014), *available at* https://www.oig.dhs.gov/assets/pr/2014/oigpr_100214.pdf (last visited June 16, 2015).)

25  [5] (Coles Decl. Ex. O, Memorandum re: *Oversight of Unaccompanied Alien Children*, Inspector Gen. John Roth (July 30, 2014), *available at* https://www.oig.dhs.gov/assets/Mgmt/2014/Over_Un_Ali_Chil.pdf (last visited June 16, 2015); *see also id.* Ex. P, *Unaccompanied Juveniles in INS Custody, Report Number I-2001-009, Executive Summary*, Dep't of Justice Office of the Inspector Gen. (Sept. 28, 2001), *available at* https://oig.justice.gov/reports/INS/e0109/exec.htm (last visited June 16, 2015)

(Footnote continues on next page.)

Civil detainees routinely are held in short-term holding cells overnight, often over several nights,[6] deprived of basic human needs, including sleep, warmth, adequate food and water, and minimally necessary health and sanitary conditions.  They are packed into overcrowded and filthy holding cells (or "hold rooms"); exposed to painfully cold temperatures; deprived of beds and bedding; denied adequate food, water, medicine and other necessary medical attention, as well as basic hygiene items such as soap, toilet paper, diapers, and sanitary napkins; and held virtually incommunicado, without the ability to communicate with counsel or family.[7]

At the same time, Defendants have consistently refused public access to the detention facilities.  With the exception of some limited opportunity for contact with consular officials for those detainees of Mexican and Guatemalan nationality, detainees are cut off from the outside world.  They are not able to communicate with an attorney, family members, or others who may be concerned about their whereabouts or be in a position to provide assistance.  Most detainees, including putative class members, are unable to report to anyone in the outside world on their conditions while being detained

---

(Footnote continued from previous page.)

("[D]eficiencies in the handling of juveniles continue to exist in some INS districts, Border Patrol sectors, and headquarters that could have potentially serious consequences for the well-being of the juveniles.").)

[6] According to documents produced by CBP in response to a Freedom of Information Act ("FOIA") request, 72,198 individuals were detained in Tucson Sector facilities between January 1, 2013 and June 30, 2013 alone.  Of those individuals, 58,803 (80.4 percent) were in CBP custody for 24 hours or longer; 7,839 (10.9 percent) were detained for more than 72 hours.  (*See* Declaration of Guillermo Cantor in Support of Motion for Class Certification ¶ 6 (ECF No. 1-6).)

[7] Dozens of individuals previously held by Defendants in the Tucson Sector have provided sworn declarations that, taken together, demonstrate that the conditions described above are the norm rather than the exception.  These conditions are more fully set forth in the Complaint (ECF No. 1), and the declarations can be found attached as Exhibits 1-50 to the Declaration of James Duff Lyall in Support of Plaintiffs' Motion for Class Certification (ECF No. 2).

1    and face the substantial risk of being deported without having any opportunity to

2    challenge these conditions or seek redress.[8]

3         In order to prevent further physical and psychological harm to future civil

4    detainees, Plaintiffs seek to compel Defendants to comply with the U.S. Constitution and

5    CBP's own guidelines.  Given the ongoing inhumane treatment, this is a matter of

6    urgency.  To that end, Plaintiffs intend to file a motion for preliminary injunction as soon

7    as practicable.  Because CBP bars access to these facilities to any attorneys seeking to

8    represent the detainees in immigration proceedings, Plaintiffs' counsel and experts cannot

9    obtain adequate access to inspect any of the eight Tucson Sector Border Patrol facilities at

10   issue in this litigation.  Without a court order, Plaintiffs are significantly impeded in their

11   ability to gather direct evidence on the full extent of the substandard conditions in which

12   they and putative class members are now being held.

13        **III.   ARGUMENT**

14        In this expedited motion, Plaintiffs seek an order requiring Defendants to permit

15   Plaintiffs' counsel and experts, numbering no more than five individuals, to inspect and

16   photograph, for no more than a day each, CBP facilities located at Tucson, Douglas,

17   Nogales, and Casa Grande on or before July 27, 2015, including permission to:

18        a)   Inspect and photograph all holding cells and all fixtures contained therein,

19             any other areas used for or accessed by detainees, supply storage areas,

20             food preparation and delivery areas, waste facilities, and laundry facilities;

21

22

23        [8] (*See, e.g.*, Coles Decl. Ex. Q, *You Don't Have Rights Here: U.S. Border
     Screening and Returns of Central Americans to Risk of Serious Harm*, Human Rights
24   Watch (Oct. 2014), http://www.hrw.org/sites/default/files/reports/us1014_web_0.pdf (last
     visited June 16, 2015) ("Virtually all of those we interviewed who had been apprehended
25   at or near the border were deported summarily, via expedited removal or reinstatement of
     removal. Many said they had expressed their fears to US Border Patrol officials charged
26   with screening for fear of return before being deported, but fewer than half of these were
     referred by US Border Patrol for a further assessment of whether they had a 'credible' or
27   'reasonable' fear of returning to Honduras.").)

28

b) Review and reproduce documents sufficient to show current detainee in-processing and detention practices and procedures, including representative in-processing areas; and

c) Review and reproduce all logs and systems for tracking compliance with detention standards over the past six months, including any manuals or guidance, as well as maintenance logs, supply logs, detainee call logs, cell occupancy logs, detainee medical logs, incident reports, surveillance video footage, and emergency drill logs.

## A. Limited Expedited Discovery Is Needed To Prevent Irreparable Physical And Psychological Harm To Future Civil Detainees

Time is of the essence. Limited expedited discovery is necessary for Plaintiffs to gather, document, and preserve crucial evidence regarding the full extent of constitutional violations at issue in their forthcoming motion for preliminary injunction. As Plaintiffs will show, a preliminary injunction is necessary to prevent serious physical and mental harm to the civil detainee populations at these facilities. Without a court order expediting discovery, Plaintiffs and their experts would be forced to wait months—until after the rule 26(f) conference—to inspect these facilities and gather evidence as to the full extent of constitutional violations justifying injunctive relief. While the need for expedited discovery is great, Defendants will not be burdened or suffer prejudice from an order granting Plaintiffs' limited expedited discovery requests.

## B. Good Cause Exists For Limited Expedited Discovery

Courts have express authority to order early discovery under Federal Rule of Civil Procedure 26(d). This Court has adopted "a good cause standard to warrant the granting of any expedited discovery prior to the Rule 26(f) scheduling conference . . . ." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

Courts typically consider several factors in determining whether good cause exists for expedited discovery, including (1) the purpose of the requested early discovery; (2) whether the discovery requests are narrowly tailored; (3) whether the discovery burdens the defendants; (4) whether the defendants are able to respond to the requests in an expedited manner; and (5) how far in advance of the formal start of discovery the request is made. *See Semitool*, 208 F.R.D. at 276-77.

Regarding the first factor, Plaintiffs seek expedited discovery in order to gather evidence and fully inform their experts' opinions in support of a motion for a preliminary injunction and any associated hearing. An order to expedite discovery under rule 26(d) is especially appropriate in such cases. *See* Fed. R. Civ. P. 26 advisory committee note (1993 amendments to subdivision (d): expedited discovery is appropriate "in some cases, such as those involving requests for a preliminary injunction"); *see also Meritain Health Inc. v. Express Scripts, Inc.*, No. 4:12-CV-266-CEJ, 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012) ("Expedited discovery is generally appropriate in cases, such as this, where a party is attempting to prepare for a preliminary injunction hearing." (citation omitted)).

Expedited discovery also is appropriate here because Plaintiffs will seek a preliminary injunction to prevent the ongoing violation of putative class members' constitutional rights. *See Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 456 (D.S.D. 2014) (granting expedited discovery to determine whether defendants engaged in policies, practices and customs which violated plaintiffs' constitutional rights). Plaintiffs' limited requests are necessary to gather evidence and uncover the full extent of the harm to putative class members.

Furthermore, Plaintiffs request expedited discovery to preserve evidence of confinement conditions that may fluctuate or be modified and thereby become difficult to document as time passes. The difficulty of preserving evidence is further compounded by both the affected population's high turnover rate and the challenges of tracking detainees once they have been released, repatriated, or transferred. Courts have recognized that expedited discovery is appropriate where, as here, evidence may be susceptible to loss or

1  spoliation.  *See Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (granting

2  expedited discovery where likelihood of discovering evidence might decrease due to

3  passage of time or intentional destruction).  Here, expedited discovery is urgently needed

4  to document conditions as they currently exist.

5          Secondly, Plaintiffs' limited discovery requests are narrowly tailored.  In order to

6  prevail on their motion for preliminary injunction, Plaintiffs must be able to show that

7  they and the putative class members are likely subject to conditions of confinement that

8  violate their constitutional rights as civil detainees, and that CBP has failed to enforce its

9  own policies and procedures with respect to the operation of its holding cells.  To do so,

10  Plaintiffs intend to show that they are being held in "punitive" conditions of confinement

11  that are 1) intended to punish detainees entering the United States, 2) "excessive in

12  relation to [non-punitive] purpose," or 3) "employed to achieve objectives that could be

13  accomplished in so many alternative and less harsh methods."  *Jones v. Blanas*, 393 F.3d

14  918, 933-34 (9th Cir. 2004) (holding that a civil detainee does not need to show

15  "deliberate indifference" on part of the defendant) (citations omitted).

16          Plaintiffs intend to offer expert opinions as evidence that Defendants' operation of

17  the detention facilities has fallen below minimally acceptable detention standards.

18  Plaintiffs' inspection requests are narrowly tailored so that Plaintiffs' agents may observe

19  and document current conditions of confinement at a select number of Defendants'

20  detention facilities.  This firsthand access is intended to inform more fully opinions about

21  what those conditions are and how they objectively compare to CBP and other national or

22  international detention standards.  Plaintiffs' requests are the least burdensome means of

23  achieving this purpose, and involve relatively brief and limited access to only four of the

24  eight facilities at issue in this litigation.

25          Plaintiffs will undoubtedly require access to additional facilities, documents and

26  detainees over the regular course of discovery in this case.  Nevertheless, at this early

27  stage, without limited expedited discovery, Plaintiffs' experts—whose observations and

28  conclusions are key in this lawsuit—will be limited in the evidence they can provide.

1    Regarding the third and fourth factors, Defendants can accommodate Plaintiffs'
2    request with minimal burden.  CBP is the largest federal law enforcement agency in the
3    country, with the largest budget of any of the component agencies within the Department
4    of Homeland Security—including the United States Coast Guard, the United States Secret
5    Service, and the two other immigration agencies, Immigration and Customs Enforcement,
6    and United States Citizenship and Naturalization Service.[9]  CBP employs approximately
7    4,000 Border Patrol agents in Tucson Sector's eight Border Patrol Stations and one
8    Substation.  Defendants therefore are readily capable of providing expedited access to the
9    four detention facilities on or before July 27, 2015.  Indeed, Defendants accommodate
10   attorney visits to CBP facilities in connection with other pending litigation, and have
11   accommodated media representatives, members of Congress, and non-governmental
12   organizations—including Plaintiffs' counsel—on tours of CBP facilities within the past
13   year.[10]  Additionally, CBP facilities are subject to unannounced site visits by oversight
14   agencies involving investigation of many of the same conditions Plaintiffs seek to inspect.
15   For example, in response to complaints of civil rights abuses of children in CBP custody,
16   from July 1-16, 2014, the DHS OIG conducted 87 unannounced inspections of 63 CBP
17   facilities, primarily in Texas and California, collecting information on various conditions
18   including operability of temperature controls, toilets, and sinks; provision of food, water,
19   and medical care; and access to phones.[11]  OIG conducted an additional 57 unannounced

20

21         [9] (Coles Decl. Ex. R, *Budget in Brief, Fiscal Year 2015*, U.S. Dep't of Homeland
22   Sec. (2015) (Excerpt), *available at* http://www.dhs.gov/sites/default/files/publications/
     FY15BIB.pdf (last visited June 16, 2015).)

23         [10] (*Id.* Ex. S, Steve Taylor, *It Was Heartbreaking To See Children in Detention
     Cells, Pimentel Testifies*, Rio Grande Guardian (July 3, 2014),
24   http://riograndeguardian.com/it-was-heartbreaking-to-see-children-in-detention-cells-
     pimentel-testifies/ (last visited June 16, 2015); *id.* Ex. T, Molly Hennessey-Fiske & Cindy
25   Carcamo, *Overcrowded, Unsanitary Conditions Seen at Immigrant Detention Centers*,
     Los Angeles Times (June 18, 2014), http://www.latimes.com/nation/nationnow/la-na-nn-
26   texas-immigrant-children-20140618-story.html (last visited June 16, 2015).)

27         [11] (*Id.* Ex. O at pp. 2-3 (noting that CBP's "E3" data system, used to track
28   compliance with detention guidelines was subject to frequent system outages resulting in
                                                      (Footnote continues on next page.)

1  inspections of 41 CBP facilities in Texas and New Mexico between July 17, 2014 and

2  August 20, 2014.[12]  Because only 2 of the 147 unannounced inspections were conducted

3  in the Tucson Sector—and both of these were conducted at only one facility (the Nogales

4  Border Patrol station)—relatively little of the data collected by OIG pertains to Tucson

5  Sector facilities.

6       Plaintiffs merely seek access for a limited number of Plaintiffs' counsel and agents

7  to inspect four of Defendants' facilities for one full day each.  Plaintiffs seek to observe

8  conditions in the facilities and to review readily available records.  Plaintiffs do not

9  request that Defendants prepare any witnesses' testimony, conduct any extensive

10  document searches, or create any reports not already kept in the ordinary course of

11  business.

12       As for the fifth factor, Plaintiffs' discovery requests come several months before

13  discovery would ordinarily be permitted.  For the reasons already stated, this is precisely

14  why expedited discovery is so crucial in this case.  Weighing the minimal burden to

15  Defendants against ongoing constitutional violations and the substantial risk of physical

16  and psychological harm to future civil detainees, as well as the risk that key evidence will

17  no longer be available after the rule 26(f) conference, Plaintiffs' request to expedite

18  discovery is more than justified in this case.  Without an order expediting discovery,

19  Plaintiffs would be forced to wait months—until well after the rule 26(f) conference—to

20  secure important evidence to support a preliminary injunction motion.  Such delay is

21

22

23  (Footnote continued from previous page.)

24  inconsistent compliance reporting, and concluding that the system is "not a reliable tool
   for CBP to [use to] provide increased accountability for [unaccompanied children's]

25  safety and well-being").)

26  [12] (*See* Coles Decl. Ex. U, Memorandum, *Oversight of Unaccompanied Alien
   Children*, Inspector Gen. John Roth (Aug. 28, 2014), *available at* https://

27  www.oig.dhs.gov/assets/pr/2014/Sig_Mem_Over_Unac_Alien_Child090214.pdf (last
   visited June 16, 2015).)

28

1    unwarranted in the face of such ongoing, widespread, and systematic constitutional

2    violations and failures on the part of CBP to enforce its own policies.

3        **IV.    CONCLUSION**

4        Hundreds of civil detainees are being subjected to cruel, inhumane, and punitive

5    conditions each and every day in Tucson Sector detention facilities.  Men, women, and

6    children are routinely deprived of basic human needs, including adequate sleep, warmth,

7    food, water, hygienic supplies, and healthy, sanitary conditions.  Plaintiffs intend to seek

8    preliminary injunctive relief on behalf of thousands of putative class members as soon as

9    practicable to stop the widespread pattern of constitutional violations and to require

10   Defendants to start enforcing, at a minimum, their own detention policies.  By this motion,

11   Plaintiffs merely seek the opportunity to gather evidence showing the full extent of these

12   violations.

13       For all of the foregoing reasons, Plaintiffs respectfully request the Court to grant

14   Plaintiffs' limited expedited discovery requests.

15   Dated: June 23, 2015            By:   */s/ Harold J. McElhinny*

16                                          Harold J. McElhinny*
                                            Kevin M. Coles*
17                                          Elizabeth Balassone*
                                            MORRISON & FOERSTER LLP
18                                          425 Market Street
                                            San Francisco, CA  94105-2482
19                                          Telephone: (415) 268-7000
                                            Facsimile:  (415) 268-7522
20                                          Email:  HMcElhinny@mofo.com
                                            Email:  KColes@mofo.com
21

22

23

24

25

26

27

28

Colette Reiner Mayer*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile:  (650) 494-0792
Email:  CRMayer@mofo.com

Louise C. Stoupe*
Pieter S. de Ganon*
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Tokyo, Chiyoda-ku  100-6529, Japan
Telephone: +81-3-3214-6522
Facsimile:  +81-3-3214-6512
Email:  LStoupe@mofo.com
Email:  PdeGanon@mofo.com

Linton Joaquin*
Karen C. Tumlin*
Nora A. Preciado*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA  90010
Telephone: (213) 639-3900
Facsimile:  (213) 639-3911
Email:  joaquin@nilc.org
Email:  tumlin@nilc.org
Email:  preciado@nilc.org

Mary Kenney**
Emily Creighton**
Melissa Crow**
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 507-7512
Facsimile:  (202) 742-5619
Email:  mkenney@immcouncil.org
Email:  ecreighton@immcouncil.org
Email:  mcrow@immcouncil.org

Victoria Lopez (Bar No. 330042)***
Daniel J. Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)***
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ  85014
Telephone: (602) 650-1854
Facsimile:  (602) 650-1376
Email:  vlopez@acluaz.org
Email:  dpochoda@acluaz.org
Email:  jlyall@acluaz.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Travis Silva*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA  94105
Telephone: (415) 543-9444
Facsimile:  (415) 543-0296
Email:  tsilva@lccr.com

Attorneys for Plaintiffs

*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)
** Pro hac vice motion pending
*** Admitted pursuant to Ariz. Sup. Ct. R. 38(f)


## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(j)

I hereby certify that after personal consultation and sincere efforts to do so, Plaintiffs' counsel has been unable to satisfactorily resolve this request for expedited discovery with counsel for the Defendants.

| Colette R. Mayer | /s/ *Colette R. Mayer* |
|:---:|:---:|
| (typed) | (signature) |

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this 23rd day of June, 2015, I caused a PDF version of the
documents listed below to be electronically transmitted to the Clerk of the Court, using
the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all
CM/ECF registrants and non-registered parties.

3

4

- **PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY;
  MEMORANDUM OF POINTS AND AUTHORITIES**

5

6

- **DECLARATION OF KEVIN M. COLES IN SUPPORT OF
  PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

7

8

- **INDEX OF EXHIBITS TO KEVIN M. COLES DECLARATION IN
  SUPPORT OF MOTION FOR EXPEDITED DISCOVERY with
  attached exhibits**

9

10

- **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
  EXPEDITED DISCOVERY**

11

12

13

| Harold J. McElhinny | /s/ *Harold J. McElhinny* |
|---|---|
| (typed) | (signature) |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28