# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe # 1 and Jane Doe # 2; Norlan Flores, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br>v.<br><br>Jeh Johnson, Secretary, United States Department of Homeland Security, in his official capacity; R. Gil Kerlikowske, Commissioner, United States Customs & Border Protection, in his official capacity; Michael J. Fisher, Chief of the United States Border Patrol, in his official capacity; Jeffrey Self, Commander, Arizona Joint Field Command, in his official capacity; Manuel Padilla, Jr., Chief Patrol Agent-Tucson Sector, in his official capacity,<br><br>  Defendants. | CV 15-250 TUC DCB<br><br>**ORDER** |

On June 8, 2015, Plaintiffs, civil immigration detainees, filed a class action Complaint challenging the conditions of their confinement. They allege extreme and inhumane conditions exist in the Tucson Sector-Border Patrol short-term detention facilities, such as insufficient food and water, sleeping accommodations, and necessary health and sanitary conditions.

On June 23, 2015, Plaintiffs sought a Court order to allow them to conduct expedited discovery to enable them to better prepare a motion for preliminary relief. The Court held a hearing and entered an Order on August 14, 2015, which granted the request for expedited discovery and directed Defendants to not destroy and to preserve video surveillance tapes of detainee holding areas. (Order (Doc. 51) at 3.) On August 28, 2015, Plaintiffs filed a Motion

for Sanctions because Defendants failed to secure and preserve this evidence and recorded over video surveillance tapes even after the Court's August 14-Order. The Plaintiffs ask the Court to issue an Order that an adverse inference will exist for the trier of fact. (Motion (Doc. 56) at 1.)

The Court grants the Plaintiffs' request in part that Defendant produce all the existing and currently retained video-recordings for the detainee holding areas at the Border Patrol facilities that are the subject of this action.

**Findings of Fact**

1. On June 8, 2015, Plaintiffs filed this class action law suit.

2. On June 10, 2015, Plaintiffs sent General Counsel for the Department of Homeland Security a Preservation letter, which included a demand for preservation of a list of items including "video recordings, digital recordings, pictures, photographs, films, computer records, data compilations," and "evidence regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device)," and "documents generated by or maintained in the E3 Tracking System, official DHS, CBP and Border Patrol papers, and any other networks, databases, or other electronic stored information ("ESI")" and Plaintiffs requested General Counsel "ensure that DHS, CBP and Border Patrol immediately halt all routine business practices that destroy potential evidence, including but not limited to document destruction, email deletion, server back-up tape rotation, electronic data shredding, scheduled destruction of back-up media, re-imaging of drives, drive hardware exchanges, and sale, disposal, or destruction of computer hardware or systems," and asked General Counsel to "confirm [] that these practices have been halted." (Sanction Motion, Mayer Decl. (Doc. 57) ¶2, Ex. A.) Plaintiffs asked General Counsel to promptly communicate the preservation obligation to all DHS, CBP, and Border Patrol employees and contractors, and periodically repeat the communication until the litigation concludes to ensure compliance. Importantly,

2

1  Plaintiffs offered to reassess and narrow the Defendants' preservation obligations once they
2  obtained a better understanding of the agencies' information management systems. *Id.*
3      3.      On June 12 through June 16, 2015, Plaintiffs served the Complaint.
4      4.      On July 8, 2015, a litigation hold was distributed and Assistant Chief George Allen
5             for Border Patrol, Tucson Sector admits receiving it. (Sanction Response (Doc. 60),
6             Allen Decl. ¶ 2.)
7      5.      On June 23, 2015, Plaintiffs filed the Motion for Expedited Discovery, which
8  expressly sought permission to "[r]eview and reproduce all . . . surveillance video footage."
9  (Discovery Motion (Doc.25) at 7.) Defendants opposed expediting discovery based on their
10 assertion that the evidence sought by Plaintiffs would be available in the normal course of
11 discovery and "there was no basis to believe . . . that Defendants will intentionally destroy
12 or transfer evidence in this case." (Response to Disc. Motion (Doc. 39) at 7-8.)
13     6.      On July 15, 2015, in response to an email from Plaintiffs, Defendants' counsel
14 assured Plaintiffs' counsel that Defendants had "taken all required preservation steps" and
15 would "continue to comply with the relevant rules and laws." (Sanction Motion, Mayer
16 Decl. (Doc. 57) ¶ 4, Ex. C.)
17     7.      At the August 13, 2015, hearing on the expedited discovery motion, counsel for
18 Defendants asserted she did not know the relevant procedures for making or maintaining
19 video recordings at the Border Patrol stations, but would inquire into what video recordings
20 Defendants actually had and how it could be produced to Plaintiffs. (Sanction Motion,
21 Mayer Decl. (Doc. 57), Ex. D: Transcript of Record (TR) at 40-41.
22     8.      On August 14, 2015, following the hearing, the Court issued its Order granting
23 expedited discovery and ordered Defendants to produce, for each facility, "a list of video
24 surveillance being conducted and maintained in holding cells and all fixtures contained
25 therein, . . .," [and] "that Defendants shall not destroy or record over any video surveillance

1  tapes of any and all detainee holding areas . . . and shall preserve such surveillance tapes
2  currently in their possession." (Order (Doc. 51) at 3.)

3  9.  Between July 8 and August 14, 2015, Defendants destroyed or failed to preserve
4  video footage depicting the conditions of confinement in Tucson-sector stations.

5  10.  On August 19, 2015, Defendants filed a Notice Regarding Compliance, reporting
6  that on August 13, 2015, Border Patrol undertook emergency measures to add temporary
7  electronic storage to store the video footage for approximately 15-day storage cycles, which
8  had cost approximately $10,000 and would require the additional expense of $5,000 every
9  90 to 120 days continuing until the video footage requirement is lifted. Defendants reported
10 that recordings maintained prior to August 13, 2015, were necessarily limited by existing
11 capacity limitations, which differed at the different facilities, but generally Border Patrol uses
12 digital storage devices (DVR) and computer hard drives with the capacity to maintain video
13 for between 15 and 30 days. Some cameras, however, run continuously, retaining video for
14 only approximately 48 hours before they are taped over. Specifically, Ajo Station does not
15 record video, and the Willcox and Brian A. Terry stations have inoperable storage devices.
16 (Notice (Doc. 53), Ex. Allen Decl.)

17 11.  On August 27, 2015, Defendants filed a Second Notice, informing the Court that:
18 "While working to fully implement the emergency upgrade, the stations have made the
19 operational decision to continue where possible, recording current video footage for [safety
20 and security reasons] . . . and "unless and until the scope of ongoing video storage is
21 modified in light of the needs of this case. Border Patrol continues to maintain the maximum
22 amount of video possible based on current capacity, and is doing everything in its power to
23 work quickly to bring online the additional capacity to store video in full compliance with
24 the Court's order." (Notice (Doc. 55) at 2.)

25 12.  More specifically, the Second Notice asserted that the emergency upgrades for a 15-
26 day video storage cycle have proved difficult to implement due to system failures due to the

4

1  old-age of the various recording systems being used at the Border Patrol facilities. As of
2  August 27, 2015, the status of the video backup improvements at the eight Tucson-sector
3  facilities was as follows: 1) Tucson Station- two of four DVRs have backups because two
4  DVRs are failing and constantly rebooting causing the backup to fail; 2) Ajo Station-the
5  DVR system is not operational; 3) Casa Grande- the DVR system was powered down to
6  ensure existing video was preserved but it was powered back up the next day; 4) Sonoita–
7  the DVR was not configured to record, but was reconfigured with a 30 day retention
8  capacity; 5) Nogales– the DVR has approximately 5.5 months of video recorded on it, with
9  additional hard drives added to extend storage capacity another 2.5 months; 6) Brian A.
10 Terry– DVR has retained video back to June 11, 2015, with enough storage capacity to last
11 to approximately September 11, 2015; 7) Douglas– there are three DVRs, set to back up
12 weekly, with the oldest retained video back to July 6, 2015, and with the addition of hard
13 drives storage capacity exists for approximately another two months, 8) Willcox– the security
14 system is not compatible with the emergency backup system being implemented by
15 Defendants.  (Second Notice (Doc. 55), Shrivers Decl.)

16 13.     Defendants have a logging system, e3DM which tracks the total time in custody, the
17 total time at that particular station, the arrest date and time, the book-in and book-out date
18 and time, the name, the age and gender of the alien, the country of citizenship, the alien
19 registration number, whether the alien has indicated credible fear, and other comments. The
20 agent "<u>can also</u> log" whether medical treatment was provided, when it was provided, and
21 whether it was provided by a Border Patrol agent or someone outside of Border Patrol. The
22 agent can log if the alien was served a meal, what time it was served, and if the alien
23 accepted or refused service of the meal. The agent can log when a shower was provided to
24 the alien or if the alien was provided access to a telephone and how often an agent conducted
25 a welfare chick on the alien. (Sanction Response (Doc. 60) at 8 n.4; Allen Decl. ¶ 10.) The

1 Court cannot discern whether the term "can" is used unskillfully or if the agent has discretion to log certain information and must log other information into the e3DM tracking system.

14. Defendants did not seek a protective order or move to modify the Court's Order to accommodate its alleged inabilities to comply with the Court's Order.

16. On August 28, 2015, Plaintiffs filed the Motion for Sanctions: for an adverse inference, applicable to all motions and at trial, that the videotapes would have demonstrated all facts described in Plaintiffs' declarations existed and continue through the present. (Sanction Motion (Doc. 56) at 11)

**Conclusions of Law**

1. As soon as a potential claim is identified, a litigant in federal court is under a duty to preserve evidence it knows or reasonably should know is relevant to the action. *In re Napster, Inc. Copyright Litigation*, 462 F. Supp.2d 1060, 1067 (Calif. 2006). Once the duty attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Id.* at 1070.

2. As part of their inherent power to manage their affairs so as to achieve the orderly and expeditious disposition of cases, the District courts may impose sanctions for spoliation of evidence. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992) (excluding evidence as a sanction for spoliation).

3. Pursuant to its inherent authority, sanctions are appropriate upon a finding of recklessness if combined with an additional factor such as frivolousness, harassment, or an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir.2001). Dismissal sanctions may be imposed upon a finding of willfulness, fault or bad faith. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.2006). In deciding whether to impose a dismissal sanction, the Court must determine (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser

sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake. *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988).

4. The most extreme sanction, dismissal, generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir.2006). To meet this standard, there must be disobedient conduct outside the litigant's control." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.2002); *Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir.2003). A party's destruction of evidence qualifies as willful spoliation if the party has "'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002)) (other citations omitted.) "Belated compliance with discovery orders does not preclude the imposition of sanctions." *Id.* (quoting *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir.1986)).

5. Lack of bad faith does not immunize a party or its attorney from sanctions, but good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust and the severity of the sanctions. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

6. Under Rule 37 of the Federal Rules of Civil Procedure, the Court may impose sanctions in response to litigation misconduct against a party "who fails to obey an order to provide or permit discovery." Sanctions under Rule 37 may be imposed for negligent conduct. Fed. R. Civ. P. 37(b); *Hyde & Drath*, 24 F.3d at 1171.

7. Under Rule 37, the Ninth Circuit applies a five part test to determine whether to impose the most extreme sanction or not, as follows: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice

7

to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1057 (9th Cir.1998). The third and fifth factors, prejudice and availability of less drastic sanctions, are the decisive factors because factors one and two favor dismissal and factor four cuts against it. *Id.*

8. Under either Rule 37 or pursuant to its inherent authority, courts may only impose terminating sanctions when no lesser sanction is adequate to cure the prejudice from the offending conduct. *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1072 (N.D.Cal.2006).

9. In assessing prejudice, the Court considers whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case. *Leon*, 464 F.3d at 959. A party may be prejudiced when, as a result of spoliation, the party's ability to litigate a claim is "severely impaired" and the party is forced to rely on "incomplete and spotty evidence." *Anheuser–Busch Inc., v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 2001). When a party is not irreparably prejudiced from the loss of evidence that was destroyed, it is appropriate to permit the fact finder to presume that the destroyed evidence was prejudicial. *Surowiec v. Capital Title Agency*, 790 F.Supp.2d 997, 1009 (Ariz. 2011) (citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 618 (S.D.Tex.2010)).

10. Lesser sanctions include: excluding evidence, including spoliated evidence; admitting evidence of the circumstances of the destruction or spoliation; instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993), and may designate facts to be taken as established for purposes of the action, Fed. R. Civ. P. 37(b)(2)(A)(i).

/////

/////

**Decision: Lesser Sanction and Prejudice**

Plaintiffs do not seek an extreme sanction of dismissal. Plaintiffs seek an adverse inference, which is one of the lesser sanctions available for spoliation. The Court concludes the destruction of the video-tape recordings made prior to this Court's August 14, 2015, Order was, at best, negligent and was certainly willful. Defendants provide no explanation why, in response to Plaintiffs' notifications regarding litigation, the Defendants did not undertake the efforts initiated in response to the Court's August 14 Order. There is no explanation as to why the Defendants asserted to the Plaintiffs that "all was well" in respect to Defendants having "taken all required preservation steps" as required by relevant rules and laws, which included preservation and retention of the video recordings. Defendants similarly misled the Court when counsel for Defendant appeared before it, without knowing Defendants' data recording and retention systems and failed after the Court's August 14 Order to seek modification of the August 14 Order's video retention directives. Instead, Defendants acted unilaterally to modify their responsibilities to preserve evidence required by law, rule and direct Order of this Court.

Even now, the Court cannot discern the extent of the destruction because it is certain that video recordings are not continuing to be destroyed. Defendants assert they will have the ability to retain videos for approximately 15-day cycles. The plan is to have further back-up storage in place by then, but Defendants have not noticed the Court that in fact the storage retention problem has been solved and no further destruction will occur. Defendants have not hesitated since the inception of this case to allow destruction of the video tapes and inform the Court after the fact, that it was unable to prevent it. Defendants have unilaterally changed plans and not told the Plaintiffs and have not sought leave of the Court for changes. As of the Defendants filing its response to the Motion for Sanctions, it was clear that Defendants primarily have current recordings. Because of a storage problem, Defendants are periodically and routinely destroying past video recordings. Specifically, the Tucson Station

has no past video recordings for two of its four recorders and of the remaining seven other stations only four had some past recordings, which approximately ranged back to April for the Nogales Station, June for the Brian A. Terry Station, and July for the Douglas Station. Defendants reported different storage capabilities at different stations so unless the storage problems <u>have been</u> resolved, the Court must assume further destruction will occur.

In spite of Plaintiff's offer to reassess its retention requests upon being better informed regarding Defendants' data recording and retention systems, the Defendants have made no effort to work with Plaintiffs to address the Defendants' technical limitations and difficulties. The Court refers here to the lack of working recording machines, lack of data storage necessary to maintain and preserve evidence, and lack of money to upgrade the systems to enable the agency to comply with the directives of the Court. It appears that some limitations have been addressed, but others remain or may remain, *see* Findings of Fact ¶ 12, and the Defendants have chosen to not take the appropriate measures to modify their responsibilities, accordingly.

There is prejudice to the Plaintiffs. The video recordings are the only visual evidence of past and current conditions of confinement in the various Border Patrol facilities in the Tucson sector. Specifically, the only visual evidence has been destroyed of the conditions of confinement for the two Jane Doe Plaintiffs named in the action, who were detained at the Tucson and Casa Grande stations. This case is filed as a class action. Until the Court does or does not certify Plaintiffs' class, evidence reflecting the conditions of confinement for anyone detained on or after June 8 is relevant. Plaintiffs cannot destroy documents based on their belief regarding the proper scope of the complaint. (Reply (Doc. 61) at 6 (citing *Diersen v. Walker*, 2003 WL 21317276 * 5 (N.D. Ill. June 6, 2003)).

Defendants' proposal that Plaintiffs have an alternative source of evidence in the e3DM records rings hallow. Defendants use the e3DM records to track time of custody, age, and gender, and the remainder of the information "can be" recorded. Until and unless all

agents do in fact record this other information, the e3DM records are not a substitute for the video recordings. Even then, the e3DM records cannot reflect conditions in the holding cells such as cleanliness or overcrowding. Without knowing exactly what is actually recorded on the e3DM records it is impossible to determine whether or not it is an adequate alternative to video recordings, but it seems an unlikely equivalent to visual evidence.

The Court will not allow the Defendants to take advantage of the missing evidence, but is not prepared to impose the broad sweeping adverse inference requested by the Plaintiffs: "that the videotapes would have demonstrated all facts described in Plaintiffs' declarations continue through the present." (Motion (Doc. 56) at 11.). In fairness to Defendants, missing videos should not be presumed to provide evidence regarding conditions reflected on existing videos; some facts like temperature would not have been reflected in any video. (Response (Doc. 60) at 16.) Likewise, missing video footage should not be presumed to provide evidence of conditions that can be proven or disproved by other means. But in fairness to the Plaintiffs, Defendants must not be allowed to prove or disprove facts because of a lack of evidence that would have been available in the video recordings they failed to preserve. *Anheuser-Busch*, 69 F.3d at 354. Plaintiffs would be severely impaired if forced to rely on incomplete and spotty evidence, and clearly an adverse presumption would then be appropriate. If at any point in time, Defendants seek to obtain such an advantage from the lack of video tape evidence, the Court will entertain applying an adverse inference and will allow Plaintiffs to reurge this sanction.

Defendants agree to limited production of available videos, and the Court so orders the Defendants to immediately produce to the Plaintiffs all existing video recordings, dating from June 10, 2015 through current, for each Border Patrol station in the Tucson sector. Likewise, Defendants should produce the e3DM records for each facility for these same dates. Thereafter, the parties shall meet and confer regarding the Plaintiffs' discovery needs and the capabilities at each facility for meeting those needs. The parties shall attempt to

11

agree on recovery, maintenance and preservation, and production procedures for video recordings to meet the needs of the Plaintiffs, with Plaintiffs acting in good faith minimize the burdens on the Defendants and Defendants acting in good faith to fully apprise the Plaintiffs regarding its video capabilities, including storage, and develop procedures that ensure production of video recordings to Defendants on an ongoing basis. Defendants shall act in good faith to keep Plaintiffs apprised on an ongoing basis of the status of the production procedures for recovery, maintenance and preservation of video recordings. In the event the parties cannot forthwith reach an agreement, they shall simultaneously file briefs setting out their respective proposals for video recording recovery, maintenance and preservation, and production, including time lines.

**Accordingly,**

**IT IS ORDERED** that the Plaintiffs' Motion for Sanctions (Doc. 56) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that within 15 days of the filing date of this Order, Defendants shall produce to the Plaintiffs all existing video recordings, dating from June 10, 2015 through current, for each Border Patrol station in the Tucson sector.

**IT IS FURTHER ORDERED** that within 14 days of the filing date of this Order, Defendants should produce the e3DM records for each facility for these same dates.

**IT IS FURTHER ORDERED** that within 14 days of these disclosures, the parties shall meet and confer regarding the Plaintiffs' discovery needs and the capabilities at each facility for meeting those needs. The parties shall attempt to agree on recovery, maintenance and preservation, and production procedures for video recordings to meet the needs of the Plaintiffs, with both parties acting in good faith as directed herein.

**IT IS FURTHER ORDERED** that in the event the parties reach a stipulation, the Defendants shall act in good faith to keep Plaintiffs apprised on an ongoing basis of the status of recovery, maintenance, preservation and production of video recordings.

**IT IS FURTHER ORDERED** that in the event the parties cannot reach an agreement, they shall simultaneously file briefs setting out their respective video recording proposals for recovery, maintenance and preservation, and production, including time lines.

**IT IS FURTHER ORDERED** that within 5 days of the meet and confer, the Plaintiffs shall file a notice of stipulation or the parties shall file their simultaneous briefs.

DATED this 25th day of September, 2015.

David C. Bury
United States District Judge