Harold J. McElhinny*
Kevin M. Coles*
Elizabeth G. Balassone*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
Email:  HMcElhinny@mofo.com
Email:  KColes@mofo.com
Email:  EBalassone@mofo.com

Colette Reiner Mayer*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile:  (650) 494-0792
Email:  CRMayer@mofo.com

Attorneys for Plaintiffs

*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)*

Additional counsel on next page.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe # 1; Jane Doe # 2; and Norlan Flores, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>Jeh Johnson, Secretary, United States Department of Homeland Security, in his official capacity; R. Gil Kerlikowske, Commissioner, United States Customs & Border Protection, in his official capacity; Michael J. Fisher, Chief of the United States Border Patrol, in his official capacity; Jeffrey Self, Commander, Arizona Joint Field Command, in his official capacity; and Manuel Padilla, Jr., Chief Patrol Agent-Tucson Sector, in his official capacity,<br><br>    Defendants. | Case No. 4:15-cv-00250-TUC-DCB<br><br>**STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEAL DOCUMENTS** |

1    Louise C. Stoupe*                      Travis Silva*
     Pieter S. de Ganon*                     LAWYERS' COMMITTEE FOR CIVIL
2    MORRISON & FOERSTER LLP                 RIGHTS OF THE SAN FRANCISCO
     Shin-Marunouchi Building, 29th Floor    BAY AREA
3    5-1, Marunouchi 1-Chome                 131 Steuart Street, Suite 400
     Tokyo, Chiyoda-ku  100-6529, Japan      San Francisco, CA  94105
4    Telephone: +81-3-3214-6522              Telephone: (415) 543-9444
     Facsimile:  +81-3-3214-6512             Facsimile:  (415) 543-0296
5    Email: LStoupe@mofo.com                 Email:  tsilva@lccr.com
     Email: PdeGanon@mofo.com
6
     Linton Joaquin*
7    Karen C. Tumlin*
     Nora A. Preciado*
8    NATIONAL IMMIGRATION LAW
     CENTER
9    3435 Wilshire Boulevard, Suite 2850
     Los Angeles, CA  90010
10   Telephone: (213) 639-3900
     Facsimile:  (213) 639-3911
11   Email:  joaquin@nilc.org
     Email:  tumlin@nilc.org
12   Email:  preciado@nilc.org

13   Mary Kenney*
     Emily Creighton*
14   Melissa Crow*
     AMERICAN IMMIGRATION COUNCIL
15   1331 G Street NW, Suite 200
     Washington, D.C. 20005
16   Telephone: (202) 507-7512
     Facsimile:  (202) 742-5619
17   Email:  mkenney@immcouncil.org
     Email:  ecreighton@immcouncil.org
18   Email:  mcrow@immcouncil.org

19   Victoria Lopez (Bar No. 330042)**
     Daniel J. Pochoda (Bar No. 021979)
20   James Duff Lyall (Bar No. 330045)**
     ACLU FOUNDATION OF ARIZONA
21   3707 North 7th Street, Suite 235
     Phoenix, AZ  85014
22   Telephone: (602) 650-1854
     Facsimile:  (602) 650-1376
23   Email:  vlopez@acluaz.org
     Email:  dpochoda@acluaz.org
24   Email:  jlyall@acluaz.org

25
     Attorneys for Plaintiffs
26
     * Admitted pursuant to Ariz. Sup. Ct. R. 38(a)
27   ** Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

28

1    Plaintiffs submit the attached Ninth Circuit opinion, *The Center for Auto Safety v.*

2  *Chrysler Group, LLC*, No. 15-55084, (the "Opinion"), filed January 11, 2016,

3  http://cdn.ca9.uscourts.gov/datastore/opinions/2016/01/11/15-55084.pdf.  (*See*

4  Attachment A.)[1]   The Opinion is directly relevant to Defendants' Partial Motion to Seal

5  Documents and Partial Withdrawal of Confidentiality Designation Under L.R. 5.6 (ECF

6  No. 101) and Plaintiffs' Opposition to Defendants' Motion to Seal Documents (ECF No.

7  109) currently pending before this Court.

8    In the Opinion, the Ninth Circuit panel vacates the district court's (C.D. Cal.)

9  denial of a third-party motion to intervene and unseal "confidential" discovery documents

10  attached to a preliminary injunction motion.  The documents had been produced subject to

11  a court-approved protective order and the district court originally granted the parties'

12  motions to file the documents under seal.  The Ninth Circuit, however, concludes that the

13  party seeking to keep the documents sealed must meet the higher "compelling reasons"

14  standard and that the district court incorrectly applied the lower "good cause" standard.

15    Due to "a strong presumption in favor of access to court records", "[a] party

16  seeking to seal a judicial record then bears the burden of overcoming this strong

17  presumption by meeting the 'compelling reasons' standard."  (Opinion at 8 (quoting

18  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).)

19    The Ninth Circuit rejects the conclusion that a technically non-dispositive motion

20  should be "categorically shielded from the public right of access."  (*Id.* at 17.)  The court

21  reasons that

22    [m]ost litigation in a case is not literally 'dispositive,' but
    nevertheless involves important issues and information to which
23    our case law demands the public should have access.  To only apply
    the compelling reasons test to the narrow category of 'dispositive
24    motions' goes against the long held interest 'in ensuring the
    public's understanding of the judicial process and of significant
25    public events.'

26  (*Id.* at 11 (quoting *Kamakana*, 447 F.3d at 1179).)

27  ────────────────
    [1] A courtesy copy of the Opinion is appended hereto for the Court's convenience.

28

1    Rather than apply a bright-line rule based on whether a motion is dispositive, "[t]he

2    focus in all of our cases is on whether the motion at issue is more than tangentially related

3    to the underlying cause of action." (*Id.* at 12 (citing *Phillips ex rel. Estate of Byrd v. Gen*

4    *Motors Corp.*, 307 F.3d 3d 1206, 1212 (9th Cir. 2002).)  "[P]ublic access will turn on

5    whether the motion is more than tangentially related to the merits of a case." (*Id.* at 17.)

6    The Ninth Circuit compares motions for preliminary injunctions to dispositive

7    motions, recognizing that "a motion for preliminary injunction frequently requires the

8    court to address the merits of a case, which often includes the presentation of substantial

9    evidence" and "may even, as a practical matter, determine the outcome of a case." (*Id.* at

10   12-13 (internal citations omitted.))  "In fact, because motions for preliminary injunctions

11   are so significant, they are one of the few categories of motions that may be heard as

12   interlocutory appeals." (*Id.* at 13.)

13   The Ninth Circuit rejects the argument that a court should not apply the

14   presumption of public access if a preliminary injunction motion is ultimately denied,

15   reasoning that "[t]he common law right of access promotes the 'public interest in

16   understanding' the judicial process itself." (*Id.* at 19 (quoting *Foltz v. State Farm Mut.*

17   *Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).)

18   The Ninth Circuit concludes that "the preliminary injunction motion here was more

19   than tangentially related to the merits of the case" and, on that basis, vacates and remands

20   for the district court to consider the sealing of documents under a compelling reasons

21   standard. (*Id.* at 20.)

22   Dated: January 12, 2016          By:   */s/ Harold J. McElhinny*

23                                          Harold J. McElhinny*
                                            Kevin M. Coles*
24                                          Elizabeth Balassone*
                                            MORRISON & FOERSTER LLP
25                                          425 Market Street
                                            San Francisco, CA  94105-2482
26                                          Telephone: (415) 268-7000
                                            Facsimile:  (415) 268-7522
27                                          Email:  HMcElhinny@mofo.com
                                            KColes@mofo.com, EBalassone@mofo.com
28

1

2

3

4

Colette Reiner Mayer*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile:  (650) 494-0792
Email:  CRMayer@mofo.com

5

6

7

8

9

10

Louise C. Stoupe*
Pieter S. de Ganon*
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Tokyo, Chiyoda-ku  100-6529, Japan
Telephone: +81-3-3214-6522
Facsimile:  +81-3-3214-6512
Email:  LStoupe@mofo.com
Email:  PdeGanon@mofo.com

11

12

13

14

15

16

Linton Joaquin*
Karen C. Tumlin*
Nora A. Preciado*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA  90010
Telephone: (213) 639-3900
Facsimile:  (213) 639-3911
Email:  joaquin@nilc.org
Email:  tumlin@nilc.org
Email:  preciado@nilc.org

17

18

19

20

21

22

Mary Kenney*
Emily Creighton*
Melissa Crow*
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, D.C. 20005
Telephone: (202) 507-7512
Facsimile:  (202) 742-5619
Email:  mkenney@immcouncil.org
Email:  ecreighton@immcouncil.org
Email:  mcrow@immcouncil.org

23

24

25

26

27

28

Victoria Lopez (Bar No. 330042)**
Daniel J. Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)**
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ  85014
Telephone: (602) 650-1854
Facsimile:  (602) 650-1376
Email:  vlopez@acluaz.org
Email:  dpochoda@acluaz.org
Email:  jlyall@acluaz.org

Travis Silva*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA  94105
Telephone: (415) 543-9444
Facsimile:  (415) 543-0296
Email:  tsilva@lccr.com


Attorneys for Plaintiffs

* Admitted pursuant to Ariz. Sup. Ct. R. 38(a)
** Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on this 12th day of January, 2016, I caused a PDF version of
the foregoing document to be electronically transmitted to the Clerk of the Court, using
3  the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all
CM/ECF registrants.

4

5

6

7   —————————————————              —————————————————
       Harold J. McElhinny                          /s/ Harold J. McElhinny
8              (typed)                                      (signature)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE CENTER FOR AUTO SAFETY, *Intervenor-Appellant*, <br><br> v. <br><br> CHRYSLER GROUP, LLC, *Defendant-Appellee*. | No. 15-55084 <br><br> D.C. No. 2:13-cv-08080-DDP-VBK <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
October 20, 2015—Pasadena, California

Filed January 11, 2016

Before: Sandra S. Ikuta and John B. Owens, Circuit Judges
and William K. Sessions,[*] District Judge.

Opinion by Judge Owens;
Concurrence by Judge Sessions
Dissent by Judge Ikuta

---

[*] The Honorable William K. Sessions III, District Judge for the U.S. District Court for the District of Vermont, sitting by designation.

2    CENTER FOR AUTO SAFETY V. CHRYSLER GROUP

## SUMMARY[**]

### Sealed Documents

The panel vacated the district court's order denying The Center for Auto Safety's motions to intervene and unseal documents filed to support and oppose a motion for preliminary injunction in a putative class action between Chrysler Group, LLC and certain named plaintiffs, and remanded for further proceedings.

A party seeking to seal a judicial record bears the burden of overcoming a strong presumption in favor of access to court records by showing "compelling reasons," and the court must then balance the compelling interests of the public and the party seeking to keep the judicial record secret. Under an exception for sealed materials attached to a discovery motion unrelated to the merits of a case, a party seeking to seal the record need only satisfy a less exacting "good cause" standard. When deciding what test to apply to a motion to unseal a particular court filing – the presumptive "compelling reasons" standard or the "good cause" exception – the court has often deployed the terms "dispositive" and "non-dispositive."

The panel presumed that the instant motion for preliminary injunction was technically nondispositive. The panel held that public access to filed motions and their attachments did not depend on whether the motion was technically "dispositive;" but rather, public access turned on

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

whether the motion was more than tangentially related to the merits of the case.  The panel concluded that plaintiffs' motion for preliminary injunction was more than tangentially related to the merits.  The panel remanded for the district court to consider the documents under the compelling reasons standard.

Concurring, District Judge Sessions wrote separately to express his belief that reversal was warranted even under the binary approach endorsed by the dissent because the preliminary injunction at issue was literally "dispositive" of plaintiffs' request that Chrysler issue notice to its customers.

Judge Ikuta dissented because she believed that the majority opinion overruled circuit precedent and vitiated Fed. R. Civ. P. 26(c).  Judge Ikuta would employ the "binary approach" which holds that the public's presumed right of access applied to sealed discovery documents attached to a dispositive motion, but did not apply to sealed discovery documents attached to a nondispositive motion.

---

## COUNSEL

Jennifer D. Bennett (argued) and Leslie A. Bailey, Public Justice PC, Oakland, California, for Intervenor-Appellant.

Thomas H. Dupree, Jr. (argued) and Sarah G. Boyce, Gibson, Dunn & Crutcher LLP, Washington, D.C.; Kathy A. Wisniewski, John W. Rogers, and Stephen A. D'Aunoy, Thompson Coburn LLP, St. Louis, Missouri; Rowena Santos, Thompson Coburn LLP, Los Angeles, California, for Defendant-Appellee.

---

**OPINION**

OWENS, Circuit Judge:

The Center for Auto Safety (CAS) appeals from the district court's order denying CAS's motions to intervene and unseal documents filed in a putative class action lawsuit between Chrysler Group, LLC (Chrysler) and certain named plaintiffs. Because the district court applied the incorrect standard when evaluating the motion to unseal these documents, we vacate and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2013, plaintiffs filed a putative class action alleging defects in a part found in certain Chrysler vehicles.[1]  As part of the discovery process, the parties entered into a stipulated protective order. The protective order permitted each party to designate certain documents as "confidential," and required any party that later wished to attach a "confidential" document to a court pleading to apply to do so under seal.

In 2014, plaintiffs moved for a preliminary injunction to require Chrysler to notify the proposed class of the alleged risks its vehicles presented. Plaintiffs and Chrysler attached "confidential" discovery documents to their memoranda supporting and opposing the motion. Consistent with the stipulated protective order, both parties applied to the district court to file the documents under seal, and the district court

---

[1] We express no opinion on the merits of the underlying lawsuit, including whether the part in question was defective.

granted the motions.  The district court eventually denied the motion for preliminary injunction.

Shortly before the district court denied plaintiffs' motion for preliminary injunction, CAS filed motions to intervene and unseal the "confidential" documents filed to support and oppose the motion for preliminary injunction.  CAS argued that only "compelling reasons" could justify keeping these documents under seal, while Chrysler contended that it need only show "good cause" to keep them from the public's view.

The district court reviewed the relevant Ninth Circuit case law and other district courts' attempts to apply it to a motion for preliminary injunction.  While ordinarily a party must show "compelling reasons" to keep a court document under seal, *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), the district court relied on language in our cases which provides that when a party is attempting to keep records attached to a "non-dispositive" motion under seal, it need only show "good cause," *id.* at 1180.  While recognizing that "[t]here is little clarity as to what, exactly, constitutes a 'dispositive' motion," and that our circuit has not articulated the difference between a dispositive and nondispositive motion,[2] the district court decided to

---

[2] District courts have understandably struggled with our use of the term "dispositive" in these circumstances.  Many courts have applied the compelling reasons standard to motions for preliminary injunctions or temporary restraining orders.  *See United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 2015 WL 295584, at *2 (N.D. Cal. Jan. 21, 2015); *Gamez v. Gonzalez*, 2013 WL 127648, at *2 (E.D. Cal. Jan 9, 2013); *Melaluca Inc. v. Bartholomew*, 2012 WL 5931690, at *2 (D. Idaho Nov. 27, 2012); *FTC v. AMG Servs., Inc.*, 2012 WL 3562027, at *2 (D. Nev. Aug 15, 2012); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2936432, at *3 (N.D. Cal. July 18, 2012); *Selling Source, LLC v. Red Rivers Ventures,*

read "dispositive" to mean that unless the motion could literally lead to the "*final* determination on some issue," a party need show only good cause to keep attached documents under seal.  That was especially true in this case, the district court believed, as the motion for preliminary injunction here sought "notice of potential problems . . . to thousands of purchasers," and "was not a motion to temporarily grant the relief ultimately sought in [the] underlying suit." Accordingly, the district court found that the motion for preliminary injunction here was nondispositive, applied the good cause standard to the documents filed under seal, and concluded that good cause existed to keep them from the public's view.**[3]**

---

*LLC*, 2011 WL 1630338, at \*4–5 (D. Nev. Apr. 29, 2011); *B2B CFO Partners, LLC v. Kaufman*, 2010 WL 2104257, at \*1 (D. Ariz. May 25, 2010); *Dish Network LLC v. Sonicview USA, Inc.*, 2009 WL 2224596, at \*6 (S.D. Cal. July 23, 2009); *Yountville Investors, LLC v. Bank of Am.*, 2009 WL 411089, at \*2 (W.D. Wash. Feb. 17, 2009).

Others, like the district court here, *Velasco v. Chrysler Grp., LLC*, 2014 WL 7404590, at \*6 (C.D. Cal. Dec. 30, 2014), have applied the good cause standard.  *See Hanginout, Inc. v. Google, Inc.*, 2014 WL 1234499, at \*1 (S.D. Cal. Mar. 24, 2014); *In re Nat'l Sec. Telecomm. Records Litig.*, 2007 WL 549854, at \*3–4 (N.D. Cal. Feb. 20, 2007); *Reilly v. MediaNews Grp. Inc.*, 2007 WL 196682, at \*1–2 (N.D. Cal. Jan. 24, 2007).

The dissent argues that our decision is unfair to Chrysler, as Chrysler should have been able to "confidently rely on the district court's protective order" to shield these documents from public scrutiny. Dissent at 33. The sharp disagreement in our district courts about the application of our precedent to motions for preliminary injunction suggests that the result here is neither unfair nor unexpected.

**[3]** Because we are vacating the order denying the motion to unseal the documents and remanding this case so the district court can apply the "compelling reasons" standard, we also vacate the district court's order

## II. STANDARD OF REVIEW

We review a district court's decision to unseal court records for an abuse of discretion. *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d 1349, 1352 (9th Cir. 2013). Where "the district court's decision turns on a legal question, however, its underlying legal determination is subject to *de novo* review." *San Jose Mercury News, Inc. v. U.S. Dist. Court—N.D. Cal. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).

"We have jurisdiction because an order denying a motion to unseal or seal documents is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. Standard to File Documents Under Seal

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commnc'ns Inc.*, 435 U.S. 589, 597 (1978). Following the Supreme Court's lead, "we start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of

---

denying the motion to intervene, and remand this question to the district court to examine anew.

accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1048 (2d Cir. 1995); *see also Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986) (explaining that the presumption of public access "promot[es] the public's understanding of the judicial process and of significant public events").

Accordingly, "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178. Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179. The court must then "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (quoting *Foltz*, 331 F.3d at 1135) (alteration in original) (internal quotation marks omitted). What constitutes a "compelling reason" is "best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599. Examples include when a court record might be used to "gratify private spite or promote public scandal," to circulate "libelous" statements, or "as sources of business information that might harm a litigant's competitive standing." *Id.* at 598–99.

Despite this strong preference for public access, we have "carved out an exception," *Foltz*, 331 F.3d at 1135, for sealed materials attached to a discovery motion unrelated to the merits of a case, *see Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213–14 (9th Cir. 2002). Under this exception, a party need only satisfy the less exacting "good cause" standard. *Foltz*, 331 F.3d at 1135.

The "good cause" language comes from Rule 26(c)(1), which
governs the issuance of protective orders in the discovery
process: "The court may, for good cause, issue an order to
protect a party or person from annoyance, embarrassment,
oppression, or undue burden or expense . . . ." Fed. R. Civ.
P. 26(c).   "Applying a strong presumption of access to
documents a court has already decided should be shielded
from the public would surely undermine, and possibly
eviscerate, the broad power of the district court to fashion
protective orders," and thereby undermine Rule 26(c).
*Phillips*, 307 F.3d at 1213; *see also Seattle Times Co. v.
Rhinehart*, 467 U.S. 20, 33 (1984) (explaining that discovery
is largely "conducted in private as a matter of modern
practice," so the public is not presumed to have a right of
access to it); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st
Cir. 1986) ("There is no tradition of public access to
discovery, and requiring a trial court to scrutinize carefully
public claims of access would be incongruous with the goals
of the discovery process.").

When deciding what test to apply to a motion to unseal a
particular court filing—the presumptive "compelling reasons"
standard or the "good cause" exception—we have sometimes
deployed the terms "dispositive" and "non-dispositive." For
example, in *Phillips*, the Los Angeles Times moved to unseal
confidential settlement information that General Motors
produced in discovery under a protective order and was
subsequently attached to a discovery sanctions motion.
307 F.3d at 1208–10. The district court granted the motion
to unseal. *Id*. at 1208–09. In reversing that decision, we
stressed the special role that protective orders play, that
"[m]uch of the information that surfaces during pretrial
discovery may be unrelated, or only tangentially related, to
the underlying cause of action," and reasoned that it made

"little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive sanctions motion filed with the court." *Id.* at 1212–13 (quoting in part *Seattle Times Co.*, 467 U.S. at 33); *see also Kamakana*, 447 F.3d at 1179–80 (explaining that the sealed records in *Phillips* were "not directly relevant to the merits of the case"). Applying the good cause standard from Rule 26(c) as an exception for discovery-related motions makes sense, as the private interests of litigants are "the only weights on the scale." *Kamakana*, 447 F.3d at 1180.

In *Foltz*, we again discussed "dispositive" and "nondispositive" motions. We recognized that "[t]here are good reasons to distinguish between dispositive and nondispositive motions," as while discovery-related motions are often unrelated to the merits of a case, "[t]he same cannot be said for materials attached to a summary judgment motion because 'summary judgment adjudicates substantive rights and serves as a substitute for trial.'" 331 F.3d at 1135–36 (quoting *Rushford v. New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988)).    Accordingly, we applied the "compelling reasons" standard to documents attached to a motion for summary judgment.  *Id.*; *see also Kamakana*, 447 F.3d at 1178–80 (reviewing *Phillips* and *Foltz*).

Like the district court, Chrysler urges us to read our case law to limit the "compelling reasons" test to only those cases in which the motion at issue is literally dispositive, meaning that it "bring[s] about a final determination." Black's Law Dictionary 540 (10th ed. 2014). This would include motions to dismiss, for summary judgment, and judgment on the pleadings, but would not include other motions that go to the heart of a case, such as a motion for preliminary injunction or

a motion in limine.  In other words, the public would not be
presumed to have regular access to much (if not most) of the
litigation in federal court, as that litigation rarely falls into the
narrow category of "dispositive."

Although the apparent simplicity of the district court's
binary approach is appealing, we do not read our case law to
support such a limited reading of public access.**[4]**  Most
litigation in a case is not literally "dispositive," but
nevertheless involves important issues and information to
which our case law demands the public should have access.
To only apply the compelling reasons test to the narrow
category of "dispositive motions" goes against the long held
interest "in ensuring the public's understanding of the judicial
process and of significant public events." *Kamakana*,
447 F.3d at 1179 (quoting *Valley Broad. Co.*, 798 F.2d at
1295) (internal quotation marks omitted).  Such a reading also
contradicts our precedent, which presumes that the
"'compelling reasons' standard applies to *most* judicial
records." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665,
677–78 (9th Cir. 2009) (emphasis added).

When using the words "dispositive" and "nondispositive,"
we do not believe our court intended for these descriptions to
morph into mechanical classifications.  Rather, these
descriptive terms are indicative of when a certain test should
apply.  For example, in *Kamakana*, we wrote that there is a
"good reason[]" why the public interest in accessing
nondispositive motions is not as strong as dispositive
motions: because nondispositive motions "are *often*

---

**[4]** Moreover, as previously noted, district courts have sometimes
struggled with this binary approach, and therefore it is not as simple as it
first appears. *See supra* note 2.

12   CENTER FOR AUTO SAFETY V. CHRYSLER GROUP

'unrelated, or only tangentially related, to the underlying cause of action.'" 447 F.3d at 1179 (emphasis added) (quoting *Seattle Times Co.*, 467 U.S. at 33). This statement implicitly acknowledges that nondispositive motions are not *always* unrelated to the underlying cause of action. The nondispositive discovery motion in *Phillips* was unlikely to be related to the merits, while the motions for summary judgment in *Foltz* and *Kamakana* obviously were. Nothing in *Phillips* (or any other case cited by Chrysler or the dissent) contemplates that the right of public access would be limited solely to literally dispositive motions, as none of those cases address the situation in which a nondispositive motion may be directly related to the merits of the case and where the "good reason" identified for treating nondispositive motions differently no longer applies.

The focus in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action. *See Phillips*, 307 F.3d at 1212–13; *Foltz*, 331 F.3d at 1134–36; *Kamakana*, 447 F.3d at 1179; *Pintos*, 605 F.3d at 678; *Oliner*, 745 F.3d at 1026. It is true that nondispositive motions are sometimes not related, or only tangentially related, to the merits of a case, as in *Phillips*. But plenty of technically nondispositive motions—including routine motions in limine—are strongly correlative to the merits of a case.[5]

Particularly relevant here, a motion for preliminary injunction frequently requires the court to address the merits

---

[5] For example, a motion in limine to admit statements in furtherance of a conspiracy under Federal Rule of Evidence 801(d)(2)(E) will often spell out the very conspiracy alleged in a civil RICO complaint. *See Kaley v. United States*, 134 S. Ct. 1090, 1111–12 (2014) (Roberts, C.J., dissenting).

of a case, which often includes the presentation of substantial evidence. *Stormans v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). A motion for preliminary injunction may even, as a practical matter, determine the outcome of a case. *See, e.g.*, *Miller v. Rich*, 845 F.2d 190, 191 (9th Cir. 1988) (explaining how "in this case, the denial of the preliminary injunction effectively decided the merits of the case" (citation omitted)). In fact, because motions for preliminary injunctions are so significant, they are one of the few categories of motions that may be heard as interlocutory appeals. *See id.*; *see also* 28 U.S.C. § 1292. In certain circumstances, an appellate court may even choose to decide the merits of the case on an appeal from a motion for preliminary injunction as to the applicable rule of law. *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 756–57 (1986) (*overruled in part on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)); *Gorbach v. Reno*, 219 F.3d 1087, 1091 (9th Cir. 2000) (en banc). For the purposes of this opinion, however, we assume that the instant motion for preliminary injunction was technically nondispositive.[6]

Under Chrysler's view, the strong presumption of public access does not apply to any of the prior examples, but it would apply to a motion for summary judgment, which may contain the exact same materials. A motion for discovery sanctions that requests dismissal as a remedy would be "dispositive" under Chrysler's test, while the same motion attaching the same documents—but seeking a remedy just shy of dismissal—would be "nondispositive." Neither our case

---

[6] We do not decide whether a motion for preliminary injunction is always "nondispositive."

law nor the strong principles of public access to the courts
supports such incongruity.

Nor does the case law of other circuits, which rejects a
mechanistic rule to determine when the presumption of public
access applies. In the Second Circuit, for example, the
weight given to the presumption of access is "governed by the
role of the material at issue in the exercise of Article III
judicial power and the resultant value of such information to
those monitoring the federal courts." *Amodeo II*, 71 F.3d at
1049. Documents submitted to the court exist on a
"continuum," spanning those that play a role in "determining
litigants' substantive rights," which are afforded "strong
weight," to those that play only a "negligible role in
performance of Article III duties . . . such as those passed
between the parties in discovery," which lie "beyond the
presumption's reach." *Id.* at 1049–50. Similarly, in the First
Circuit, the public has a right of access to "materials on which
a court relies in determining the litigants' substantive rights"
which are "distinguished from those that relate[ ] merely to
the judge's role in management of the trial and therefore play
no role in the adjudication process." *United States v. Kravetz*,
706 F.3d 47, 54 (1st Cir. 2013) (citations omitted) (alterations
in original).

The Third and Eleventh Circuits directly reject a literal
divide between dispositive and nondispositive motions.
According to the Third Circuit, "there is a presumptive right
of access to pretrial motions of a nondiscovery nature,
whether preliminary or dispositive, and the material filed in
connection therewith. . . . We see no reason to distinguish
between material submitted in connection with a motion for
summary judgment and material submitted in connection with
a motion for preliminary injunction . . . ." *Leucadia, Inc. v.*

*Applied Extrusion Tech., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993). The rationale is that the presumption should apply to any motion related to a "matter[] which the public has a right to know about and evaluate." *Id.* (alteration in original) (citation omitted). Similarly, in the Eleventh Circuit, material filed in connection with any "substantive pretrial motion, unrelated to discovery, is subject to the common law right of access," "whether or not characterized as dispositive." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245–46 (11th Cir. 2007) (citing *Amodeo II*, 71 F.3d at 1050).

Given that preliminary injunctions are "extraordinary and drastic" remedies, *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012), they may certainly affect litigants' "substantive rights," *see Kravetz*, 706 F.3d at 54, *Amodeo II*, 71 F.3d at 1049. They also invoke important "Article III" powers, *Amodeo II*, 71 F.3d at 1049, so much so that magistrate judges may not even rule upon them, 28 U.S.C. § 636(b)(1)(A). A bright line rule that does not afford a presumption of access to a motion for preliminary injunction because it is "nondispositive" conflicts with the Third and Eleventh Circuits and is, at best, in tension with the First and Second Circuits.

*In re Midland National Life Insurance Company Annuity Sales Practices Litigation*, 686 F.3d 1115 (9th Cir. 2012), illustrates that our circuit looks past the literal dispositive/nondispositive label. In that case, an intervenor moved to unseal documents attached to a *Daubert* motion. *Id.* at 1118. The district court, like the district court here, concluded that the documents should remain under seal because "the *Daubert* motion was non-dispositive," as it "would not have been a determination on the merits of any claim or defense." *Id.* at 1119. We rejected the district

court's focus on whether the motion was literally "dispositive": "That the records are connected to a *Daubert* motion does not, on its own, conclusively resolve the issue." *Id.* As the motion, in effect, "pertain[ed] to central issues bearing on defendant's summary judgment motion," we treated that motion as dispositive. *Id.* We did not allow the technically nondispositive nature of the *Daubert* motion to cloud the reality that it was able to significantly affect the disposition of the issues in the case. *See also Oliner*, 745 F.3d at 1025–26 (applying "compelling reasons" test to motion to seal entire court record of an appeal from the bankruptcy court, even though motion did not result in a final determination on the merits).

Case law is also replete with examples of motions for preliminary injunctions that reflect the need for the public right of access—to "provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Leucadia*, 998 F.2d at 161 (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991)). Motions for preliminary injunctions have been utilized to: test the boundaries of equal protection; police the separation of powers in times of domestic and global instability; protect "one of our most valuable rights," the right to retain United States citizenship; and even determine life or death.[7] "People in an open society do not

---

[7] *Coalition for Econ. Equity v. Wilson*, 122 F.3d 692, 715 (9th Cir. 1997) (vacating grant of motion for preliminary injunction and sustaining constitutionality of California's anti-affirmative action initiative, Proposition 209); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 714–15 (9th Cir. 1997) (holding, on appeal from motion for preliminary injunction, that state program setting goals for ethnic and sex characteristics of construction subcontractors violates the equal protection clause); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 584–85

demand infallibility from their institutions" with respect to such issues, "but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). In light of the strong presumption, these impactful motions should not be categorically shielded from the public right of access.

Consistent with our precedent, we make clear that public access to filed motions and their attachments does not merely depend on whether the motion is technically "dispositive."**[8]** Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case. While many technically nondispositive motions will fail this test, some will pass. Our reading of the public access cases is consistent with our own case law, and more importantly, comports with

_____

(1952) (making a "final determination of the constitutional validity of the President's order" on an appeal from a motion for preliminary injunction restraining the Secretary of Commerce from seizing the nation's steel mills); *Reno*, 219 F.3d at 1091, 1098–99 (holding on appeal from a motion for preliminary injunction that the INS may not revoke a person's citizenship administratively); *Lopez*, 680 F.3d at 1074, 1078 (allowing an execution to proceed on appeal of denial of motion for preliminary injunction over an Eighth Amendment challenge).

**[8]** Our circuit already considers motions for preliminary injunctions "dispositive" in the context of magistrate jurisdiction. A magistrate judge may "hear and determine any pretrial matter pending before the court except a *motion for injunctive relief*, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A) (emphasis added). Those "matters listed in 28 U.S.C. § 636(b)(1)(A) are dispositive while, *in general*, other matters are non-dispositive." *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) (emphasis in original).

the old tradition of ensuring public access which "antedates the Constitution and . . . is now beyond dispute." *Leucadia*, 998 F.2d at 161 (internal quotation marks and citation omitted).

The dissent's doomsday depiction of our opinion, in which we purportedly "eviscerate[] Rule 26(c) and its benefits," Dissent at 32, not only ignores the real world intersection of Rule 26(c) and the right to public access, but also the clear language from our previous decisions. As the dissent does not dispute, its reading of Rule 26(c) in this context conflicts with virtually every other circuit to review this issue. The district courts in those circuits routinely apply a more nuanced test, and none has complained of staring at "an ink blot." Dissent at 31. We have full confidence that judges in our circuit are equally capable. The dissent's convenient chessboard sweep of the experiences of our sister circuits—responding only by calling them "irrelevant" in a footnote—illustrates its shaky foundation. Dissent at 28, n.2. And more importantly, the dissent's indignation that we read certain language in our opinions as descriptive, rather than definitive, ignores that it does the same thing—it chooses to interpret the dispositve/nondispositive language as "a bright line rule," while painting the "more than tangentially related to the merits of a case" phrase as "reasoning we used to justify the adoption of a bright line rule." Dissent at 26. Yet the dissent is the only opinion from any appellate court to read our caselaw in such stark terms. We choose to follow language in our case law that makes sense and is consistent with our fellow circuits.

## B.  The Instant Motion for Preliminary Injunction

Applying our circuit's case law, we conclude that plaintiffs' motion for preliminary injunction is more than tangentially related to the merits.  In the complaint, plaintiffs were seeking, in addition to damages, injunctive relief, including an order "requiring Chrysler to adequately disclose and repair the [vehicle] defect." In the preliminary injunction motion, plaintiffs requested that Chrysler notify its customers that there was a part in their vehicle which could require replacement and be dangerous if it failed.  As Chrysler argued in its opposition to the preliminary injunction, once notice is given, it "alters the status quo and cannot be undone."  If plaintiffs had succeeded in their motion for preliminary injunction, they would have won a portion of the injunctive relief they requested in the underlying complaint, and that portion of their claims would have been resolved.

Chrysler's counterarguments are unavailing.     First, Chrysler contends that because this motion for preliminary injunction was denied, the court should not apply the presumption of public access.  But the common law right of access promotes the "public interest in understanding" the judicial process itself, *Foltz*, 331 F.3d at 1135 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)), and the "bases or explanations for a court's decision," *Oliner*, 745 F.3d at 1025 (citation omitted).  Nothing in our precedent suggests that the right of access turns on any particular result. In fact, in *Kamakana*, our circuit applied the presumption of public access to a summary judgment motion that was "denied, in large part." 447 F.3d at 1176; *see also Leucadia*, 998 F.2d at 164 (citing *Westinghouse*, 949 F.2d at 661) (explaining that papers filed in connection with a motion "are

not entitled to be shielded from public access merely because the district court denied the motion rather than granted it").

Chrysler also argues that expanding the compelling reasons standard makes it easier for "litigants to override protective orders." As a result, litigants will file more "meritless motions." This argument is similarly unconvincing. District courts can use Rule 11 to impose sanctions on any party that files a motion for an "improper purpose" or who does so without a legal or factual basis. Fed. R. Civ. P. 11(b)–(c).

As the preliminary injunction motion here was more than tangentially related to the merits of the case, we vacate and remand for the district court to consider the documents under the compelling reasons standard.

## IV.  CONCLUSION

While simplicity has its virtues, it also has its vices. Here, permitting the public's right of access to turn on what *relief* a pleading seeks—rather than on the relevance of the pleading—elevates form too far beyond substance and over reads language in our case law. Our precedent, which always has focused on whether the pleading is more than tangentially related to the merits, recognizes this essential point. To hold otherwise would permit the discovery "exception" to swallow the public access rule. Due to the strong presumption for public access and the nature of the instant motion for a

preliminary injunction, Chrysler must demonstrate compelling reasons to keep the documents under seal.

**VACATED AND REMANDED.**

Chrysler shall bear costs on appeal.

SESSIONS, District Judge, concurring:

I fully concur in the majority opinion's thoughtful analysis of Ninth Circuit precedent, and in its determination that public access to filed motions and their attachments hinges not on whether the motion is literally "dispositive," but on whether the motion is more than tangentially related to the merits of the underlying case. I also concur in the majority's conclusion that the preliminary injunction motion here was more than tangentially related to the merits of the case, and that the district court should therefore reconsider the documents under the compelling reasons standard. I write separately only to express my belief that reversal is warranted even under the binary approach endorsed by the dissent, for in my view the preliminary injunction motion at issue was literally "dispositive" of plaintiffs' request that Chrysler issue notice to its customers.

Along with both the majority and the dissent, I accept that a motion is literally dispositive if it "bring[s] about a final determination." *See* Maj. op. at 10 (quoting Black's Law Dictionary 540 (10th ed. 2014)); Dissent at 26. A motion may bring about a final determination of one claim, however, without disposing of an entire case. Indeed, it goes without saying that parties frequently file motions for partial

summary judgment.   And as the dissent writes, "it is
undisputed that summary judgment motions are dispositive."
Dissent at 29.   Thus, it appears to be uncontroverted that
within a single case, a motion may be dispositive of some
claims and nondispositive of others.

In the present case, plaintiffs' complaint sought not only
damages, but also injunctive relief, including an order
"requiring Chrysler to adequately disclose and repair the
[vehicle] defect." Similarly, plaintiffs' preliminary injunction
motion requested that Chrysler notify its customers that a part
in their vehicles may be dangerous and require replacement.
Because notice cannot be withdrawn once it is given, granting
the preliminary injunction motion would have awarded
plaintiffs a portion of their requested relief.   For that reason,
I find that the preliminary injunction motion here was literally
"dispositive" of plaintiffs' request that Chrysler issue notice
to its customers.

In sum, I fully concur in the judgment of the Court for the
reasons discussed in Judge Owens's majority opinion.   I add,
however, that in my view the motion for preliminary
injunction in the present case was literally "dispositive" of
plaintiffs' request for disclosure.   As a result, even under the
dissent's approach, I would vacate and remand for the district
court to reconsider whether the documents relevant to
plaintiffs' demand for notice should remain under seal using
the compelling reasons standard.

IKUTA, Circuit Judge, dissenting:

According to the majority, the district court here erred because it "relied on language in our cases which provides that when a party is attempting to keep records attached to a 'non-dispositive' motion under seal, it need only show 'good cause.'" Maj. op. at 5. This comes as a surprise, because the "language in our cases" constitutes binding precedent. But no matter, the majority invents a new rule, namely that a party cannot keep records under seal if they are attached to *any* motion that is "more than tangentially related to the merits of a case," Maj. op. at 17, unless the party can meet the "stringent standard" of showing that compelling reasons support secrecy, Maj. op. at 8.   Because this decision overrules circuit precedent and vitiates Rule 26(c) of the Federal Rules of Civil Procedure, I strongly dissent.

I

The right of litigants to protect certain documents disclosed in discovery from release to the public is embodied in Rule 26(c), which authorizes the district court to grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  This includes "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).

When discovery material is filed with a court, we balance the protection afforded litigants under Rule 26(c) with the presumption that the public has a right of access to public documents, including judicial records. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213

(9th Cir. 2002).   Our cases, as well as Supreme Court decisions, have made clear that the common law right of access "is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).   The presumption in favor of access can be overcome by showing "sufficiently important countervailing interests."   *Phllips*, 307 F.3d at 1212.

We have developed the following bright line rule to balance the common law right of access to court records with the protection afforded litigants under Rule 26(c):

(1) If a party to a legal proceeding attaches a sealed discovery document to a *nondispositive* motion, "the usual presumption of the public's right of access is rebutted," and "the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released."   *Phillips*, 307 F.3d at 1213.

(2) If a party attaches a sealed discovery document to a *dispositive* motion, the presumption of the public's right of access is not rebutted, and the party seeking to protect the document must show compelling reasons to maintain the documents under seal.   *Foltz*, 331 F.3d at 1136.

There is nothing ambiguous about this rule, which we have recited numerous times.   Beginning in *Phillips*, we explained that "when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released."   307 F.3d at 1213.   We justified this bright line rule

on the ground that the presumption of access to judicial documents should not eviscerate a district court's protective order, and that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id.* (quoting *Rhinehart*, 467 U.S. at 33).

We repeated this rule in *Foltz*, quoting *Phillips* verbatim for the proposition that "when a party attaches a sealed discovery document to a *nondispositive* motion, the usual presumption of the public's right of access is rebutted." 331 F.3d at 1135. *Foltz* then added the second prong of our rule, holding that "the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a *dispositive* motion." *Id.* at 1136 (emphasis added).

We repeated this two-part rule in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006). We first explained that we have "carved out an exception to the presumption of access to judicial records for a sealed discovery document [attached] to a *non-dispositive* motion, such that the usual presumption of the public's right of access is rebutted." *Id.* at 1179 (citing *Phillips*, 307 F.3d at 1213, and *Foltz*, 331 F.3d at 1135) (internal citations and quotation marks omitted). By contrast, "[t]hose who seek to maintain the secrecy of documents attached to *dispositive* motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Id.* at 1180 (emphasis added).

Summing up, "we treat judicial records attached to dispositive motions differently from records attached to non-dispositive motions." *Id.* at 1179. "Those who seek to maintain the secrecy of documents attached to dispositive

26   CENTER FOR AUTO SAFETY V. CHRYSLER GROUP

motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Id.* By contrast, "[a] 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.*

II

The majority boldly rejects this rule. It belittles the "simplicity" of our "binary approach," which holds that the public's presumed right of access applies to sealed discovery documents attached to a dispositive motion, but does not apply to sealed discovery documents attached to a nondispositive motion. Maj. op. at 10–11.

Instead of following precedent, the majority creates a new rule: "[W]e make clear that public access to filed motions and their attachments does not merely depend on whether the motion is technically 'dispositive.' Rather, public access will turn on whether the motion is *more than tangentially related to the merits of a case*." Maj. op. at 17 (emphasis added). In plucking this "more than tangentially related" language from the reasoning we used to justify the adoption of a bright line rule, *see, e.g.*, *Phillips*, 307 F.3d at 1213, the majority improperly replaces the rule itself with a single phrase from our reasoning.

There can be no mistake that this new rule is inconsistent with our existing precedent. As the majority concedes, "dispositive" has a precise legal definition: a motion is dispositive if it "bring[s] about a final determination." Maj. op. at 10 (quoting Black's Law Dictionary 540 (10th ed. 2014)). Likewise, the majority concedes that this legal definition "would include motions to dismiss, for summary judgment, and judgment on the pleadings," but would not

include "a motion for preliminary injunction or a motion in limine." Maj. op. at 10–11. And in this case, the majority assumes "that the instant motion for preliminary injunction was technically nondispositive." Maj. op. at 13. Under our existing precedent, therefore, the majority effectively admits it is wrong in holding that the documents attached to the preliminary injunction motion are subject to the public's presumed right of access absent compelling reasons for secrecy.[1]

The majority attempts to avoid this problem by relying on the oft-rejected casuistry that words have no fixed meaning, and therefore "non-dispositive" can also mean "dispositive." Surely, the majority argues, we did not intend to be bound by the literal meaning of the terms "dispositive" and "nondispositive" that "we have sometimes deployed," Maj. op. at 9, because that would merely "morph" these words "into mechanical classifications," Maj. op. at 11. Nothing in our case law (other than the words themselves), the majority claims, "contemplates that the right of public access would be limited solely to *literally* dispositive motions." Maj. op. at 12 (emphasis added).

This theory that we are not bound by the literal meaning of the words of our opinions would, of course, deprive our precedent of any binding force. Such a theory erodes the concept that law can be applied as written, whether by the

---

[1] As the concurrence points out, Conc. op. at 21, the majority could have reached the same result on much narrower grounds by holding that the preliminary injunction motion at issue in this case was literally "dispositive." But apparently eager to jettison our precedent, the majority instead assumes without deciding that the motion was "technically nondispositive." Maj. op. at 13.

28    CENTER FOR AUTO SAFETY V. CHRYSLER GROUP

legislature or judges, and "undermines the basic principle that
language provides a meaningful constraint on public and
private conduct." *Trident Ctr. v. Conn. Gen. Life Ins. Co.*,
847 F.2d 564, 569 (9th Cir. 1988). But judges are bound not
merely by "the reason and spirit of cases" but also by "the
letter of particular precedents." *Hart v. Massanari*, 266 F.3d.
1155, 1170 (9th Cir. 2001) (internal quotation marks
omitted). While we have the authority to distinguish
precedent on a principled basis, we are not free to ignore the
literal meaning of our rulings, even when the panel believes
the precedent is "unwise or incorrect." *Hart*, 266 F.3d at
1170; *see also, e.g.*, *United States v. Contreras*, 593 F.3d
1135, 1136 (9th Cir. 2010) (en banc) (reversing a three-judge
panel for overruling binding circuit precedent that was not
clearly irreconcilable with intervening higher authority.)
Moreover, we are bound by our precedent even if every other
circuit has rejected our view. *See Al Ramahi v. Holder*,
725 F.3d 1133, 1138 n.2 (9th Cir. 2013) (noting that "[n]early
all our sister circuits have rejected" our interpretation of the
Real ID Act, but "in the absence of any intervening higher
authority we are bound by" our prior opinion.).[2] By
intentionally disregarding the language "we have sometimes
deployed," Maj. op. at 9, the majority has flouted this most
basic, fundamental principle.

The majority's claim that we have previously rejected a
literal interpretation of the word "dispositive" does not
withstand examination. For instance, *In re Midland National
Life Insurance Co. Annuity Sales Practices Litigation*,
686 F.3d 1115 (9th Cir. 2012), *see* Maj. op. at 15–16, did not
purport to overrule our distinction between dispositive and

---

[2] For this reason, the out-of-circuit cases relied on by the majority, Maj.
op. at 14–15, are entirely irrelevant.

nondispositive filings. Rather, it deemed the expert reports filed "in connection with" pending summary judgment motions, *id*. at 1120, as being equivalent to attachments to those motions. Because it is undisputed that summary judgment motions are dispositive, the panel concluded that the attached reports did not "fall into the exception to the presumption of public access" which applies to judicial records attached to a non-dispositive motion.

Nor does our interpretation of the Federal Magistrates Act, 28 U.S.C. § 636, support the majority's approach. *See* Maj. op. at 17 n.8. Section 636(b) authorizes a magistrate judge to "hear and determine any pretrial matter pending before the court, *except* a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." *Id.* § 636(b)(1)(A) (emphasis added). In passing, we have referred to the category of motions listed in the exceptions to a magistrate judge's jurisdiction as "dispositive motions." Thus we have noted that the Federal Magistrates Act "provides that certain matters (for example, non-dispositive pretrial matters) may be referred to a magistrate judge for decision, while certain other matters (such as case-dispositive motions [and] petitions for writs of habeas corpus) may be referred only for evidentiary hearing, proposed findings, and recommendations." *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) (quoting *United States v. Reyna–Tapia*, 328 F.3d 1114, 1118 (9th Cir. 2003) (en banc)) (internal quotation marks omitted). But we have never addressed the question whether a preliminary injunction motion constitutes a case-dispositive motion for

purposes of the Federal Magistrates Act—let alone for
purposes of the public's presumed right of access—nor would
we have occasion to do so, because the Act precludes a
magistrate judge from ruling on such a motion regardless of
how it is characterized.

### III

In reality, the majority's only rationale for disregarding
our precedent is policy: the majority prefers to strike a
different balance between the common law right of public
access and the protections provided by Rule 26.  According
to the majority, the key policy concern here is that a motion
for preliminary injunction is very important.  Such a motion
may "test the boundaries of equal protection," "police the
separation of powers in times of domestic and global
instability," and "may even, as a practical matter, determine
the outcome of a case," Maj. op at 13, 16.  Therefore,
according to the majority, treating a nondispositive motion
for preliminary injunction the same as a summary judgment
motion would be incongruous, and "[n]either our case law nor
the strong principles of public access to the courts supports
such incongruity."  Maj. op. at 13–14.

As a threshold matter, even if the policy judgment
embodied in our precedent were wrong, the majority would
still be bound by it.  *See Hart*, 266 F.3d at 1170.  But there
are many policy reasons to reject the rule the majority invents
today.  For one, the majority's "more than tangentially
related" test has no discernible meaning.  A bright line
distinction between dispositive and nondispositive orders is
easy to administer, while district courts will have no
framework for deciding what quantum of relatedness is more
than tangential.  The majority's ill-defined standard is

certainly no improvement for the district courts that the
majority claims have "struggled" with our rule.  Maj. op. at
5 n.2.  The district courts that have declined to follow our rule
have simply adopted an alternate bright line rule, holding that
motions for preliminary injunctions are per se deemed
dispositive in the sealing context.**³**  The majority rejects even
this rule—which at least purports to follow our precedent—in
favor of an ink blot test.

More important, the majority's rule upsets the balance
between the common law right of access and Rule 26 that we
have developed.  As *Rhinehart* explained, "[i]t is clear from
experience that pretrial discovery by depositions and
interrogatories has a significant potential for abuse," because,
among other things, it "may seriously implicate privacy
interests of litigants and third parties" if litigants obtain
information that "if publicly released could be damaging to
reputation and privacy."  467 U.S. at 34–35.  For this reason,
despite the "extent of the impairment of First Amendment
rights that a protective order" may cause, *id.* at 32, the Court
concluded that "[t]he government clearly has a substantial
interest in preventing this sort of abuse of its processes," *id.*
at 35.

Recognizing the competing considerations between the
common law right of access and the policy goals embodied in
Rule 26, we struck an appropriate balance between the two.

---

**³** *See, e.g.*, *Selling Source, LLC v. Red River Ventures, LLC*, 2011 WL
1630338, at *5 (D. Nev. Apr. 29, 2011) ("[R]equests for preliminary
injunctive relief should be treated as dispositive motions for purposes of
sealing court records."); *Yountville Investors, LLC v. Bank of Am., N.A.*,
2009 WL 411089, at *2 (W.D. Wash. Feb. 17, 2009) ("A motion for a
preliminary injunction is treated as a dispositive motion under these
rules.").

As we explained, there are "good reasons to distinguish between dispositive and non-dispositive motions." *Kamakana*, 447 F.3d at 1179 (quoting *Foltz*, 331 F.3d at 1135). We noted that "the public has less of a need for access to court records attached only to non-dispositive motions," and so "[t]he public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Id.* We were also careful to avoid eviscerating Rule 26(c), noting that "[a]lthough we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive sanctions motion filed with the court." *Phillips*, 307 F.3d at 1213. Thus, our rule tracks the "good cause" standard of Rule 26(c) with respect to nondispositive motions, but gives due regard to the common law right of access to materials supporting dispositive motions by requiring litigants to make a higher showing to rebut the public's presumed right of access to material that resolves a legal dispute.

By contrast, the majority's test effectively holds that *all* sealed documents attached to *any* filing that has *any* relation to the merits of the case are subject to the public's presumed right of access, and therefore deprives protective orders issued under Rule 26(c) of any force or effect. Rule 26(c) "gives the district court much flexibility in balancing and protecting the interests of private parties," *Kamakana*, 447 F.3d at 1180, and has the beneficial effects of encouraging parties to exchange documents while reducing discovery disputes. The majority's rule eviscerates Rule 26(c) and its benefits.

Indeed, this very case demonstrates the problems with the majority's new rule.  The plaintiffs obtained 86,000 documents from Chrysler (including confidential and trade secret documents) without being put to the cost and delay of fighting discovery battles because Chrysler could confidently rely on the district court's protective order.  But under the majority's new rule, the majority holds that these confidential documents filed under seal are subject to the public's presumed right of access because the plaintiff elected to attach them to a motion for preliminary injunction on a tangential issue (and which was summarily denied by the district court).  Any member of the public will be able to obtain these documents filed under seal unless Chrysler can meet the intentionally stringent "compelling reasons" standard, which generally requires proof that the documents are being intentionally used for an improper purpose "such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (internal quotation marks omitted).  In addition to the unfairness of making Chrysler bear the consequences of encountering a three-judge panel that disagrees with its own circuit's precedent, it is clear that no future litigant can rely on a protective order and will have to chart its course through discovery cautiously and belligerently, to the detriment of the legal system.

Our circuit has considered it important to reject efforts by three-judge panels to overrule binding circuit precedent.  *See Contreras*, 593 F.3d at 1136.  Disregarding the language of our opinions erodes the framework of our judicial system.  Because the majority here overtly overrules our prior decisions, I dissent.