IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Unknown Parties, et al., | No. CV-15-00250-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| Jeh Johnson, et al., | |
| Defendants. | |

The Plaintiffs come to the Court a second time seeking sanctions related to Defendants' spoliation of video evidence, which since August 14, 2015, the Defendants have been charged to preserve. (Order (Doc. 51) granting Expedited Discovery).

On September 28, 2015, the Court held that the Defendants failed to preserve surveillance tapes of detainee holding areas and other areas in Custom and Border Patrol (CBP) facilities used or accessed by detainees and instead recorded over them. (Order (Doc. 64) Re: Motion for Sanctions.)  The Court granted Plaintiffs' request for sanction in part, ordering the Defendants to produce all existing and then currently retained video-recordings, but denied the Plaintiffs' request "for an adverse inference, applicable to all motions and at trial, that the videotapes would have demonstrated that all facts described in Plaintiff's declarations existed and continue through the present." *Id.* at 6, 11. The Court held it would not allow the Defendants to take advantage of missing evidence. *Id.* at 11.

On January 9, 2017, the Plaintiffs again charge the Defendants with spoliation of video evidence and seek sanctions.  Plaintiffs again press for an adverse inference and ask additionally for the Court to appoint a third-party vendor to serve as a Data Monitor and oversee Defendants' video preservation obligations and for Defendants to pay Plaintiffs' attorneys' fees and costs incurred in connection with the technical support to review and attempt to repair inaccessible data produced by Defendants, and this motion.

The Court grants the Plaintiffs' Motion for Contempt in part and denies it in part as explained below

## Standard of Review: Spoliation and Sanctions

The law has not changed since the Court last visited the question of spoliation and sanctions.  *See* (Order (Doc. 64) at 6-8.)  Like last time, the Plaintiffs do not seek the most extreme sanction, dismissal, so the Court is not concerned with questions of willfulness, bad faith or fault of the Defendants.  The Court applies the five part test used in the Ninth Circuit for Rule 37 of the Federal Rules of Civil Procedure, which considers 1) the public's interest in expeditious resolution of litigation, 2) the court's need to manage its docket, 3) the risk of prejudice to the party seeking sanctions, 4) the public policy favoring disposition of cases on their merits, and 5) the availability of less drastic sanctions.  *Id.* at 7-8 (citing *Valley Engineers, Inc. v. Electric Engineering Co.,* 158 F.3d 10501, 1057 (9th Cir 1998)).  Sanctions may be imposed for negligent conduct; good or bad faith may be considered in determining the severity of the sanction and whether imposition of a sanction would be unjust.  *Id.* at 7.

Like before, Defendants assert the spoliation of the video evidence "occurred inadvertently" and that "Defendants have made—and continue to make—reasonable, good-faith efforts to comply with the Court's Order of August 14, 2015 and September 28, 2015."  (Response (Doc. 275) at 1.)  "A party commits civil contempt if the party disobeys 'a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  (Response (Doc. 275) at 14 (quoting *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1130 (9th Cir. 2006)).  The burden is on the Plaintiffs to

establish: 1) a violation of a court order, 2) more than a technical or de minimis violation, and 3) conduct that was not a good faith or reasonable interpretation of the violated order. *Id.* at 15 (citing *Inst. Of Cetacean Research v. Sea Shepard Conservation Society,* 774 F.3d 935, 945 (9th Cir. 2014; *United States v. Bright,* 596 F.3d 683, 694 (9th Cir. 2010)). The Defendants assert they have acted in good faith and taken reasonable steps to preserve video evidence.

To be clear, the Court's September 28, 2015, Order gave the Defendants 15 days to produce to the Plaintiffs all existing video recordings, dating from June 10, 2015 through September 28, 2015, and it also directed the parties to "meet and confer . . . regarding Plaintiffs' discovery needs and the capabilities at each facility for meeting those needs."   (Order (Doc. 64) at 12.)  In the end an extension of time for production was needed due to technical and system complications for Defendants to make the June to September, 2015, disclosures, and the parties agreed that to avoid the expense of ongoing rolling productions the Defendants would "continue to preserve and maintain all existing video surveillance footage for all Border Patrol stations[1] in the Tucson Sector, pending further Court order or stipulation." (Status Report (Doc. 71) at 3.)  In other words, the Defendants would archive and store the video recordings until Plaintiffs requested them, then copy the archive for the station and time period specified in Plaintiffs' request and provide the copy to the Plaintiff.  (Response (Doc. 275), Ex. 1: Weaver Decl. ¶ 3.)  On January 27, 2016, the parties stipulated for production by February 12, 2016, of all video data from Tucson, Nogales, Douglas, Sonoita, Casa Grande, and Brian A. Terry stations for September 28 through November 30, 2015, and from Willcox for November 20, through November 30, 2015.  (Stipulation (Doc. 123)). These videos produced for 2015 are not the subject of this motion.

According to the Defendants, in April 2015, Sentrillion, a security company with

---

[1] The stations are: Tucson, Casa Grande, Douglas, Willcox, Nogales, Brian A. Terry, and Ajo.  The parties agreed to meet and confer no later than November 20, 2015 to discuss continuing need, if any, for video from the Willcox station. (Status Report (Doc. 71) at 3.)

- 3 -

over 30 years of experience in providing enterprise security solutions to government and commercial clients, conducted a survey of the Arizona CBP stations to prepare for the development of the Central Area Video Surveillance System (CAVSS), which is a video and audio recording system, using Vicon equipment and software, that provides CBP mission critical, 24 hour, enterprise-wide, integrated surveillance and remote monitoring. (Response (Doc. 275) at 3.)  Full system archiving was a new addition to the CAVSS program and design, which typically retains video for only 90 days before automatically overwriting unless a specific incident is identified for retention.  (Response (Doc. 275) at 4.)  To retain 100 percent of the DVR video recordings, Sentrillion introduced changes to the hardware and system design by attaching network storage drives and devices as well as multiple additional hard drives.  In January 2016, Sentrillion coordinated the deployment of the CAVSS video workstations for 100 percent video archiving in Sonoita, Wilcox, Douglas, and Tucson. *Id.* at 4.

The corruption of archived videos at issue here began in January, 2016. Defendants admit that initially, on January 28, 2016, Field Support Directorate (FSD) contacted the help desk at the Border Security Deployment Program (BSDP), the entity responsible for oversight of the CAVSS deployment, because of problems with its first attempt to archive one month of video at the Tucson station for this case.  The archiving process was not being timely completed and instead was generating an error message that the system had improperly shutdown and a database check was being performed.  FSD believed the system rebooted mid-archive cycle possibly due to automatic patches and security scans. (Response (Doc. 275), Ex. 2: Robertson Decl. ¶¶ 1, 3, 6, 11, 12.)  FSD re-ran the CAVSS program during a time period without patches and scans and believed the video was successfully archived, *id.* ¶13, because there was no error message and instead the software reflected a "green checkmark," *id.* at 5 (citing Ex. 5: Shivers Decl. ¶7; Ex. 1: Dean Decl. ¶ 17.)

Defendants admit, "From the initial installation of BSDP CAVSS, anytime there has been an issue with a DVR or problems with archiving, FSD has been instructed to

- 4 -

1  immediately contact the Sentrillion help desk via telephone and email.  Upon notification
2  of an issue, a Sentrillion help desk ticket is created.  If the issue cannot be resolved
3  remotely by Sentrillion, a Sentrillion technician is immediately dispatched.  All USBP
4  sites are considered high priority and receive immediate attention for (sic) Sentrillion."
5  *Id.* ¶ 13.

6  Defendants report that from April 22 through April 25, Field Technology Officer
7  (FTO) Gary Weaver, the FSD person responsible for archiving the DVR videos, archived
8  the January video for the Tucson station. (Response (Doc. 275) at 6.)  Defendants admit
9  that by June 2016, FTO Weaver "became aware of the following issues with the archive
10 process: . . ., it would sometimes take multiple attempts to create a successful archive; a
11 DVR would also appear that it was not recording at times when it was recording; and
12 there would be instances of network connectivity error messages."  (Response (Doc.
13 275), Ex. 4: Weaver Decl. ¶ 10.)  Around June 29, 2016, he reported these problems to
14 his superiors.  *Id.* ¶ 11.

15 On August 2, 2016, BSDP and Sentrillion engineering met with FSD in Tucson,
16 including FTO Weaver, to review the CAVSS system, to discuss outages due to patching
17 and scanning, and discuss the current incremental archiving solution.  The BSDP agreed
18 to undertake discussions on how to implement a long term archiving solution for the
19 future.  (Response (Doc. 275), Ex. 2: Robertson Decl. ¶14.)

20 At all times, the Defendants relied solely on the Vicon software "green
21 checkmark" on the workstation screen to determine when a video was successfully
22 archived.  <u>No one ever actually looked at the archived tapes</u>.  (Response (Doc. 275) at 6-
23 8.)

24 On August 23, 2016, Plaintiff requested that the Defendants produce video data
25 from six facilities: Nogales (December 2015 and January 2016); Casa Grande (December
26 2015 and January 2016); Tucson (January 2016); Douglas (January 2016); Brian A.
27 Terry/Naco (March 2016), and Sonoita (May 2016).  (Motion (Doc. 265) at 4; Ex. 1:
28 August 23, 2016 email.)  On October 4, 2016, Plaintiffs received hard drives from the

Defendants, but were initially unable to review the hard drives because Defendants had not provided the requisite ViconNet software for viewing the archived videos. (Motion (Doc. 265) at 4-5.) After Plaintiffs were able to review the archived video with the ViconNet software, the Plaintiffs discovered there was no video from the cameras in the holding rooms at the Tucson station, *id.* at 5,[2] and sent an email to Defendants on November 3, 2016.  The parties were together in Arizona for oral argument on the Plaintiffs' Motion for Preliminary Injunction on November 14 and 15th, but the matter was not discussed.  The Plaintiffs sent a formal letter to follow up several outstanding discovery items including the video footage on November 19, 2016.  *Id.* at 5.  On November 22, Defendants requested a conference call to address Plaintiffs' questions about the video, which was finally held on December 19, 2016.  *Id.*

According to the Defendants, on November 22, 2016, FTO Weaver actually "reviewed the master copy of the January 2016 archived video for Tucson Station and found the video from three of the four DVRs was corrupted."  (Response (Doc. 275) at 10.)  The corruption problems were disclosed during the December 19, 2016, conference call to the Plaintiffs, including FTO Weaver's disclosure regarding his discovery in June of 2016 which is now described as "recording gaps" distinguishable from the "data corruption" problems.  (Response (Doc. 275) at 7-12.)

Since November, the Defendants have implemented additional measures to improve confidence in the archiving process,[3] which includes: 1) reducing the frequency of patching and not archiving during scheduled events; 2) adopting another video retention confidence check by screen printing the software validation message and green

---

[2] On January 22, 2016, FSD had contacted Sentrillion to ask if it was possible to simultaneously archive the 4 DVDs at the Tucson station and were told no. (Response (Doc. 275), Ex. 2: Robertson Decl. ¶ 7.  On January 26, 2016, four additional workstations were delivered to assist with allowing individual DVRs to be archived simultaneously.  *Id.* ¶ 10.  The problems related to archiving the multiple DVRs at the Tucson station after January do not appear to be related to simultaneous archiving them.

[3] Defendants have not resolved the corruption issue.  They believe that the scans and patches caused gaps in the video recordings, but did not cause the corruption. (Response (Doc. 275) at 13, 30.)

- 6 -

checkmark; 3) coordinating between SOC[4] and BSDP to monitor event logs and video during scanning events, 4) reconfiguring the system to actively monitor recording archive failures; 5) using the Vicon client software tool to verify the archive;[5] 6) screen capturing the DVR camera recording monitor function to investigate gaps; 7) capturing archive size for comparison and investigating significant differences, and 8) logging the station, archive date, DVR name, whether video was viewable, and screen capturing the video frame. *Id.* at 12 (citing Shivers Decl. ¶¶ 11, 13).  There is no explanation why these measures were not reasonable steps, which were within the Defendants' power to take from January to November, 2016.

Defendants' only explanation is that  they did not review the archived tapes because Vicon equipment and software meet or exceed industry standards, the green checkmark did not always appear but ultimately could be attained by repeating the archiving process, all instructions and best practices of documentation related to Vicon software and equipment were followed.  The Defendants assert they, therefore, undertook all reasonable efforts to preserve evidence by relying solely on the green checkmark indicator for a successful archival of a video recording.   (*Id.,* Ex. 4: Weaver Decl. ¶¶ 6-7.)

The Court rejects this assertion for several reasons.  First, Defendants asked, and Plaintiffs agreed, to not seek rolling disclosures of archived video evidence to save Defendants' costs.  This stipulation increased the importance of Defendants' good faith efforts to preserve the video evidence.  Defendants knew they were using CAVSS in a unique way, they had trouble initially in creating archives of the video recordings, and encountered problems again when they commenced archiving in April/June. Apparently, Defendants were not following every Vicon protocol because until

---

[4] Department of Homeland Security Operations Center.

[5] This is "a tool in the Vicon client software to verify the integrity of the archive when an archive is completed.  This tool verifies the integrity of an archive and any copy of the archive." (Response (Doc. 275), Ex. 4: Weaver Decl. ¶ 14.)

- 7 -

November the Defendants were not using the Vicon validation software.[6] As reflected by the steps implemented in November, numerous alternative measures were readily available to the Defendants for verifying the successful archiving of video recordings. Alternatively, the Defendants could have just looked during the archiving process to be sure they were preserving the video evidence.

Finally, Defendants stood silent regarding problems they knew existed in archiving the video recordings. Even without the corruption problem, Defendants knew they had gaps in the recordings as early as June. Nevertheless, they failed to provide Plaintiffs with this information and when Plaintiff requested the archived video recordings in August, the Defendants postponed Plaintiffs' discovery of the gaps in the videos by not providing the Vicon software needed for viewing the archived videos. The spoliation was not discovered by Plaintiffs until December 2016, and even now its full scope is unknown. The Defendants have not produced archived video for approximately half the year at the Casa Grande station, have produced nothing for the Brian A. Terry station, archiving remains pending for four months out of the year of video recordings at the Nogales station, and approximately one month of archiving is either pending or has not been produced for the Willcox, Sonoita, and Tucson, stations. More egregiously, the Defendants appear to know the extent of the recording gaps on the archived videos, which are designated on a blue line report, but Defendants fail to produce the report to Plaintiffs or this Court. Without knowing the extent of the video gaps, it is impossible to know the full scope of spoliation.

## Conclusion

The Court finds that Defendants violated this Court's Orders of August 14 and September 28, issued in 2015, because Defendants failed to take all reasonable steps within Defendants' power to preserve video evidence. Specifically, the Defendants' failure to take additional efforts beyond "seeing the green checkmark" was not a good faith or reasonable interpretation of the Court's preservation Orders. The remaining

---

[6] See n. 5.

- 8 -

factor to be considered by the Court is whether there is more than a technical or de minimis violation of the preservation Orders.

As of February 3, 2017, Defendants report the following preservation status for 2016 video recordings. (Response (Doc. 275), Ex. 7: Spreadsheets.)

At the Casa Grande station, there were no problems with video archives through July, but archival review remains pending from July through December. *Id.*

At the Brian A. Terry station, archive review is pending. *Id.*

At the Douglas station there were no problems with video archives through September and for November and December, but a DVR failed in October. *Id.*

At Nogales, gaps existed in recordings for January 21 and 27; there were no archive problems in February and March; there were gaps in the recording on April 1 and 7, and only camera 3 recorded on April 18 and 20; May 1 through 7 only camera 5 recorded; there were gaps in recording for June 18 and June 19; there were no archive problems in July and November, and archive review remains pending for August September, October and December. *Id.*

At the Willcox station, there were no problems, except for there are no archives for January because DVRs failed and had to be replaced and for November archive video was turned over to USBP without review. *Id.*

At the Sonoita station, the only non-corrupted archives were for July, October and November. The archived video was corrupted for January through March and gaps existed in recordings for archived video April through June. Archive review is pending for December. *Id.*

There are four cameras at the Tucson station, which is the central processing point for individuals detained in this Sector. In January only one recorder was archived and it contained gaps in the video. In February, one camera was archived without any problem; two were archived with gaps, and one was corrupted. In March and April, the same thing happened but involved different DVRs. In May, all the DVR recordings were archived, with three containing gaps. In June, two videos were archived with no problem, two had

gaps. In July, two were ok, one was corrupted and the fourth one had gaps. August was like June, two videos were archived without any problem, and two had gaps. In September, three videos were archived without problems, and one contained gaps. In October, three videos were archived without problems, and one is pending archive review. In November, all the video recordings were successfully archived. December archive videos review is pending. *Id.*

The Court finds no more than a technical or de minimis violation occurred at the following stations: Casa Grande, from January through June; Douglas, except for October, and Willcox.

At the Nogales station, videos were successfully archived for February, March, July, and November. In both January and June, two days of video recordings had gaps. In April, there were two days of video recordings with gaps and only one camera recorded on another two days. For one week in May, only one camera was recording. This means the video recordings made for the year, 2016, at the Nogales station were successfully archived, except for approximately 15 days where only partial recordings were preserved. The Court finds no more than a de minimis violation occurred at the Nogales station.

The video recorded evidence is, however, more spotty at the Sonoita and Tucson stations. At the Sonoita station only three months, July, October, and November, were archived successfully. Video recordings were corrupted for January, February, and March, and video recordings had gaps in April, May and June. The video archive for December is pending. Consequently, at least three full months of video records are destroyed, and the scope of the admitted further destruction of evidence due to gaps in the video recordings cannot be determined "seeing" the "blue line report." (Response (Doc. 275), Ex. 7: Spreadsheet at Sonoita.)

At the Tucson station, in January only one of the four camera video recordings was not corrupted and it contained gaps. In both February and March, three DVR recordings were archived, with two containing gaps. In April, two recordings were

archived, with one containing gaps. In May, four video recordings were archived, with three containing gaps. In both June and August, four video recordings were archived, with two containing gaps. In July, three videos were archived, with one containing gaps. In September, four videos were archived, with one containing gaps. In October, three video recordings were successfully archived, and one is pending. In November, all four DVRs were successfully archived. Archiving for December is pending. Consequently, of the 48 video recordings that should have been archived, Defendants successfully archived 20 and archived another 15 with gaps in the video.

The Defendants refer the Court and Plaintiffs to the "blue line report" for information regarding gaps in the record, but without any explanation fail to produce it. Without the blue line report, neither this Court nor the Plaintiffs can determine whether the failure to preserve the video evidence is de minimus. The Defendants shall produce the blue line reports to the Plaintiffs immediately. Thereafter, Plaintiffs may reurge the request for sanctions.

Without delay, however, the Court can conclude that the Defendants' failure to preserve the video recordings for the Tucson station in January is not de minimus to the question of the conditions of confinement at that station in January. Defendants may not present their expert's opinion regarding the conditions of confinement there in January. Likewise, the destruction of video recordings in October at the Douglas station may prejudice Plaintiffs because class member Jose Garcia-Garcia was detained there in October. In the event he testifies, the Plaintiffs will lack corroborating evidence, unless the Court allows an adverse inference. The Court agrees and will allow the inference.

To the extent Defendants seek at any time going forward with this case to assert conditions of confinement for time periods at any of the CBP stations when video recordings were destroyed, the Court shall either preclude such argument or evidence, and/or allow an adverse inference in favor of the Plaintiffs.

The Court can take no position regarding the Brian A. Terry station because archiving is pending there in total. The Defendants shall produce the archived video

recordings for the Brian A. Terry station to Plaintiffs forthwith or provide an expedited schedule for the production of this evidence as soon as possible. The same is true for the Casa Grande station for July through December.

The Ajo station DVR recording system remains non-operational. (Reply (Doc. 278) at 4.) The Defendants shall equip the Ajo station with a DVR and archiving station immediately and file a Notice with the Court when this is done.

Finally, the Court must consider the risk of ongoing and continued destruction of video recordings. Plaintiffs ask the Court to appoint a Data Monitor to oversee Defendants' obligation to preserve the video evidence and who will serve as a resource for Plaintiffs so they are able to get accurate and timely information about the completeness of the archived video. The Court denies this request in light of the Defendants' Response that there is a Vicon client software tool which can verify the integrity of the archive when an archive is completed and, likewise, can verify the integrity of a copy of an archive. The Defendants shall provide Plaintiffs with such verifications. Additionally, to offset the risk to Plaintiffs from not having rolling discovery of the video recordings, the Court orders Defendants to provide Plaintiffs with rolling disclosures of the archiving schedules for each station and camera, and to follow these scheduled archiving processes with rolling disclosures to the Plaintiffs of the corresponding verifications made pursuant to the Vicon software tool. The parties shall meet and confer to discuss ways to enable Plaintiffs to spot-check future archiving processes to ensure its integrity during this coming year and/or until Defendants resolve the preservation problems due to archive corruption and recording gaps.

**Accordingly,**

**IT IS ORDERED** that the Court shall grant in part and deny in part the Motion for Civil Contempt (Doc. 265) as follows: denied as to the request to appoint a Data Monitor and as to spoliation of video recordings for Casa Grande from January through June, for Douglas, except for the video recording for October, and Willcox, and granted as ordered below.

**IT IS FURTHER ORDERED** that within 7 days of the filing date of this Order the Defendants shall produce the "blue line report" to the Plaintiffs. Thereafter, Plaintiffs <u>may</u> reurge the request for sanctions.

**IT IS FURTHER ORDERED** that the Defendants may not present their expert's opinion regarding the conditions of confinement at the Tucson station in January.

**IT IS FURTHER ORDERED** that in the event Plaintiffs' class member Jose Garcia-Garcia testifies either orally or by affidavit about conditions of confinement at the Douglas station in October, the Court shall allow an adverse inference that the spoliated video recording for that month at that station would corroborate his testimony.

**IT IS FURTHER ORDERED** that to the extent Defendants seek at any time going forward with this case to assert conditions of confinement for time periods at any of the CBP stations when video recordings were destroyed, the Court shall either preclude such argument or evidence, and/or allow an adverse inference in favor of the Plaintiffs.

**IT IS FURTHER ORDERED** that within 20 days of the filing date of this Order, the Defendants shall produce to the Plaintiffs the archived video recordings for the Brian A. Terry station or provide an expedited schedule for the production of this evidence as soon as possible.

**IT IS FURTHER ORDERED** that within 20 days of the filing date of this Order, the Defendants shall produce to the Plaintiffs the archived video recordings for the Casa Grande station for the months of July through December or provide an expedited schedule for the production of this evidence as soon as possible.

**IT IS FURTHER ORDERED** that the Defendants shall immediately equip the Ajo station with a DVR and a workstation for archiving it, and file a Notice with the Court when this is done.

**IT IS FURTHER ORDERED** that the Defendants shall provide Plaintiffs with rolling disclosures of the archiving schedule by station followed by verification of the integrity of each archive, pursuant to the Vicon client software verification tool. Any

1 copies shall be so verified, with verification provided to Plaintiffs accompanying the
2 archive copies.
3      **IT IS FURTHER ORDERED** that the parties shall meet and confer to discuss
4 ways to spot-check future archiving to ensure integrity of the preservation of the video
5 recordings at each station during this coming year and/or until Defendants resolve the
6 corruption issue.
7      **IT IS FURTHER ORDERED** that the Defendants shall pay Plaintiffs' attorneys'
8 fees and costs incurred in connection with the technical support to review and attempt to
9 repair inaccessible data produced by Defendants, and this motion.
10     Dated this 13th day of March, 2017.

                                              _____
                                              Honorable David C. Bury
                                              United States District Judge