Louise C. Stoupe*
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Tokyo, Chiyoda-ku 100-6529, Japan
Telephone: +81-3-3214-6522
Facsimile:  +81-3-3214-6512
Email:  LStoupe@mofo.com

Colette Reiner Mayer*
Pieter S. de Ganon*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: CRMayer@mofo.com
Email:  PdeGanon@mofo.com

Attorneys for Plaintiffs
*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)
Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe #1; Jane Doe #2; Norlan Flores, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Kirstjen M. Nielsen, Secretary, United States Department of Homeland Security, in her official capacity; Kevin K. McAleenan, Acting Commissioner, United States Customs & Border Protection, in his official capacity; Carla L. Provost, Acting Chief of the United States Border Patrol, in her official capacity; Rodolfo Karisch, Commander, Arizona Joint Field Command, and Chief Patrol Agent-Tucson Sector, in his official capacities,<br><br>Defendants. | Case No. 4:15-cv-00250-TUC-DCB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**<br><br>**CLASS ACTION**<br><br>**(Assigned to the Honorable David C. Bury)**<br><br>Action Filed: June 8, 2015 |

| | | |
|---|---|---|
| 1 | Elizabeth Balassone* <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, CA 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 <br> Email: EBalassone@mofo.com | Elisa Marie Della-Piana* <br> LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA <br> 131 Steuart Street, Suite 400 <br> San Francisco, CA 94105 <br> Telephone: (415) 543-9444 <br> Facsimile: (415) 543-0296 <br> Email: edellapiana@LCCR.com |

Samuel Cortina*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: (858) 720-5100
Facsimile: (858) 720-5125
Email: SCortina@mofo.com

Linton Joaquin*
Karen C. Tumlin*
Nora A. Preciado*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA 90010
Telephone: (213) 639-3900
Facsimile: (213) 639-3911
Email: joaquin@nilc.org
Email: tumlin@nilc.org
Email: preciado@nilc.org

Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
Email: bmfurnish@acluaz.org
Email: kbrody@acluaz.org

Attorneys for Plaintiffs

*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)*

Mary Kenney*
Aaron Reichlin-Melnick*
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, D.C. 20005
Telephone: (202) 507-7512
Facsimile: (202) 742-5619
Email: mkenney@immcouncil.org
Email: areichlin-melnick@immcouncil.org

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1
II. ARGUMENT .......................................................................................................... 3
    A. Defendants Have Not Disputed A Single Material Fact. ............................. 3
    B. *Thompson* Establishes That Beds Are Required Under These Conditions. ..................................................................................................... 3
    C. Defendants Misread And Misapply *Bell*. ..................................................... 4
        1. *Bell* sets the floor, but civil detainees are constitutionally entitled to more. ................................................................................ 4
        2. *Bell* does not establish a "good-faith effort" test. ............................. 5
        3. Defendants fail *Bell*'s standard, properly read and applied. .............. 6
        4. None of the additional "facts" proffered by defendants are material. .................................................................................................. 8
III. CONCLUSION ..................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anela v. City of Wildwood,*
 790 F.2d 1063 (3d Cir. 1986) ............................................................................... 4, 6, 7

*Bell v. Wolfish,*
 441 U.S. 520 (1979) ................................................................................................*passim*

*Block v. Rutherford,*
 468 U.S. 576 (1984) ....................................................................................................... 8

*Brown v. Plata,*
 563 U.S. 493 (2011) ....................................................................................................... 7

*City of Canton v. Harris,*
 489 U.S. 378 (1989) ....................................................................................................... 7

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
 498 U.S. 189 (1989) ....................................................................................................... 6

*Doe v. Kelly,*
 878 F.3d 710 (9th Cir. 2017) ............................................................................... 1,4,5,10

*Florence v. Bd. of Chosen Freeholders,*
 566 U.S. 318 (2012) ....................................................................................................... 7

*Hamm v. DeKalb Cnty.,*
 774 F.2d 1567 (11th Cir. 1985) ..................................................................................... 8

*Harper v. Showers,*
 174 F.3d 716 (5th Cir. 1999) ......................................................................................... 2

*Jones v. Blanas,*
 393 F.3d 918 (9th Cir. 2004) ............................................................................. 1, 4, 5, 10

*Lareau v. Manson,*
 651 F.2d 96 (2d Cir. 1981) ......................................................................................... 7, 8

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,*
 210 F.3d 1099 (9th Cir. 2000) ....................................................................................... 3

*Swift v. Lewis,*
 901 F.2d 730 (9th Cir. 1990) ......................................................................................... 6

*Thompson v. City of Los Angeles*,
    885 F.2d 1439 (9th Cir. 1989) ............................................................................... *passim*

*Walker v. Schult*,
    717 F.3d 119 (2d Cir. 2013) ............................................................................................ 2

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) ....................................................................................................... 5

**Other Authorities**

Civil L.R. 56.1(b) ..................................................................................................................... 9

## I.  INTRODUCTION

Defendants do not dispute a single material fact necessary to decide whether their policy and practice of forcing detainees to sleep on the floor is unconstitutional.  Not one.  They do not dispute that Tucson Sector hold rooms do not have beds; they do not dispute that the majority of detainees are detained for longer than 12 hours; and they do not dispute that detainees are forced to sleep on the floor, or on mats on the floor.  (*See* Defs.' Controverting Statement of Facts at 1-2.)  On these facts the law is clear: detainees in Border Patrol custody must be provided with "a mattress *and* bed or bunk."  (*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1448 (9th Cir. 1989) (emphasis added); *see also* P.I. Order, ECF No. 244 at 12:14-21).  Defendants have cited no case holding otherwise.

Instead, Defendants rely on *Bell v. Wolfish*, 441 U.S. 520 (1979).  But *Bell* is of limited relevance here, as it applies to pretrial criminal detainees, not civil detainees such as Plaintiffs.  The appropriate test for civil detainees was articulated in *Jones v. Blanas*: Civil detainees, protected by the Fifth Amendment's Due Process Clause, are entitled to "more considerate treatment" than pretrial criminal detainees, who are in turn entitled to better treatment than convicted prisoners.  393 F.3d 918, 932 (9th Cir. 2004) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)).  *Bell* establishes that the bare minimum requirement for pretrial *criminal* detained individuals is to be free from punishment.  The Constitution demands more for civil detainees.

The Ninth Circuit in this case did not, as Defendants allege, decide that *Bell* "provides the standard by which any condition of confinement is evaluated."  (Opp'n at 10.)  Rather, the Ninth Circuit rejected Defendants' own argument on appeal that this Court had misread and misapplied *Bell*.  *Doe v. Kelly*, 878 F.3d 710, 720 (9th Cir. 2017).  The Ninth Circuit also held that the provision of mats alone as an interim measure was reasonable; it did not hold that mats alone was constitutionally sufficient ongoing relief.  *Id.* at 721-22.

Even if *Bell* were the proper standard to apply, *Bell* does not, as Defendants allege, permit any condition of confinement so long as the government has made a "good faith

effort" to comply with the Constitution.  (Opp'n at 2, 11.)  Rather, the government may not punish civil detainees under any circumstance. *See Bell*, 441 U.S. at 535 ("a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law") (citation omitted).  The government's "good faith effort to provide conditions that are not punitive or arbitrary" is immaterial if the result constitutes punishment.  (Opp'n at 11.)  Defendants' manufactured "good faith effort" test infects and undermines the entirety of their opposition.

And even when the *Bell* test is correctly articulated and applied, Defendants' argument fails.  First, in *Bell* there was no dispute that pretrial *criminal* detainees were entitled to beds; the only question was whether they were entitled to their own cells.  441 U.S. at 541–43.  Second, Defendants have not identified a cognizable reason why detainees in Border Patrol custody cannot be given beds.  *Bell* holds that an otherwise-excessive deprivation can be justified if the government provides evidence that the deprivation serves a legitimate objective, like "maintaining institutional security and preserving internal order."  *Id.* at 538, 546.  But Defendants have not identified a legitimate objective.  Nor have they articulated—let alone proffered evidence showing—how the lack of beds is reasonably related to any such objective.

Finally, Defendants argue that Plaintiffs' motion rests on the "erroneous premise" that there is a constitutional right to sleep.  (Opp'n at 2, 9.)  But as this Court made clear, this premise is not "erroneous" at all: "The Court finds that the law and the facts clearly favor Plaintiffs' position that Defendants are violating Plaintiffs' *constitutional right to sleep*."  (PI Order, ECF No. 244 at 15:28-16:1 (emphases added).)  Other courts agree: "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment."  *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (citations omitted); *accord Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("sleep undoubtedly counts as one of life's basic needs").

Plaintiffs' motion should be granted.

## II. ARGUMENT

### A. Defendants Have Not Disputed A Single Material Fact.

Where the moving party has carried "its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citation omitted). And where "the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Defendants have not disputed a single material fact necessary to decide the issue before the Court: detainees—the majority of which are detained for longer than 12 hours—are forced to sleep on the floor.[1] (*See* Defs.' Controverting Statement of Facts at 1-2.) In light of Defendants' failure to demonstrate how a lack of beds is rationally related to a legitimate non-punitive governmental purpose, *infra* at II.C.3-4, Plaintiffs should prevail on this ground alone.

### B. *Thompson* Establishes That Beds Are Required Under These Conditions.

*Thompson* expressly held that mattresses *and* beds or bunks are constitutionally required under these conditions. *Thompson*, 885 F.2d at 1448 (adhering to precedent holding "that a jail's failure to provide detainees with a mattress and bed or bunk runs afoul of the commands of the Fourteenth Amendment"). Defendants' only rebuttal to *Thompson* is that it involves jails, and "does not purport to address Border Patrol stations or other custodial facilities." (Opp'n at 13.)[2]

---

[1] Following the issuance of the preliminary injunction, detainees now receive mats that they must place on the floor. This was not the case before the preliminary injunction. (Defs.' Controverting Statement of Facts at 2 (conceding fact 3).)

[2] *Bell*, on which Defendants rely heavily, was about New York's Metropolitan Correctional Center—a jail that, like the Los Angeles County Jail in *Thompson*, is used to house pretrial detainees and convicts alike. *Bell*, 441 U.S. at 524. Defendants cannot base their opposition on *Bell*, while at the same time arguing that other decisions about jails do not apply to Border Patrol stations.

1  Defendants' attempt to invent a "Border Patrol" exception to this constitutional
2  requirement is unavailing.  *Thompson* did not hinge on the nature of the detention facility;
3  instead, it found that what matters are the conditions of confinement.  For that reason, in a
4  case involving police station holding cells, the Third Circuit reached the same conclusion
5  as the Ninth, holding that "the 'unsanitary and humiliating' practice of forcing detainees
6  to sleep on mattresses on the floor does not pass constitutional muster."  *Anela v. City of
7  Wildwood*, 790 F.2d 1063, 1069 (3d Cir. 1986).  Significantly, Chief Allen testified at the
8  preliminary injunction hearing that, "We're a processing center.  We would be the same as
9  the Tucson police station intake."  (Declaration of Samuel Christopher Cortina in Support
10  of Reply in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding
11  Defendants' Obligation to Provide Beds ("Cortina Reply Decl."), Ex. 1, PI Hr'g Tr.,
12  Nov. 15, 2016, ECF No. 250 at 107:14-15.)  Defendants' attempt to distinguish *Thompson*
13  and related authority through a contrived "Border Patrol" exception fails because the
14  conditions of confinement in those cases parallels the conditions present here.

### C. Defendants Misread And Misapply *Bell*.

#### 1. *Bell* sets the floor, but civil detainees are constitutionally entitled to more.

18  The Ninth Circuit in this case did not, as Defendants allege, hold that *Bell*
19  "provides *the* standard by which *any* condition of confinement is evaluated."  (Opp'n at
20  10 (emphases added).)  The Ninth Circuit merely affirmed that this Court, on a motion for
21  preliminary injunction, did not misread or misapply *Bell*.  *Doe*, 878 F.3d at 720.  Nowhere
22  did it say that that "the *Bell* standard applies to Border Patrol stations in *this very
23  litigation*."  (Opp'n at 1 (emphasis in original)).
24  Nor could it.  For *Bell* establishes that pretrial *criminal* detainees may not be
25  subjected to punitive conditions of confinement.  441 U.S. at 535.  *Bell* does not supply
26  the governing standard for *civil* detention.  That standard is articulated in *Jones v. Blanas*.
27  As *Jones* explains, "civil detainees retain greater liberty protections than
28  individuals detained under criminal process."  393 F.3d at 932 (citing *Youngberg*, 457

U.S. at 321-22). They are therefore entitled to protections "at least as great as those afforded to an individual accused but not convicted of a crime." *Jones*, 393 F.3d at 932 (emphasis added). Subjecting a civil detainee to "punishment" within the meaning of *Bell* surely violates due process. But *Bell* does not describe the limits of civil detainees' constitutional rights. Civil detainees are entitled to more than just the absence of treatment that amounts to punishment—they are entitled to conditions of confinement that "bear some reasonable relation to the purpose for which [they] are committed." *Id.* at 933 (internal quotation marks omitted).

### 2. *Bell* does not establish a "good-faith effort" test.

Defendants manufacture a "good faith effort" test that bears no resemblance to the test articulated in *Bell*. Defendants' reliance on this fictitious test permeates their opposition: as long as Border Patrol "makes a good faith effort to facilitate an individual's ability to sleep" or "a good faith effort to provide conditions that are not punitive or arbitrary," Border Patrol has satisfied its constitutional obligation, or so Defendants argue. (Opp'n at 2, 11, *passim*.) On Defendants' theory, as long as Border Patrol *tries* to provide constitutionally sufficient conditions, the actual conditions don't matter. But that's not what *Bell* holds.

*Bell* holds that "a detainee may not be punished prior to adjudication of guilt in accordance with due process of law." 441 U.S. at 535. It holds that "punishment" can consist of actions taken with "an expressed intent to punish." *Id.* at 538-39. And it holds that even absent expressed intent, a pretrial criminal detainee can demonstrate that conditions are punitive by showing that the government's actions are not rationally related to a legitimate non-punitive governmental purpose. *Id.* at 561. Nowhere does it hold that the government may punish pretrial criminal—much less *civil*—detainees as long as it makes a good faith effort not to.

The Constitution compels the government "to provide adequate food, *shelter*, clothing, and medical care" to everyone it takes into custody. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (emphasis added). It does not qualify this duty with "good faith" or

"best efforts" modifiers. Where the government detains people against their will and denies them the ability to care for themselves, the government *must*—not just endeavor to—provide for their basic human needs. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 498 U.S. 189, 199-200 (1989).

### 3. Defendants fail *Bell*'s standard, properly read and applied.

Defendants fail to satisfy the test set forth in *Bell* because they do not come forward with at least "some evidence that their policies are based on legitimate . . . justifications." *Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990) (citation omitted). Instead, Defendants offer a single, bare excuse: That "Border Patrol stations are unique" and "materially distinguishable from jails, prisons, or other types of confinement facilities." (Opp'n at 1.)

Defendants' argument fails for two independently sufficient reasons: (1) Border Patrol's purportedly unique features bear no rational relationship to the provision of beds and thus do not satisfy the *Bell* standard, *accord Doe*, 878 F.3d at 721 (rejecting Defendants' argument that they need not provide mats to detainees because Defendants offered "little to no evidence that providing detainees with mats interferes with the Border Patrol's identification and processing of individuals."); and (2) they do not demonstrate a material distinction between Border Patrol's conditions of confinement and those involved in either *Thompson* or *Anela*.

*First*, Defendants have articulated no reason why the fact that Border Patrol agents "apprehend aliens at all times of day and night at locations covering most of the southern region of Arizona" precludes Border Patrol from offering beds. (Opp'n at 2-3, 7-8.) As *Anela* makes clear, police officers also apprehend and detain at night, yet nothing precludes police stations from providing beds; and, in fact, the Constitution demands that they do. *Anela*, 790 F.2d at 1064 ("The arrest occurred at about 11:15 P.M. on July 3, 1981, and the plaintiffs were detained in holding cells in the police station until their hearing at 11:00 the next morning.").

PLAINTIFFS' REPLY ISO MSJ
CASE NO. 4:15-CV-00250-DCB
sd-720276

6

1    *Second*, even accepting that Border Patrol "has no control over the number of
2    individuals it apprehends" and "typically does not know the identity of an individual
3    before apprehension," this has no bearing whatsoever on whether Border Patrol can
4    provide beds—and Defendants fail to articulate one. (Opp'n at 3-4, 7-8.) Indeed, the very
5    same is true of jails. *E.g.*, *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326, 336
6    (2012) (describing the population variations that may occur in pretrial detention centers,
7    and noting that "[j]ails can be even more dangerous than prisons because officials there
8    know so little about the people they admit at the outset").

9    *Third*, the length of detention at Border Patrol stations is not unique and does not
10   justify harsh conditions of confinement. *See Anela*, 790 F.2d at 1064-65 (bed required for
11   12-hour detention); *Thompson*, 885 F.2d at 1448 (bed required for two-night detention);
12   *Lareau v. Manson*, 651 F.2d 96, 109 (2d Cir. 1981) (bed required regardless of length of
13   detention); *see also City of Canton v. Harris*, 489 U.S. 378, 381(1989) (considering
14   medical treatment claim of individual held in jail for "about an hour").

15   *Fourth*, to the extent that Defendants are offering the excuse that the stations were
16   not designed to serve as the detention centers they have become and that it would cost
17   money to enable them to serve that function, that excuse is not cognizable under the law.[3]
18   *See Brown v. Plata*, 563 U.S. 493, 539 (2011) (government cannot justify the
19   unconstitutionally overcrowded conditions of its prisons by asserting that they were
20   originally designed to hold fewer people); *see also* PI Order, ECF No. 244 at 27:20-21
21   ("Defendants cannot sidestep reality by relying on the structural limitations of the Border
22   Patrol detention facilities, i.e., that they are not designed for sleeping.").

23   Despite this Court's previous ruling that "a deprivation of constitutional rights
24   cannot be justified by fiscal necessity," (PI Order, ECF No. 244 at 5:27-28), Defendants
25   cite an Eleventh Circuit decision for the proposition that cost *is* a legitimate governmental

---

26   [3] Defendants' discussion of the "remoteness" of the facilities may also be intended
27   to go to the cost of providing beds, but it is unclear because Defendants fail to explain why this "fact" matters. (Opp'n at 8.)
28

PLAINTIFFS' REPLY ISO MSJ
CASE NO. 4:15-CV-00250-DCB                                                                        7
sd-720276

interest here. (Opp'n at 11 (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573 (11th Cir. 1985)).) Their citation is misplaced. In *Hamm*, the Eleventh Circuit was considering a challenge to a *criminal* pretrial detainee's treatment under the Eighth Amendment. It does not set the standard here. Defendants, moreover, fail to cite *Hamm*'s admonition that "[the objective of limiting costs] will justify neither the complete denial of those necessities nor the provision of those necessities below some minimally adequate level." *Hamm*, 774 F.2d at 1573.

Defendants also cite *Hamm* for the proposition that a court should afford the government deference regarding its "balancing of costs and benefits" of a condition of confinement. (Opp'n at 11.) But the deference Defendants rely upon is limited to policies implemented to effectuate "internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 521. Defendants have offered neither justification for their practice of forcing detainees to sleep on the floor. No deference is warranted.[4]

The purported "uniqueness" of Border Patrol stations—itself speculative and unsupported by evidence—is not a cognizable justification for forcing class members to suffer the constitutional deprivation of going without beds. Even if Defendants had proffered evidence of Border Patrol's uniqueness, the law is clear that "[u]nconstitutional conditions cannot be tolerated because constitutional requirements are difficult for the state to fulfill." *Lareau*, 651 F.2d at 110 n.14.

### 4. None of the additional "facts" proffered by defendants are material.

Defendants' statement of facts, a document in which Defendants are required to present all "additional facts that establish a genuine issue of material fact or otherwise

---

[4] Defendants cite *Block v. Rutherford*, 468 U.S. 576, 584-85 (1984) for the same deference argument, but *Block* is inapposite because (1) it dealt with criminal pretrial detainees and (2) it afforded deference related to security policies, neither of which is present here.

PLAINTIFFS' REPLY ISO MSJ
CASE NO. 4:15-CV-00250-DCB                                                     8
sd-720276

preclude judgment in favor of the moving party," Civil Local Rule 56.1(b), fails to introduce a single fact that is material to deciding the legal question before the Court:

**Alleged Additional Facts 1 and 2:** Whether Border Patrol intends to operate a detention center or not—the focus of Defendants' first two alleged facts—does not factor into whether Class Members are constitutionally entitled to sleep. *See Doe*, 878 F.3d at 721 (affirming this Court's ruling that Class Members are entitled to lie down and rest after twelve hours of detention in Border Patrol facilities).[5] Indeed, the uncontroverted evidence demonstrates that Border Patrol detains individuals for (1) nearly the same amount of time despite fluctuations in apprehensions, and (2) lengths of time comparable to jails. (Cortina Opening Decl. Ex. 7 (Bandemer Suppl. Report) at Chart 3 (e3DM data demonstrates that detainees were detained on average for *twenty-seven* hours prior to the preliminary injunction and for *twenty-four* hours following the preliminary injunction).)

**Alleged Additional Fact 3:** Defendants' discussion of the design of their facilities goes solely to the cost that would be required to add beds to them, which does not implicate a legitimate governmental interest. (PI Order, ECF No. 244 at 5:27-6:2 ("the government may be compelled to expand the pool of resources to remedy a constitutional violation.")

**Alleged Additional Fact 4:** Defendants' purported *attempt* to place detainees in facilities with beds is, like their "good faith efforts" argument, not dispositive and easily abused. Without a mandate, there is no guarantee Border Patrol will, in fact, do so. (*See*

---

[5] Defendants argued before the Ninth Circuit that the lengths of detention at the time of the preliminary injunction were caused *solely* by a surge in apprehensions in 2015. The Ninth Circuit accepted Defendants' representation when denying Plaintiffs' request for provision of beds. *Doe*, 878 F.3d at 721-22 (the preliminary injunction "provides Plaintiffs with actual relief without imposing a huge cost on Defendants to alleviate what might be a temporary need. Evidence as to whether the need was likely to continue would certainly be relevant to the district court's determination of Plaintiffs' request for a permanent injunction."). Plaintiffs have now demonstrated that the conditions are not, as Defendants argued, temporarily related to a one-of-a-kind surge, but are permanent in nature, thus necessitating a permanent and appropriate solution.

Cortina Opening Decl. Ex. 14 at USA-000631 (TEDS policy uses permissive rather than mandatory language when describing this policy).)[6]

**Alleged Additional Facts 5 and 7:** These alleged facts speak solely to what actions Defendants took *following* the preliminary injunction (and, indeed, represent a concession that Defendants did not immediately comply with this Court's order). Defendants fail to explain how, if at all, these alleged facts bear on the question of whether Defendants' practice of forcing detainees to sleep on the floor is or is not a violation of those detainees' constitutional rights.

**Alleged Additional Fact 6:** Defendants offer this fact in an effort to distinguish their facilities from correctional facilities. This effort fails for three reasons: (1) the ACA standards are not limited to correctional facilities;[7] (2) Class Members are entitled to greater protections than the criminally convicted, *Jones*, 393 F.3d at 931; and (3) Plaintiffs have offered controlling authority holding that detainees kept in similar conditions to Class Members are entitled to sleep on beds raised off the ground, *see Thompson*, 885 F.2d at 1448.

\*\*\*

Defendants do not dispute a single material fact necessary to decide the question of whether Class Members are entitled to beds. Instead, Defendants rely on attorney argument and a misinterpretation of *Bell*. They point to their "unique" mission, but fail to explain how that mission is served by forcing detainees to lie on the ground to sleep.

---

[6] It is significant that the Santa Cruz County Jail—which holds individuals charged with crimes—has better accommodations (e.g., beds) than the Border Patrol detention facilities. (Cortina Reply Decl. Ex. 1, PI Hr'g Tr., Nov. 15, 2016, ECF No. 250 at 117:21-119:6 (Judge Bury asking witness to identify every amenity provided to detainees held at the Santa Cruz facilities but not the Tucson detention centers and following with: "Don't you think it's time that your facilities are modified or changed to accommodate the human need at least for sleep if you are going to keep somebody for two or three days?").

[7] The ACA standards, according to the ACA, were crafted for facilities that "hold under confinement pretrial or presentenced adults or juveniles who are being held pending a hearing for unlawful activity." (Opp'n Ex. E, Eligibility Criteria, xvi.) This definition includes Defendants' facilities.

They also point to cost, but that is not a legitimate governmental interest. Even under *Bell*—a case that does not set the minimum standard of treatment for pretrial civil detainees—this policy does not pass muster. None of the authorities or material facts offered by Plaintiffs were controverted by Defendants. These civil pretrial detainees—a majority of which were detained longer than twelve hours (although the average length of detention across the Class Period was twenty-six hours)—should not be relegated to sleeping on the floor of Defendants' detention facilities.

## III.  CONCLUSION

For the aforementioned reasons, Plaintiffs' motion should be granted.

Dated: June 19, 2018                    By:   */s/ Colette Reiner Mayer*
                                              Colette Reiner Mayer

                                        MORRISON & FOERSTER LLP

                                        Louise C. Stoupe*
                                        Colette Reiner Mayer*
                                        Elizabeth Balassone*
                                        Pieter S. de Ganon*
                                        Samuel Cortina*

                                        NATIONAL IMMIGRATION LAW CENTER
                                        Linton Joaquin*
                                        Karen C. Tumlin*
                                        Nora A. Preciado*

                                        AMERICAN IMMIGRATION COUNCIL
                                        Mary Kenney*
                                        Melissa Crow*
                                        Aaron Reichlin-Melnick*

                                        ACLU FOUNDATION OF ARIZONA
                                        Kathleen E. Brody (Bar No. 026331)

                                        LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
                                        Elisa Marie Della-Piana*

                                        Attorneys for Plaintiffs

                                        **Admitted pursuant to Ariz. Sup. Ct. R. 38(a)*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2018, I caused a PDF version of the documents listed below to be electronically transmitted to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

- **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**

- **DECLARATION OF SAMUEL CHRISTOPHER CORTINA IN SUPPORT OF REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**

- **APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**

- **APPENDIX: EXHIBIT 1**

| Colette Reiner Mayer | */s/ Colette Reiner Mayer* |
|---|---|
| (typed) | (signature) |