# APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS
# JANE DOE #1  v. NIELSEN
# Case No. 4:15-cv-00250-TUC-DCB

# Exhibit 1

# Exhibit 1

```
              IN THE UNITED STATES DISTRICT COURT

                      DISTRICT OF ARIZONA

Jane Doe #1; Jane Doe #2,        )
Norlan Flores, on behalf of      )
themselves and all others        )
similarly situated,              )   CV 15-250-TUC-DCB
                                 )
            Plaintiffs,          )
  vs.                            )
                                 )   November 15, 2016
Jeh Johnson, Secretary, United   )   Tucson, Arizona
States Department of Homeland    )   9:00 a.m.
Security, in his official capacity; )
R. Gil Kerlikowske, Commissioner,)
United States Customs and Border )
Protection, in his official capacity; )
Jeffrey Self, Commander, Arizona )
Joint Field Command, in his official )
capacity; Manuel Padilla, Jr.,   )
Chief Patrol Agent-Tucson Sector,)
in his official capacity,        )
                                 )
            Defendants.          )
```

EVIDENTIARY HEARING - DAY 2

BEFORE:  HONORABLE DAVID C. BURY
         UNITED STATES DISTRICT JUDGE

Ms. Dianne Davenport, RDR, CRR
405 W. Congress, Suite 1500
Tucson, Arizona 85701
(520)205-4266

Proceedings Reported by Realtime Court Reporter
Transcript Prepared by Computer-Aided Transcription

2

|   |   |
|---|---|
| 1 | A P P E A R A N C E S |
| 2 | For the Plaintiffs: |
| 3 | Morrison & Foerster LLP<br>Mr. Harold J. McElhinny |
| 4 | Mr. Robert Esposito<br>Attorneys at Law |
| 5 | 425 Market Street<br>San Francisco, CA 94105 |
| 6 |   |
| 7 | Ms. Louise C. Stoupe<br>Mr. Pieter S. de Ganon<br>Attorneys at Law |
| 8 | Shin-Marunouchi Building, 29th Floor<br>5-1, Marunouchi 1-Chome |
| 9 | Tokyo, Chiyoda-ku 100-6529, Japan |
| 10 | Ms. Colette Reiner Mayer<br>Attorney at Law |
| 11 | 755 Page Mill Road<br>Palo Alto, CA 94304-1018 |
| 12 |   |
| 13 | Mr. James J. Cekola<br>Attorney at Law<br>12531 High Bluff Drive, Suite 100 |
| 14 | San Diego, CA 92130 |
| 15 | National Immigration Law Center<br>Ms. Nora A. Preciado |
| 16 | Ms. Karen C. Tumlin<br>Attorneys at Law |
| 17 | 3435 Wilshire Boulevard, Suite 2850<br>Los Angeles, CA 90010 |
| 18 |   |
| 19 | American Civil Liberties Union - Phoenix, AZ<br>Ms. Brenda Furnish |
| 20 | Mr. Daniel Pochoda<br>Attorneys at Law |
| 21 | P.O. Box 17148<br>Phoenix, AZ 85011 |
| 22 | Lawyers Committee for Civil Rights<br>Ms. Megan Sallomi |
| 23 | Attorney at Law<br>131 Steuart Street, Suite 400 |
| 24 | San Francisco, CA 94105 |
| 25 |   |

| | |
|---|---|
| 1 | A P P E A R A N C E S |
| 2 | <u>For the Defendants</u>: |
| 3 | U.S. Department of Justice - Civil Division |
| | Ms. Sarah B. Fabian |
| 4 | Mr. Colin Kisor |
| | Ms. Sarah Vuong |
| 5 | Mr. Michael Celone |
| | Attorneys at Law |
| 6 | P.O. Box 868 |
| | Ben Franklin Station |
| 7 | Washington, D.C. 20044 |

## WITNESS INDEX

| WITNESS | PAGE |
|---|---|
| **JUSTIN BRISTOW** | |
| Direct Examination by Ms. Fabian | 5 |
| Cross-Examination by Ms. Mayer | 18 |
| Redirect Examination by Ms. Fabian | 20 |
| **AMY BUTLER** | |
| Direct Examination by Ms. Fabian | 21 |
| Cross-Examination by Mr. McElhinny | 26 |
| Redirect Examination by Ms. Fabian | 29 |
| **GEORGE ALLEN** | |
| Direct Examination by Ms. Fabian | 30 |
| Cross-Examination by Mr. McElhinny | 75 |
| Redirect Examination by Ms. Fabian | 113 |
| Examination by the Court | 117 |
| **PHILIP HARBER** | |
| Direct Examination by Mr. Celone | 119 |
| Cross-Examination by Ms. Stoupe | 128 |
| **RICHARD BRYCE** | |
| Direct Examination by Ms. Vuong | 135 |
| Cross-Examination by Ms. Stoupe | 144 |
| Redirect Examination by Ms. Vuong | 147 |

## EXHIBIT INDEX

| EXHIBIT | OFFERED | ADMITTED |
|---|---|---|
| 2 | 55 | 55 |
| 5 | 10 | 10 |
| 236 | 19 | 19 |
| 237 | 27 | 27 |
| 256 | 93 | 94 |
| 286 | 99 | 99 |
| 384 | 134 | 134 |

1   longer one. I wanted to point that out. Otherwise, we are ready to go.
2           THE COURT: Let's keep going.
3              GEORGE ALLEN, DEFENSE WITNESS, SWORN
4           THE COURT: Please state your full name and spell your last name
5   for the record.
6           THE WITNESS: George W. Allen. A-l-l-e-n.
7           MS. FABIAN: Your Honor, we have just a demonstrative
8   exhibit to explain some of his testimony that we would like to place up
9   on the screen.
10          THE COURT: Sure.
11                       DIRECT EXAMINATION
12  BY MS. FABIAN:
13  Q.   Chief Allen, can you please explain your title and your position
14  with the U.S. Border Patrol.
15  A.   Yes. My title is Assistant Chief Patrol Agent. And I'm assigned to
16  the Tucson sector. And my duties involve prosecutions, asset forfeiture,
17  processing, transportation, and transfer.
18  Q.   And for those of us who are less familiar with Border Patrol, just
19  day to day what's your role with regard to the sector?
20  A.   My role is reviewing certain cases that are encountered; assisting
21  in making decisions on what route that may take, whether it is a
22  criminal or administrative process; implementing policies; clarifying
23  policies; getting clarification from Washington, D.C., on policies; and
24  disseminating those policies.
25  Q.   Who is your boss at Tucson sector?

1  MS. FABIAN: Objection. It's asking him to decide if he's
2  complying with a legal opinion and it doesn't apply to this case or to his
3  facilities.
4  THE COURT: He's just asking -- well, he's asking the
5  question he did, is this what they do.
6  THE WITNESS: Some parts are similar. Obviously some
7  parts aren't.
8  BY MR. MCELHINNY:
9  Q. Which parts of this would you say you don't do?
10 A. The part we don't do? Well, obviously we do not have medical
11 professional -- I mean, a mental health professional, psychologist on
12 our staff. Once again, we are a processing facility, not a jail like this is.
13 Q. Do you provide any mental health screening at all?
14 A. We do observation, talking to somebody, records check to see if
15 there is any prior history notated, that's the --
16 Q. If you look at the next page in paragraph 24, and particularly the
17 last sentence that says, "Almost half of inmates booked each day are
18 identified as needing further evaluation by a registered nurse."
19 Is that your experience in your detention facilities, that 50
20 percent of people that you are booking require a second step in the
21 screening process?
22 A. In our processing facilities, that's not our experience. We have
23 quite a different dynamic of people we service versus a jail.
24 Q. What do you mean by a "different dynamic"? You mean
25 healthier?

1  A.  You know, basically I'd say healthier absolutely. It's a cross-
2  section, but we deal with all kinds of individuals. Like I said, we deal
3  with aggravated felons, criminal aliens, people smuggling drugs, people
4  trafficking other human beings, but we also deal with migrants.
5  Q.  And people from India and Pakistan?
6  A.  And people from all over.
7  Q.  But your experience is you don't see -- 50 percent of your people
8  don't require a next step in a screening process?
9  A.  That's correct.
10 Q.  And then if you look at paragraph 25, it says, "At least one
11 medical provider, a physician, physician assistant, or nurse practitioner
12 is assigned to the intake center 24 hours a day, seven days a week."
13 You don't have that?
14 A.  Once again, this is a jail. We're a processing center. We would
15 be the same as the Tucson police station intake. They pick up
16 somebody for DUI. They take them. They process them. Give them
17 the breathalyzer. There is not going to be a physician assistant there.
18 There is not going to be a mental health expert there. When they are
19 completed with their processing, they take them to the jailer, which is
20 Pima County jail, and they book them into the Pima County jail. ICRO
21 is our jailer.
22 Q.  Remind me how many detainees you bring into a general
23 population in a year?
24 A.  In a year? This past last fiscal year about 65,000.
25 Q.  And in your entire sector, you don't have a medical professional

1   transition out slower.  Then our population is going to be quite larger.
2   It may not be reflective of the 177 that we averaged this past fiscal
3   year.  Of that maybe we would have three to four times in custody.
4              MS. FABIAN:  A moment to confer, Your Honor.
5              THE COURT:  All right.
6              MS. FABIAN:  I have no further questions, Your Honor.
7              THE COURT:  Chief, a couple of questions for you.
8              THE WITNESS:  Yes, sir.
9              THE COURT:  Since you refer to this as a processing center,
10  this answer is pretty obvious, but I need to get it on the record.
11             THE WITNESS:  Yes, Your Honor.
12             THE COURT:  When a person is brought to your processing
13  center and booked or interviewed initially, they are not free to leave
14  until you say so, correct?
15             THE WITNESS:  That is correct.
16             THE COURT:  They are in your custody?
17             THE WITNESS:  Yes.
18             THE COURT:  And probably 20 to 30,000 of them every year
19  are in your custody for 48 to 72 hours, correct?
20             THE WITNESS:  Yes.
21             THE COURT:  All right.  If Cochise County Sheriff arrests a
22  guy for armed robbery in Nogales, takes him to the Santa Cruz County
23  jail and he's booked into that jail, does he have better facilities
24  available to him than 20 to 30,000 of your detainees?
25             THE WITNESS:  Absolutely.

1        THE COURT:  He has a bed?
2        THE WITNESS:  He has a bed.
3        THE COURT:  Toilet?
4        THE WITNESS:  Yes.
5        THE COURT:  Clothing?
6        THE WITNESS:  Yes.
7        THE COURT:  Food?
8        THE WITNESS:  Yes.
9        THE COURT:  Warmth?
10       THE WITNESS:  Yes.
11       THE COURT:  Don't you think it's time that your facilities are
12  modified or changed to accommodate the human need at least for
13  sleep if you are going to keep somebody for two or three days?
14       THE WITNESS:  I don't know if modifying our facilities is the
15  direction to go.  It is making available the facilities that exist where
16  they are supposed to go available.  That's passing the buck.  But
17  Border Patrol is very good at what they do.  That's detecting and
18  deterring and interdicting and processing and identification.
19       What we're looking for is our next step is the U.S. Marshals to
20  say, here, CCA, you got 100 beds.  You'll take everybody to CCA that's
21  going to come to court.  On Friday you take them there and drop them
22  off and come back.  Obviously that's DOJ.  We're DHS.  That is out of
23  our control.  ICRO has multiple facilities that immediately take them.
24       THE COURT:  I'm just asking you about a basic human need
25  for sleep.  In a period of two or three days, don't you think that should

1  be provided, a sleeping condition such as, at the very least, a mat, if
2  not a cot or some kind of a bed?  Don't you think it's time to do that,
3  Chief?
4              THE WITNESS:  It's time to have that provided.  But, once
5  again, we need a place to provide it.
6              THE COURT:  You can step down.  Thank you.
7         You have two more witnesses?
8              MS. FABIAN:  Yes, Your Honor.
9              THE COURT:  Let's do them efficiently if we could.
10              MR. CELONE:  The government would like to call Dr. Harber
11  to the stand.
12                  PHILIP HARBER, DEFENSE WITNESS, SWORN
13              THE CLERK:  Please state your full name and spell your last
14  name for the record.
15              THE WITNESS:  Philip Harber.  H-a-r-b-e-r.
16                          DIRECT EXAMINATION
17  BY MR. CELONE:
18  Q.    Thank you, Dr. Harber.  What is your current profession?
19  A.    I'm a physician and professor.
20  Q.    Where are you a professor?
21  A.    The University of Arizona College of Public Health.
22  Q.    What do you teach?
23  A.    My area -- I'm in the College of Public Health.  I'm in the
24  Department of Community Environment and Policy.
25  Q.    What is your educational background?

C E R T I F I C A T E

     I, Dianne Davenport, certify that the foregoing is a correct transcript to the best of my ability from the record of proceedings in the above-entitled matter.


    s/ Dianne Davenport         November 27, 2016
    Dianne Davenport, RDR, CRR