Louise C. Stoupe*
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Tokyo, Chiyoda-ku 100-6529, Japan
Telephone: +81-3-3214-6522
Facsimile: +81-3-3214-6512
Email: LStoupe@mofo.com

Colette Reiner Mayer*
Pieter S. de Ganon*
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: CRMayer@mofo.com
Email: PdeGanon@mofo.com

Attorneys for Plaintiffs
*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)
Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe #1; Jane Doe #2; Norlan Flores, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>Kirstjen M. Nielsen, Secretary, United States Department of Homeland Security, in her official capacity; Kevin K. McAleenan, Acting Commissioner, United States Customs & Border Protection, in his official capacity; Carla L. Provost, Acting Chief of the United States Border Patrol, in her official capacity; Rodolfo Karisch, Commander, Arizona Joint Field Command, and Chief Patrol Agent-Tucson Sector, in his official capacities,<br><br>     Defendants. | Case No. 4:15-cv-00250-TUC-DCB<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**<br><br>**CLASS ACTION**<br><br>**(Assigned to the Honorable David C. Bury)**<br><br>Action Filed: June 8, 2015<br><br>**UNDER SEAL** |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:15-CV-00250-DCB
sf-3887428

Elizabeth Balassone*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email: EBalassone@mofo.com

Samuel Cortina*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: (858) 720-5100
Facsimile: (858) 720-5125
Email: SCortina@mofo.com

Linton Joaquin*
Karen C. Tumlin*
Nora A. Preciado*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 2850
Los Angeles, CA 90010
Telephone: (213) 639-3900
Facsimile: (213) 639-3911
Email: joaquin@nilc.org
Email: tumlin@nilc.org
Email: preciado@nilc.org

Mary Kenney*
Aaron Reichlin-Melnick*
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, D.C. 20005
Telephone: (202) 507-7512
Facsimile: (202) 742-5619
Email: mkenney@immcouncil.org
Email: areichlin-melnick@immcouncil.org

Elisa Marie Della-Piana*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Facsimile: (415) 543-0296
Email: edellapiana@LCCR.com

Brenda Muñoz Furnish (Bar No. 027280)
Kathleen E. Brody (Bar No. 026331)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
Email: bmfurnish@acluaz.org
Email: kbrody@acluaz.org

Attorneys for Plaintiffs

*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:15-CV-00250-DCB
sf-3887428

## I. INTRODUCTION

The U.S. Customs and Border Protection ("CBP") detains tens of thousands of people each year in the Tucson Sector and holds them in conditions that violate the Constitution. Men, women, and children are jammed together in crowded hold room cells and forced to lie on soiled, cold concrete floors, next to toilets and trash. Surveillance video shows people being repeatedly stepped over as others make their way to and from the toilets. These degrading and unsanitary conditions deprive Class Members of their constitutional right to sleep.

The provision of mats under the Preliminary Injunction is an interim solution, which has provided partial relief to Class Members pending the final resolution of Plaintiffs' claims. But the law is clear: civil pretrial detainees must be given beds or mattresses raised off of the floor if they are held for any period requiring sleep. Anything less, including floor mats, is a violation of their Fifth Amendment Due Process rights. The Court should grant Plaintiffs' motion for partial summary judgment regarding Defendants' obligation to provide Class Members beds.

## II. STATEMENT OF UNCONTESTED FACTS

### A. The Conditions of Confinement, Both Pre- and Post-Preliminary Injunction, Inhibit Sleep.

The Court recognized that civil detainees have a right to sleep.[1] (PI Order, ECF No. 244 at 15:28-16:1.) Yet nearly everything about Defendants' hold rooms and policies inhibit sleep. The facilities were intentionally built not to accommodate sleeping for detainees. (Declaration of Samuel Christopher Cortina ("Cortina Decl.") Ex. 9 at USA000091 ("In general, all hold rooms must have the following requirements: . . . (d) No beds; a hold room is not designed for sleeping").) To that end, the rooms feature bare

---

[1] As the Court recognized in its order granting the preliminary injunction, "the law and the facts clearly favor Plaintiffs' position that Defendants are violating Plaintiffs' constitutional right to sleep." (PI Order, ECF No. 244 at 15:28-16:1.)

concrete floors and benches (Statement of Undisputed Material Facts ("SUMF") No. 1), and contain no beds of any kind[2] (SUMF No. 2).

Prior to the Court's intervention, Defendants' practice was to relegate the vast majority of detainees to cold, hard floors. (SUMF No. 3.) Even young children and babies were forced to sleep on the floor surrounded by refuse. (Declaration of Gary T. Stenger ("Stenger Decl.") Ex. 17 (video stills showing family sleeping on top of Mylar sheet placed on the dirty ground); *id.* Ex. 18 (woman changing baby's diaper on floor surrounded by filth); *id.* Ex. 19 (same woman and baby sleeping on the floor under a Mylar sheet).)

Based on these conditions, the Court *preliminarily* ordered Defendants to provide mats to any Class Member held longer than 12 hours. (PI Order, ECF No. 244 at 16:1-3.) That relief has failed to address many of the same sanitation and overcrowding concerns that existed before the preliminary injunction because detainees must place these mats directly on the same concrete floor. (Cortina Decl. Ex. 10 at 39:6-21 (George Allen as 30(b)(6) deponent testifying that mats must be placed on the floor); *id.* Ex. 11 ¶ 5 (George Allen declaring that the stations were instructed to recalculate capacity in the hold rooms by determining how many floor mats could fit on the ground); Declaration of Jameson Aaron Ullman ("Ullman Decl.") Ex. 15 (series of screenshots following the preliminary injunction showing man having to step over individuals packed into a room on their mats in order to use the toilet); Stenger Decl. Ex. 20 (series of screenshots following the preliminary injunction showing crammed room and men forced to lay their mats in the toilet stalls because that was the only available floor space); *id.* Ex. 21 (series of screenshots following the preliminary injunction showing overcrowded room with men having to sleep in the toilet stalls with almost no space on the ground on which to walk).)

---

[2] Defendants' TEDS policy defines bedding only as a "blanket, mat, *or* cot," and makes provision of bedding to detainees *optional*. (Cortina Decl. Ex. 14 at USA000645 (definition of bedding (emphasis added), USA000634 (clean blankets should be provided to adults upon request when available).) This policy is insufficient under the law.

This is a critical fact that explains why the American Correctional Association requires beds to be raised at least 12 inches off of the floor. (Cortina Decl. Ex. 12 at 5 ("Each inmate confined in a cell/room is provided with the following: a sleeping surface and mattress that allows the inmate to be at least 12 inches off the floor").) While they present an improvement over the cold concrete, mats confined to the floor (and sometimes within the toilet stalls) are not a suitable long term solution to uphold Class Members' constitutional right to sleep.

### B. The Majority of Detainees Are Detained So Long That They Are Constitutionally Entitled to Sleep.

The majority of detainees are held in Defendants' facilities longer than 12 hours, and, as the Court recognized, many are held for days. (SUMF No. 4; PI Order, ECF No. 244 at 14:25-26 ("The processing being conducted at the Border Patrol stations, whether or not it is being done for booking purposes, takes days (48 hours).").) Plaintiffs' forensics expert Michael Bandemer analyzed Defendants' e3DM data from January 2015 through February 2018 (the most recent data available) and found that 85.5% of detainment events lasted longer than 12 hours, 43.6% lasted longer than 24 hours, 19.9% lasted longer than 36 hours, and 8.3% lasted longer than 48 hours.



PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:15-CV-00250-DCB                                                                 3
sf-3887428

(Cortina Decl. Ex. 7 at 2.)  He also found that the average length of detention during the class period was 26 hours.  (*Id.* Ex. 7 at Chart 3.)

The data does not represent how long these detainees have been without sleep.  First, it only begins recording from the time an individual is booked into a facility, (*id.* Ex. 8 ¶ 24), and thus does not capture how long these individuals have been in custody prior to book-in without any means to sleep.  (*Id.* Ex. 3 at 38:11-39:21 ("You know, oftentimes by the time we get someone to the station, we're approaching on 12 hours [of time of custody].").)  Second, the data does not reflect the amount of time these men, women, and children have been crossing the treacherous Sonoran desert.  (*See* Cortina Decl. Ex. 2 at 136:20-138:5 (". . . being in the desert here, we encounter people who have been out in the desert for some time, out in the heat. So they have symptoms of heat stroke or dehydration or that type of thing. Or in the wintertime it goes from 85, 90 degrees down to 30 degrees at night.  So we'll get people that could have signs of hyperthermia type of thing.").)

How long detainees are held is purportedly out of Border Patrol's hands, meaning Border Patrol can do nothing to mitigate extended lengths of detention.  According to Defendants, they are "at the mercy of" receiving agencies which "dictate to [Border Patrol] when they can accept" detainees—even after processing by Border Patrol is complete.  (Cortina Decl. Ex. 3 at 33:6-19, 36:20-37:17, 49:15-50:5, 76:21-77:4; *see also id.* Ex. 13 at 23:7-16 (Ms. Marroquin, the youth coordinator at the TCC, testifying that "it would be a question for ICE" as to why children are being detained by Border Patrol longer than 24 hours).)  Mexican repatriation similarly compounds length of detention because of an agreement between the United States and Mexico that forbids repatriation during nighttime hours.  (Cortina Decl. Ex. 3 at 38:11-39:21.)  Mr. Bandemer's analysis demonstrates that length of detention remains a problem even despite significantly fewer bookings.  (*Compare* Cortina Decl. Ex. 7 (Chart 2 (number of unique detainment events dropped precipitously in early 2017) with *id.* Ex. 7 Chart 3 (average length of detention showed minor fluctuations—both up and down—during same time period)).)

Regardless of why detainees are held in Border Patrol custody for extended periods, the right to sleep remains. Indeed, the Court found that a person detained for over 12 hours, regardless of what time of day or night it is, needs to lie down to sleep. (PI Order, ECF No. 244 at 14:9-13.) Because many of the Class Members are apprehended after days of traversing the desert and are then unavoidably held in Border Patrol custody for far longer than 12 hours, their need for sleep is more urgent than the need of a typical civil pretrial detainee.

## III.   ARGUMENT

### A.   Legal Standard for Partial Summary Judgment

Summary judgment is appropriate if there are no material facts in genuine dispute, and judgment is warranted as a matter of law. Fed. R. Civ. P. 56(a). The facts are viewed in a light most favorable to the nonmoving party. *Id.* A fact is material if it might affect the outcome of the claim under the relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to establish a genuine and material factual dispute. *See id.* at 324.

The Court may adjudicate issues within a claim or defense and grant partial summary judgment under Rule 56(a), which provides for summary judgment on "*part* of each claim or defense." Fed. R. Civ. P. 56(a) (emphasis added).

### B. Defendants Are Required To Provide Beds to All Class Members Held Longer Than 12 Hours.

#### 1. Raised Beds Are a Constitutional Minimum.

Class Members held longer than 12 hours are constitutionally entitled to sleep in beds raised off of the ground. In *Thompson v. City of Los Angeles*, the Ninth Circuit considered a civil detainee's claim that "the County's failure to provide him with a bed in the County Jail constituted a deprivation of his Fourteenth Amendment [Due Process] rights" and found that such action "unquestionably constitutes a cognizable [Due Process] claim."[3] 885 F.2d 1439, 1442, 1448 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 980-81 (9th Cir. 2010) (en banc).

*Thompson* followed other courts that held "a jail's failure to provide detainees with a mattress and bed or bunk runs afoul of the commands of [Due Process]." *Id.* at 1448. For instance, *Thompson* cited *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 996-97 (3d Cir. 1983) for the proposition that the "elimination of [the] 'unsanitary and humiliating' practice of forcing detainees to sleep on floor mattresses [is] essential to bring [a] jail up to minimum constitutional standards." *Thompson*, 885 F.2d at 1448. *Thompson* also cited *Vazquez v. Gray,* 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) for the proposition that the "use of floor mattresses for pretrial detainees [is] unconstitutional." *Thompson*, 885 F.2d at 1448. And *Thompson* cited *Stewart v. Gates,* 450 F. Supp. 583, 588 (C.D. Cal. 1978) and *Rutherford v. Pitchess*, 457 F. Supp. 104, 109 (C.D. Cal. 1978) for the principle that "basic concepts of decency, as well as reasonable respect for constitutional rights, require that [each inmate] be provided a bed." *Thompson*, 885 F.2d at 1448.

In *Union County Jail Inmates v. Di Buono* (another case cited in *Thompson*), the Third Circuit considered a county jail's practice of "forcing pre-trial detainees to sleep on

---

[3] Class Members here are civil pretrial detainees, whose Due Process claims against the federal government are analyzed under the Fifth Amendment.

mattresses placed on the floor" as a result of overcrowding, and upheld the Special Master's recommendation that "the floor mattress practice should be eliminated." 713 F.2d 984, 989, 994 & n.11 (3d Cir. 1983) (citation omitted). The Third Circuit held that the county must provide double bunks to "avoid the unsanitary and humiliating practice of forcing detainees to sleep on mattresses placed either on the floor adjacent to the toilet and at the feet of their cellmates, or elsewhere in the Jail." *Id.* at 996.[4]

Civil pretrial detainees—who are afforded the greatest protection by the Fifth Amendment—are constitutionally entitled to sleep on beds raised off the floor.

### 2. Detainees Held Longer Than 12 Hours Are Entitled to Sleep.

This Court recognized that detainees held longer than 12 hours need to lie down and rest. (PI Order, ECF No. 244 at 14:9-13.) No other authority refutes that holding. For instance, although the plaintiff in *Thompson* had been forced to spend two nights on a concrete floor, the court did not specify a minimum time period in order to trigger his constitutional right to a bed. 885 F.2d at 1442, 1448. Nor did the decisions on which *Thompson* relied depend on the amount of time an inmate was detained. In *Lareau v. Manson*, the Second Circuit called the use of floor mattresses for both pretrial detainees and sentenced inmates "egregious," and held the practice unconstitutional "without regard to the number of days for which a prisoner is so confined." 651 F.2d 96, 105 (2d Cir. 1981). It then issued a "blanket prohibition . . . against the quartering of inmates on mattresses on cell floors." *Id.* at 108. Likewise, in *Anela v. City of Wildwood*, the Third Circuit held that forcing pretrial detainees to sleep on holding cell floors for a single night "constituted privation and punishment in violation of the Fourteenth Amendment." 790 F.2d 1063, 1064, 1069 (3d Cir. 1986). The right and need to sleep begins after 12 hours of detention, especially so in the conditions before the Court in this case.

---

[4] *See also Lyons v. Powell,* 838 F.2d 28 (1st Cir. 1988) (citing *Lareau v. Manson*, *Union County Jail Inmates v. Di Buono*, and *Anela v. City of Wildwood* in holding that "subjecting pretrial detainees to the use of a floor mattress for anything other than brief emergency circumstances may constitute an impermissible imposition of punishment, thereby violating the due process rights of such detainees").

\* \* \*

The undisputed material facts are dispositive: The majority of detentions last more than 12 hours, almost half last longer than 24 hours, and many last two days or longer. (SUMF No. 4; *see also* PI Order, ECF No. 244 at 14:25-26.)  Class Members have likely been up much longer than 12 hours due to their trek through the desert and transport to the station. (Cortina Decl. Ex. 3 at 38:11-39:21.)  Moreover, once Class Members hit the 12-hour mark, they are very likely to be held overnight for the reasons that Assistant Chief Allen explained at the preliminary injunction hearing. (*Id.* Ex. 3 at 38:20-39:21, 45:11-50:5.)  Yet Defendants do not provide Class Members with beds or mattresses raised off the floor, regardless of how long they are detained. (SUMF 2.)

While an improvement over the cold concrete, the use of floor mats has led to abuses identical to those condemned in *Union County Jail Inmates*, 713 F.2d at 993 n.11, such as cramming as many mats as will fit on the cell floor[5] and forcing detainees to step on and over the mats to leave the cell for processing or access the toilet areas. (Ullman Decl. Ex. 16 (screenshot of surveillance video following preliminary injunction showing room crowded with individuals and mats shoved next to each other on the floor); *id.* Ex. 15 (same); Stenger Decl. Ex. 22 (same).)  Even with the mats, detainees are forced to lie on dirty floors and next to toilets and garbage receptacles. (Stenger Decl. Ex. 20; *id.* Ex. 23; Ullman Decl. Ex. 16; *id.* Ex. 15.)  These conditions are indecent and plainly inhibit sleep.

The law is clear: Civil detainees are entitled to beds for a detention that spans any amount of time in which sleep is necessary. *See Thompson*, 885 F.2d at 1448; *Lareau*, 651 F.2d at 105; *Anela*, 790 F.2d at 1064.  Floor mats are an insufficient substitute. *See Lareau*, 651 F.2d at 101 ("In such cases a second mattress was put on the floor at night, almost completely eliminating even the little square footage of room for movement which

---

[5] Following the preliminary injunction, Defendants re-calculated hold room capacity by determining how many mats will fit side-by-side on the cell room floor. (*See* Cortina Decl. Ex. 11 ¶ 5.)

is left to regularly double-bunked inmates."); *id.* at 107-108 (floor mattresses deprive detainees of "minimum decent housing"). The provision of raised beds is a constitutionally required measure when it comes to the federal government's treatment of these exhausted, civil pretrial detainees.

### III.     CONCLUSION

For the reasons stated above, the Court should grant partial summary judgment requiring Defendants to provide beds raised at least 12 inches off of the ground to all Class Members held longer than 12 hours.

Dated: May 4, 2018                    By:   */s/* Colette Reiner Mayer
                                              Colette Reiner Mayer

MORRISON & FOERSTER LLP

Louise C. Stoupe*
Colette Reiner Mayer*
Elizabeth Balassone*
Pieter S. de Ganon*
Samuel Cortina*

NATIONAL IMMIGRATION LAW CENTER
Linton Joaquin*
Karen C. Tumlin*
Nora A. Preciado*

AMERICAN IMMIGRATION COUNCIL
Mary Kenney*
Melissa Crow*
Aaron Reichlin-Melnick*

ACLU FOUNDATION OF ARIZONA
Kathleen E. Brody (Bar No. 026331)
Brenda Muñoz Furnish (Bar No. 027280)

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Elisa Marie Della-Piana*

Attorneys for Plaintiffs

*Admitted pursuant to Ariz. Sup. Ct. R. 38(a)

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2018, I caused a PDF version of the documents listed below to be electronically transmitted to the Clerk of the Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants and non-registered parties.

- **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**
- **DECLARATION OF SAMUEL CHRISTOPHER CORTINA IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**
- **DECLARATION OF GARY T. STENGER IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**
- **DECLARATION OF JAMESON AARON ULLMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**
- **APPENDIX OF EXHIBITS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**
- **APPENDIX PART I EXHIBITS 1-12**
- **APPENDIX PART II EXHIBITS 13-23**
- **PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANTS' OBLIGATION TO PROVIDE BEDS**

| Colette R. Mayer | */s/ Colette R. Mayer* |
|---|---|
| (typed) | (signature) |