**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Unknown Parties, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kirstjen M Nielsen, et al.,<br><br>Defendants. | No. CV-15-00250-TUC-DCB<br><br>**ORDER** |

Procedural History

On November 18, 2016, this Court issued a preliminary injunction in this class action lawsuit brought by civil detainees, being held pursuant to civil immigration laws, against Defendants the Secretary of the United States Department of Homeland Security, the Commissioner of the United States Customs and Border Protection (CBP), the Chief of CBP, and the Arizona Joint Field Command and Chief Patrol Agent-Tucson Sector. This Court found that the Plaintiffs established they were likely to succeed on the merits of their claims, were likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tipped in their favor, and the injunction was in the public interest. The Court ordered the Defendants to immediately comply with CBP's 2008 Hold Rooms and Short Term Custody Policy (2008 Policy) and the National Standards on Transport, Escort, Detention, and Search (TEDS) standards and that the standard requiring clean bedding includes mats for detentions exceeding 12 hours.

Both parties appealed. The Defendants argued that this Court misapprehended *Bell v. Wolfish,* 441 U.S. 520 (1979) and the injunction was too rigid and unduly burdensome. Plaintiffs argued that the Court should have required Defendants to provide beds with mattresses, showers, and medical care provided by medical professionals. On March 21, 2018, the Ninth Circuit Court of Appeals affirmed the entry of the preliminary injunction.

There has been no assertion of non-compliance, therefore, this has been the status quo since November 18, 2016. Discovery is closed, and Plaintiffs seek partial summary judgment on the issue of beds.

<u>Plaintiffs' Motion for Partial Summary Judgment</u>

According to Plaintiffs:

> The U.S. Customs and Border Protection ("CBP") detains tens of thousands of people each year in the Tucson Sector and holds them in conditions that violate the Constitution. Men, women, and children are jammed together in crowded hold room cells and forced to lie on soiled, cold concrete floors, next to toilets and trash. Surveillance video shows people being repeatedly stepped over as others make their way to and from the toilets. These degrading and unsanitary conditions deprive Class Members of their constitutional right to sleep.

(Ps MPSJ (Doc. 377) at 3.)

According to the Plaintiffs, "the law is clear: civil pretrial detainees must be given beds or mattresses raised off of the floor if they are held for any period requiring sleep. Anything less, including floor mats, is a violation of their Fifth Amendment Due Process rights." *Id.*

Providing mats has not remedied the sanitation and overcrowding concerns that existed before the preliminary injunction because the mats are crammed together on the same unsanitary floors, often encroaching into the toilet stall areas and without sufficient walking space so that detainees are forced to walk on and over the floor mats. *Id.* at 4. The Plaintiffs tender evidence that cell occupancy rates have been recalculated based on the use of floor mats and submit pictures taken on December 24, 2016, showing a man stepping over and on floor mats as he makes his way to the toilet area in a holding cell. *Id.* at Ex. 15, *see also* Ex. 21 (12/12/16 picture reflecting very crowded conditions causing mats to be crammed together, walked on, and placed in toilet stall areas). Other pictures taken on

March 6, 2017, reflect an extremely crowded holding cell with at least one floor mat placed inside a toilet stall. *Id.* at Ex. 20.

Plaintiffs tender statistics which reflect that from January 2015 through February 2018, the average length of detention in CBP stations was 26 hours broken down as follows: 85.5% lasting longer than 12 hours, 43.6% lasting longer than 24 hours, 19.9% lasting longer than 36 hours, and 8.3% lasting longer than 48 hours. (Ps' MPSJ (Doc. 377) at 5.)

Plaintiffs submit, it cannot be disputed that the 48-hour average time for processing detainees at the CBP stations as a matter of necessity requires the vast majority of detainees to lie down and sleep at these CBP stations. Likewise, Plaintiffs argue it is undisputed that the use of floor mats in CBP stations has led to cramming as many mats on the floor as possible forcing detainees to step on and over mats and to lie near toilets. Therefore, Plaintiffs argue there are no disputed facts precluding partial summary judgment on their claim that civil detainees are constitutionally entitled to beds for these detentions, which span an amount of time in which sleep is necessary. According to the Plaintiffs, the use of floor mats in CBP stations leads to conditions condemned in *Union County Jail Inmates v. Di Buono,* 713 F.2d 984, 993 n. 11 (3rd Cir. 1983), as "reprehensible and dehumanizing." *Id.* at 997-998.

In addition to *Union County Jail,* Plaintiffs rely on *Thompson v. City of Los Angeles,* 885 F.2d 1439 (9th Cir. 1989), overruled on other grounds by *Bull v. San Francisco,* 595 F.3d 964, 977 (9th Cir. 2010); *Anela v. City of Wildwood,* 790 F.2d 1063 (3rd Cir. 1986), and *Lareau v. Manson*, 651 F.2d 96, 105 (2nd Cir. 1981). This Court, likewise, relied on these cases when it issued the preliminary injunction. *See also* (MPSJ (Doc. 377) at 8 (citing *Vazquez v. Gray,* 523 F. Supp. 1359 (S.D. N.Y. 1981), *Stewart v. Gates,* 450 F. Supp. 583 (C.D. Calif. 1978), and *Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978)).

In *Thompson,* the Ninth Circuit referenced these same cases and relied on *Lareau,* where the Second Circuit held a prison's use of floor mattresses for pretrial detainees was

unconstitutional without regard to the number of days of such confinement. In *Thompson*, the court overruled the district court's grant of summary judgment in favor of Los Angeles County, finding Thompson stated a Fourteenth Amendment due process claim by alleging he slept on the floor without a mattress for two nights in the county jail. The appellate court relied on *Rutherford*, 457 F. Supp. at 109, an earlier district court case finding that because of frequent overcrowded conditions in the same county jail inmates were often not provided with a bed. The court held floor-sleeping was inconsistent with due process, and the County was ordered to maintain the capability of providing each inmate with a bed. *Thompson*, 885 F.2d at 1448 (citing *Rutherford*, 457 F. Supp at 109-110). In *Thompson*, the Ninth Circuit presumed that the previously determined unconstitutional condition in the form of a shortage of beds had gone unremedied since 1978 at the county jail. This was enough to show floor sleeping in the county jail was a custom and practice, and the appellate court reversed the summary judgment for the County and remanded the case, giving the County the burden to show that it had remedied the bed shortage condition at the county jail or that Thompson's floor-sleeping was a relatively isolated occurrence. *Thompson,* 885 F.2d at 1448-1449.

The Plaintiffs ask the Court to rule as a matter of law that the use of floor-mats in CBP detention centers violates the Constitution. The law, best explained in *Thomas v. Baca,* 514 F.Supp.2d 1201 (9th Cir. 2007), "suggests that the Ninth Circuit views floor-sleeping, with or without a mattress, as offending 'basic' concepts of decency, as well as reasonable respect for constitutional rights.'" *Id.* at 1216 (citing *Thompson* and *Rutherford*).

In *Thomas,* the court found that requiring inmates to sleep on the floor deprives them of a minimum measure of civilized treatment and access to life's necessities because "access to a bed is an integral part of the 'adequate shelter' mandated by the Eighth Amendment." *Thomas,* 514 F. Supp.2d at 1216 (quoting *Johnson v. Lewis,* 217 F.3d 726, 732 (9th Cir. 2000) (describing need for protection from the elements as need for such things as blankets for warmth)). In *Thomas,* the Court found "[q]uite simply, that a custom

of leaving inmates nowhere to sleep but the floor constitutes cruel and unusual punishment [as being] nothing short of self-evident." *Id.*

Conclusion

The Court finds that the case law in the Ninth Circuit does not support Plaintiffs' request for judgment as a matter of law on the question of floor-sleeping. First, the *Thomas* court excluded processing time from its holding. "LASD facilities [shall] assign and provide each inmate with a bunk for the night immediately following the inmate's initial processing within the facility or transfer to a medical center or other place of screening or treatment, and for every night thereafter. Inmates must be processed within a reasonable amount of time[,]" which should not take more than twenty-four hours. *Id.* at 1219. And, *Thomas* recognized an exigent circumstance exception to the unconstitutionality of floor-sleeping, including floor-sleeping during processing. *Oliver v. Baca,* ___ F.3d ___ , 2019 WL 166117 * 5 (9th Cir. January 11, 2019) ("A sudden, extreme rise in inmate population caused by an acute event, such as a civil disturbance, may affect the length of time that is reasonable for processing. However, overcrowding or regular classification considerations do not constitute exigent circumstances that would justify floor-sleeping.")

In *Oliver v. Baca,* the Court applied the exigent exception and found as a matter of law there was no constitutional violation where a pretrial detainee was held without a bed during a three-and-a-half day stay at a processing center because county jail facilities were on lock-down due to county-wide prisoner disturbances. The Court afforded wide-ranging deference to the institutional considerations leading to the limitation of constitutional rights because officials were confronted with an emergency that threatened the safety and security of its facilities, and the response to the security threats was reasonable in its scope and effective in controlling the disturbances. *Id.* at *4-5.

The Ninth Circuit instructs that the Court should look at the circumstances, nature, and duration of an alleged deprivation. *Johnson v. Lewis,* 217 F.2d 726, 731 (9th Cir. 2000). This approach is explained by the Second Circuit in *Darnell v. Pineiro,* 849 F.3d 17 (2nd

Cir. 2018). *See Turano v. County of Alameda,* 2018 WL 5629341 *5 (N.D. Cal. Oct. 30, 2018) (finding *Darnell* persuasive).

In *Turano* the court applied *Darnell* to consider alleged holding cell conditions for pretrial detainees that lasted for approximately 8.5 hours, including filthy cells covered in garbage, feces and other bodily fluids, partially rotting food, strewed with used medical supplies, and constructed entirely out of cinderblocks and being very cold where the detainee was not provided with adequate clothing or a blanket. She could not obtain menstrual pads causing her to bleed through her clothing and onto the concrete bench. When she did obtain a menstrual pad, she had no access to soap and water or paper towels to clean herself; she instead was forced to wash her hands in the drinking fountain, creating an even more unsanitary environment. *Id.* The court held that the most egregious deprivations, even if only lasting for temporary periods of just a few hours, can result in a constitutional violation. "To find otherwise would permit defendants to subject pre-trial detainees to the most appalling conditions without any repercussions, as long as it 'only' lasts for several hours." *Id.*

Like the district court in *Turano,* this Court intends to follow the approach taken by the Second Circuit in *Darnell,*[1] which instructs that conditions of confinement cases should be evaluated on a case-by-case basis according to severity and duration. *Id.* There is no "static test" to determine whether a deprivation is sufficiently serious to violate the constitution. The Court must instead evaluate the conditions themselves in light of

---

[1] Likewise, the Court follows *Bell v. Wolfish,* 441 U.S. 520 (1979). (Order (Doc. 244) at 6-10.) A pretrial detainee's claim is assessed under the Due Process Clause because they have not been convicted of a crime and "may not be punished in any manner- neither cruelly and unusually nor otherwise." As federal civil detainees, the Plaintiffs' claims arise under the Due Process Clause of the Fifth Amendment, but protections afforded by the Due Process Clause of the Fourteenth Amendment apply. The Court looks to Eighth Amendment protections from cruel and unusual punishment because the detainee's rights are at least as great as the those of convicted prisoners. Eighth Amendment requires subjectively culpable state of mind where official knows of and disregards an excessive risk to inmate health or safety, *id.* n. 4 (applying *Estate of Ford v. Ramirez-Palmer,* 301 F.3d 1043, 1049 (9th Cir. 2002), *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Fourteenth Amendment claims must be evaluated under an objective deliberate indifference standard, *Gordon v. County of Orange,* 888 F.3d 1118, 1124-35 (9th Cir. 2018) (applying *Castro v. Los Angeles,* 833 F.3d 1060 (9th Cir. 2016) (*en banc*), *Kinsley v. Hendrickson,* 135 S. Ct. 2466 (2015).

contemporary standards of decency. *Darnell,* 849 F.3d at 30 (citing *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). In short, the Court analyzes allegedly unconstitutional conditions of confinement in reference to their severity and duration, not resulting injury -- which is merely one factor that may suggest an unjustified infliction of harm compared to being plausibly necessary. *Darnell,* 849 F.3d at 30 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)), *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing same).

Prisoners may not be deprived of their basic human needs—e.g., food, clothing, shelter, sanitation, medical care, and reasonable safety. (Order (Doc. 244) at 7) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

In *Darnell,* the court considered a temporary (between ten to 24 hours) holding facility for recently arrested pretrial detainees awaiting arraignment. Detainees alleged degrading conditions of confinement including: overcrowding, unusable toilets, garbage and inadequate sanitation, infestation, lack of toiletries (toilet paper) and hygienic items (menstrual pads), inadequate nutrition, extreme temperatures, poor ventilation, deprivation of sleep, and crime and intimidation. Cells were so full, there was often only space to stand for hours at a time and floors were so filthy that detainees could not lie on them. There was no clean water and no usable toilets, which caused detainees to become dehydrated and defecate in their clothes or use the toilet without paper to wipe themselves. Toilets overflowed with excrement, leaving the surrounding floor and walls contaminated with feces, urine, and vomit, and vermin like maggots, roaches, mice and other insects. The stench was horrific. *Darnell,* 849 F.3d at 23-24.

The court rejected the argument that occasional and temporary deprivations of sanitary and temperate conditions, without more, do not constitute a sufficiently serious deprivation to constitute punishment. The court held that conditions when aggregated may rise to the level of a constitutional violation, "'but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Darnell,* 849 F.3d at 30 (quoting *Walker v. Schult,* 717 F.3d

119, 125 (2nd Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). In *Darnell,* the court held that "[u]nsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citing *Walker*, 717 F.3d at 127–28) (collecting cases).

In *Darnell,* the nine challenged conditions of confinement were: 1) overcrowding; 2) unusable toilets; 3) garbage and inadequate sanitation; 4) infestation; 5) lack of toiletries and other hygienic items; 6) inadequate nutrition; 7) extreme temperatures and poor ventilation; 8) deprivation of sleep, and 9) crime and intimidation. The court explained that, regardless of whether these challenged conditions related to a deprivation involving sanitation or inadequate nutrition, each had to be measured by its severity and duration, not the resulting injury, and none were subject to a bright-line durational or severity threshold. Instead, the conditions were analyzed in combination, not in isolation, at least where one alleged deprivation had a bearing on another. *Darnell,* 849 F.3d at 32 (citing *Wilson*, 501 U.S. at 304 (noting the synergy between cold temperatures and the failure to provide blankets in establishing an Eighth Amendment violation)). For example, an overcrowded cell may exacerbate the effect of unsanitary conditions; poor ventilation may be particularly harmful when combined with an overflowing toilet, or inadequate nutrition may be compounded by infestation. *Id.*

Here, the challenged conditions of confinement are: 1) sleeping; 2) sanitation; 3) food, and 4) medical care. Sleeping on floor mats, coupled with overcrowding and unsanitary floor conditions, may rise to the level of an objective deprivation of the constitutional right to humane shelter, including sleeping conditions or sanitary conditions of confinement when sleeping.

Like the Court in *Darnell,* this Court will look through the lens of severity and duration to balance detainee conditions of confinement at CBP facilities in the Tucson sector with the operational needs of the Tucson sector. The severity of the exposure to sleeping on floor mats in overcrowded cells, coupled with the alleged lack of warmth, clean

clothes, showers, etc., may be less quantifiable than duration "'but [] qualitative offense to a [detainee's] dignity will be given due consideration.'" *Darnell,* 849 F.3d at 31 (quoting *Willey v. Kirkpatrick,* 801 F.3d 51, 68 (2ndh Cir. 2017)). Defendants are correct. This fact-intensive inquiry cannot be made on the summary judgment record.

Plaintiffs cannot rely on *Jones v. Blanas,* 393 F.3d 918 (9th Cir. 2004) for partial summary judgment because it only raises a rebuttable presumption that a lack of beds for detainees at CBP stations is punitive. Plaintiffs are civil detainees awaiting civil commitment; some may be awaiting criminal commitment. *See* (Reply (Doc. 359), Ex. 1: 11/15/16 Evidentiary Hearing George Allen, Assistant Chief Patrol Agent-Tucson Sector, at 107 (describing detainees as including aggravated felons, criminal aliens, people drug trafficking and trafficking human beings, and migrants)). In the Ninth Circuit, the civil nature of the confinement puts an important gloss on the meaning of punitive because a civil detainee is entitled to "more considerate treatment" than criminally detained counterparts. *Jones,* 393 F.3d at 932 (citing *Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982)).

It stands to reason, therefore, that individuals detained awaiting civil commitment proceedings are entitled to Fourteenth Amendment protections at least as great as those afforded civilly committed individuals and at least as great as those afforded to pretrial detainees who are individuals accused but not convicted of a crime. *Jones,* 393 F.3d at 932. Conditions identical or similar to, or more restrictive than, those in which a criminal counterpart is held raise a presumption of punishment. *Id.* Likewise, conditions of pre-adjudication civil confinement substantially worse than conditions of confinement imposed post-civil commitment, also, raise a presumption of punishment. *Id.* at 932-33.

Assuming the evidence at trial reflects the existence of alternative, less harsh methods of detention are imposed upon commitment to either civil or criminal detention facilities, both presumptions arise. Then, the Defendant must show why the conditions of confinement at the CBP stations are not excessive. To do this, the Defendant must do more than offer a bare assertion of a legitimate, non-punitive justification, such as:

ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.  Such assertions have been defeated by the presumptions.  To rebut the presumptions, the Defendant must establish that the challenged condition of confinement is not excessive in relation to the purpose of the Plaintiffs' pre-commitment detention.  For example, Defendants submit they detain Plaintiffs at CBP stations to conduct 24-7 processing of detainees into receiving facilities operated by ICE, Enforcement and Removal Operations (ERO) and the United States Marshal.  CBP processing takes between two and two and half hours without any complications; it takes on an average of 48 hours before detainees are moved to receiving facilities. (Order (Doc. 244) at 11-12.)  At trial, the Defendants shall be afforded an opportunity to rebut the presumptions that the conditions of confinement, including floor-sleeping with or without floor mats, are punitive because they are not related to 24/7 detainee processing.

Recently, the Ninth Circuit applied both presumptions to a civil detainee held, pre-commitment under the California Sexually Violent Predator (SVP) Act, in administrative segregation with criminal detainees who were able to identify him as a sex-offender because SVP detainees were required to wear red uniforms. *King v. Los Angeles County,* 885 F.3d 548 (2018).  The court compared the criminal-like pre-commitment detention to the treatment-like conditions he would find once committed to a facility under the SCP Act.  The Court noted that King's pre-commitment confinement was especially harsh because the red jumpsuit subjected him to threats and assaults by inmates for being a child molester. *Id.* at 554-555.  The court's discussion of legitimate non-punitive justifications was specific to the penological interests involved in King's detention which was that he was being held for commitment as a civil detainee in a treatment-type facility.  Within this context, the court assessed the severity and duration of the pre-commitment conditions of confinement. *Id.* at 558.  This brings the analysis full circle back to the fact intensive inquiry that is necessary to determine whether the challenged conditions of confinement amount to punishment. *Id.* at 557 (citing *Bell*, 441 U.S. at 536).

The Court denies the Plaintiffs' Motion for Partial Summary Judgment.

**Accordingly,**

**IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment (Doc. 377) is DENIED.

**IT IS FURTHER ORDERED** that the stay in this case is lifted.

**IT IS FURTHER ORDERED** that the parties shall jointly file Pretrial Order in this case within 30 days of the filing date of this Order.

**IT IS FURTHER ORDERED** that, thereafter, the Court shall set a pretrial conference; this case is ready for trial, and the trial date will be set at the pretrial conference.

Dated this 15th day of March, 2019.

Honorable David C. Bury
United States District Judge