IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe #1; Jane Doe #2; Norlan Flores, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Chad Wolf, Acting Secretary of Homeland Security; Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Protection; Carla L. Provost, Chief of United States Border Patrol, in her official capacity; Roy D. Villareal, Chief Patrol Agent-Tucson Sector, in his official capacity,<br><br>*Defendants*. | Case No. 4:15-cv-00250-TUC-DCB<br><br>**[PROPOSED] ORDER FOR PERMANENT INJUNCTION**<br><br>**CLASS ACTION**<br><br>**(Assigned to the Honorable David C. Bury)**<br><br>Action Filed: June 8, 2015<br>Trial Date: January 13, 2020 |

This Court has issued Findings of Fact and Conclusions of Law (Doc. 482) and entered judgment in favor of Plaintiffs (Doc. 483).

Good cause appearing, **IT IS ORDERED** that:

## I.     DEFINITIONS

The following terms and definitions shall apply to this Order:

a.  "Adequate Food" shall mean food that has been evaluated and approved by a registered dietitian and/or nutritionist to meet acceptable dietary standards for long-term detention and maintaining detainee health.

b.  "Bed" shall mean a raised cot, bunk, bed, or other similar structure with a mattress.  A Mat is not a Bed.

c.  "Blanket" shall mean a cloth blanket, capable of being washed and reused.   A Mylar Sheet is not a Blanket.

d.  "Book In" shall mean the time of a person's first arrival at any CBP station as entered in the e3 Detention Module ("e3DM").

e.  "Detainee" shall mean an individual in CBP's custody who is a class member in the above-captioned action.

f.  "Defendants" shall mean Chad Wolf, Acting Secretary of Homeland Security, in his official capacity; Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Protection, in his official capacity; Carla L. Provost, Chief of United States Border Patrol, in her official capacity; Roy D. Villareal, Chief Patrol Agent-Tucson Sector, in his official capacity, their respective successors in office, and the agents and employees acting under their authority and/or supervision.

g.  "Exigent Circumstances" shall mean exceptional, sudden, and unforeseeable events that temporarily cause CBP's inability to comply with this Order. For the purposes of this Order, Exigent Circumstances shall not mean overcrowding or regular classification considerations; shifts in migration patterns, volumes, or demographics; transfers from other CBP sectors; or periodic surges occurring along the border (which is a chronic condition).

      h.     "Order" shall mean this Order.

      i.     "Logistical Impossibility" shall mean that CBP is unable to transfer a Processing Complete Detainee to the appropriate receiving agency because that agency is operationally closed.  In no case shall Logistical Impossibility be construed to extend beyond the next business day.

      j.     "Mat" shall mean a mattress or pad intended to be used directly on the floor, which can be disinfected and cleaned.  A Mat shall include those currently being provided as of this Order in the Tucson Sector.

      k.     "Medically-Trained Professional" shall mean only a physician, physician assistant, nurse practitioner, or a registered nurse.

      l.     "Mylar Sheet" shall mean non-insulating, heat-reflective sheeting intended to reflect and prevent the loss of body heat.  A Mylar Sheet shall include those currently being provided as of this Order in the Tucson Sector.

      m.     "Paper Shower" shall mean a single-use combination wet towelette and dry towelette designed to clean the body.

      n.     "Parties" shall mean Plaintiffs and Defendants collectively in the above-captioned action.

      o.     "Plaintiffs" shall mean plaintiff class members in the above-captioned action.

      p.     "Potable Water" shall mean water safe for human consumption and so labeled.

      q.     "Processing Complete" shall mean that the Detainee has been processed by CBP and the receiving agency has been identified.

      r.     "Shower" shall mean a bath or stall in which water is showered—i.e., wet with a spray, fine stream, or drops—on the body.  A Paper Shower is not a Shower.

      s.     "Time in Detention" shall mean time in CBP custody, calculated from first Book In at any CBP station.

t.     "Station" shall mean Bryan A. Terry/Naco Station, Casa Grande Station, Douglas Station, Nogales Station, Sonoita Station, Tucson Coordination Center (TCC), Tucson Station, Why/Ajo Station, Wilcox Station, Three Points Station, or any other facility in the Tucson Sector where CBP processes Plaintiffs.

## II.     CONDITIONS OF CONFINEMENT

1.     U.S. Customs and Border Protections ("CBP") shall be permanently enjoined from holding Processing Complete[1] Detainees whose Time In Detention is longer than 48 hours, unless CBP provides the following conditions of confinement to meet Detainees' basic human needs:

 a.     An assigned Bed and Blanket for sleeping;
 b.     Showers;
 c.     Adequate Food;
 d.     Potable Water; and
 e.     Medical assessment by a Medically-Trained Professional.

2.     It shall be presumed that a Detainee is Processing Complete by 48 hours after Book In.  This follows from the Court's determination that CBP processing generally "takes between a couple of hours and 12 hours," "detentions beyond 48 hours are, generally, not related to CBP operations" (Doc. 482 at 11), and "the reasonable time from book-in at a CBP station to 'processing complete' is no longer than 48 hours" (*id.* at 39 ¶ 22).

3.     Defendants shall continue to provide Detainees with the items in ¶ 1a.–d. of this Order until Detainees are transferred to another agency, repatriated, released, or otherwise no longer in CBP custody.  In particular, Showers and clean bedding and Blankets for Beds shall be provided at least every 48 hours.

---

[1] Capitalized terms not defined in Section I ("Definitions") are defined in the body of this Order.

4. Defendants shall be enjoined from overcrowding hold rooms to the extent that Detainees (regardless of Time in Custody) are sleeping within toilet areas. Regardless of operational necessity, Mat-sleeping is only permitted outside hold room toilet areas.

5. Defendants shall make every effort not to exceed hold room Mat capacities, which are based on the number of Mats that can be fully unfolded on the floor with minimal or no overlapping, and with sufficient clearance to and from the cell door, toilet(s), and drinking water.  If operational necessity requires Defendants to exceed the Mat capacities, Defendants shall make every effort to limit the period during which Mat capacities are exceeded.  Operational necessity shall not excuse Defendants from failing to redistribute Detainees when there are empty or underused hold rooms.

6. The sleeping, personal hygiene, and medical provisions of the Preliminary Injunction (Order (Doc. 244) at 28 ¶¶ 1-4) are hereby made permanent.  Unless and until a more stringent provision applies under ¶ 1 of this Order, Defendants shall:

**Sleep**

a. Provide clean bedding, comprising, at least, a clean Mat and Mylar Sheet, to all Detainees being held longer than 12 hours.

**Personal Hygiene**

b. Provide each Detainee held longer than 12 hours with (i) the means to wash, such as a Shower (with soap and a clean paper or cloth towel) or a Paper Shower, as well as the personal privacy necessary to take a Shower or use a Paper Shower; and (ii) a toothbrush and toothpaste.

c. Ensure that each hold room occupied by one Detainee (or more) has working sinks, working toilets, and garbage receptacles, and is stocked with an adequate supply of toilet paper and hand soap.

d. Provide feminine hygiene products on demand, and ensure that all hold rooms occupied by one female Detainee (or more) are stocked with an adequate supply of feminine hygiene products.

e.    Ensure that Detainees with infants are provided with diapers, including replacement diapers on demand.

### Medical Screening and Care

f.    Medically screen all Detainees at Book In at all Stations.

g.    Universally use the Alien Health Interview Questionnaire, ensuring that the Questionnaire's questions reflect the National Standards on Transport, Escort, Detention, and Search ("TEDS") requirements for delivery of medical care to Detainees, requiring CBP to:

    i.    Remain alert to medical symptoms (e.g., coughing, fever, rashes, dehydration), immediately report any observed or reported injury or illness, and timely provide appropriate medical care.

    ii.    Upon a Detainee's entry into any CBP detention cell, ask about and visually inspect for injury, illness, or physical or mental health concerns; ask about any prescription medications; communicate observed or reported injuries or illnesses to a supervisor; provide appropriate medical care in a timely manner; and document all of the foregoing in e3DM.

    iii.    Ensure Detainees' non U.S.-prescribed medication is validated by a Medically-Trained Professional or replaced with an equivalent U.S. prescription. Exceptions to this requirement may only be made by a supervisor in collaboration with a Medically-Trained Professional and based on expected duration of detention and/or elective nature of the medication. If such an exception is made, it must be recorded in e3DM.

    iv.    Monitor any Detainee who expresses, verbally or symptomatically, a desire to harm themselves.

### Food and Water

h.    Provide hot meals that are adequate to maintain detainee health at regularly scheduled meal times.

        i.      Provide snacks between regularly scheduled meal times, at least every four hours.

        j.      Provide juveniles and pregnant Detainees with (i) a snack upon Book In and a hot meal at least every six hours thereafter, at regularly scheduled meal times, and (ii) regular access to snacks, milk, and fruit juice.

        k.      Ask Detainees about religious, dietary, or medical dietary restrictions at Book In and provide meals that accommodate such restrictions.

        l.      Ensure that Detainees have constant, safe, and hygienic access to Potable Water.

### Temperature

        m.      Ensure that hold room temperatures are monitored and maintained at a reasonable and comfortable temperature between 66 and 80 degrees Fahrenheit.

7.      To the extent that Logistical Impossibility prevents Defendants from transferring Processing Complete Detainees whose Time In Detention reaches 48 hours, CBP must make every possible effort to provide Detainees with the basic human needs guaranteed by ¶ 1 of this Order.

8.      Exigent Circumstances may temporarily excuse compliance with ¶ 1 of this Order only as long as the Exigent Circumstances last.

## III.    MONITORING AND E3DM DOCUMENTATION

9.      Defendants shall track and document in e3DM when and how often a Detainee is <u>not</u> Processing Complete at 48 hours.  For each such Detainee, Defendants shall record (i) why processing is incomplete, (ii) what steps are being taken to complete processing, and (iii) what efforts are being taken to provide the Detainee with the basic human needs guaranteed to Processing Complete Detainees held for more than 48 hours, as defined in ¶ 1 of this Order.

10.     Defendants shall track and document the beginning, end, and nature of any Exigent Circumstances.

1    11.   The Court orders appropriate monitoring to ensure compliance with this Order.  Within 15 days of entry of this Order, the Parties shall attempt to agree on an appropriate and effective monitoring regime.  Within 30 days of this Order, the Parties shall submit a joint statement describing their agreements and disagreements.  The Court shall issue a Monitoring Order that implements the Parties' agreements and the Court's resolution of the Parties' disagreements.

12.   Until the Court issues the Monitoring Order, current monitoring provisions shall remain in effect—to wit:

   a.   As prescribed by the Preliminary Injunction (Order (Doc. 244) at 29), Defendants shall track and document in e3DM:

      i.   The provision of Mats, Mylar Sheets, Showers, Paper Showers, toothbrushes, toothpaste, feminine hygiene products, baby food, diapers, and meals.

      ii.  Availability of working sinks and toilets and/or other materials sufficient to meet the personal hygiene needs of detainees on a per cell per Station basis.

      iii. Cell temperatures, cell sanitation, and cleanliness.

   b.   Defendants shall preserve surveillance video recording as prescribed in the Court's February 6, 2018, Order (Doc. 331).

**IV.   EFFECTIVE DATE, BURDEN, AND NOTICE**

13.   The Order shall become effective upon entry by the Court.

14.   In any action to enforce this Order, Defendants shall bear the burden of demonstrating compliance with this Order.

15.   Defendants shall ensure that a copy of this Order is kept at all Stations in a location accessible to CBP agents.  Defendants shall ensure that all Tucson Sector CBP agents carrying out custodial duties receive and read the Order.

/ / /

/ / /

/ / /

[PROPOSED] ORDER FOR PERMANENT INJUNCTION
CASE NO. 4:15-cv-00250-TUC-DCB
sf-4196248

7

**IT IS FURTHER ORDERED** that this Court retains jurisdiction over this case for the purposes of implementing and ensuring compliance with this Order.

**SO ORDERED.**

Dated: _____  By: _____
HONORABLE DAVID C. BURY
UNITED STATES DISTRICT JUDGE