JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4824
Fax: (202) 305-7000
sarah.b.fabian@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe #1; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Chad Wolf, Acting Secretary, United States Department of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 15-cv-250-TUC-DCB <br><br> **DEFENDANTS' COMMENTS AND OBJECTIONS TO PLAINTIFF'S PROPOSED ORDER FOR PERMANENT INJUNCTION** <br><br> Date:  March 4, 2020 <br><br> Hon. David C. Bury |

Pursuant to the Court's February 19, 2020 Findings of Fact and Conclusions of Law (ECF No. 482) ("Order"), Defendants hereby file their Comments and Objections to Plaintiffs' proposed Order for Permanent Injunction (ECF No. 484).

**I. Defendants' Comments/Objections Related to "Definitions"**

a. **"Adequate Food"**

- Defendants object to the use of the term "long term detention" because it is a term of art that does not apply here.
    - In order to make this definition consistent with the Court's Order, Defendants propose that "long-term detention" should be replaced with "time in detention beyond 48-hours."
- Defendants further object to the phrase "maintaining detainee health" as applied to "adequate food" and propose that this language be removed from the definition.

b. **"Bed"**

- Defendants are concerned that the definition proposed by Plaintiffs would reduce the number of operationally feasible options available to Defendants. Defendants request that the Court permit them to fulfill the requirement to provide beds by utilizing a raised platform on which a Mat could be placed. Accordingly, Defendants request that the Court add "raised platform with a Mat" to this definition, and amend the last sentence of this definition to read: "A Mat placed on the floor is not a bed."

c. **"Blanket"** – no objection.

d. **"Book In"** – no objection.

e. **"Detainee"** – no objection

f. **"Defendants"** – no objection.

g. **"Exigent Circumstances"**

- Defendants object to the definition of "Exigent Circumstances" in the proposed order because it is vague and inconsistent with the Court's Order. In general, whether an Exigent Circumstance exists will have

to be considered on a case-by-case basis, and will be tracked by Defendants as noted below in the proposed order.

- Defendants propose that for clarity, and to make this definition consistent with the Court's Order, the definition should be amended to read: "Exigent Circumstances shall mean any extreme circumstance caused by an acute event outside of CBP's control that precludes CBP's full compliance with the terms of this Order, including, for instance, Acts of God/natural disasters; other emergencies (fires, terrorism, etc.); full or partial government shutdown; or public health concerns in a particular facility. This includes any such occurrences that may affect receiving agencies and their ability to take custody of individuals from CBP. Periodic surges that occur along the border are a chronic condition that do not constitute Exigent Circumstances."

h. **"Order"** – no objection

i. **"Logistical Impossibility"**

- Defendants note that some receiving agency locations may only intake during specific hours, i.e. 10am-2pm. For clarity, and to reflect this operational reality, Defendants propose that the following edit be made to the proposed definition: "Logistical Impossibility shall mean that CBP is unable to transfer a Processing Complete Detainee to the appropriate receiving agency because that agency is operationally closed <u>for intake</u>. In no case shall Logistical Impossibility be construed to extend beyond the next business day."

j. **"Mat"**

- As discussed above in conjunction with the proposed definition for "Bed," Defendants request that the Court permit them to fulfill the

   requirement to provide beds by utilizing a raised platform on which a Mat could be placed.
- Defendants therefore request that this definition be amended to read: "Mat shall mean a mattress or pad that can be disinfected and cleaned. A Mat shall include those currently being provided as of this Order in the Tucson Sector."

k. **"Medically-trained Professional"**
- Defendants object to this definition to the extent that it excludes some medical professionals who provide medical care at Tucson Sector Border Patrol facilities. Defendants also would propose the use of the term "Medical Professional" as that is the term used in the Court's Order.
- Defendants propose the following changes to this definition: "Medical Professional shall mean only a physician, physician assistant, nurse practitioner, certified Emergency Medical Technician, paramedic, licensed practical nurse, licensed vocational nurse, or a registered nurse."

l. **"Mylar Sheet"**
- Defendants propose that the term used here be changed to "Mylar Blanket" as opposed to "Mylar Sheet." The record of this case does not reflect the use of the term Mylar Sheet by CBP.

m. **"Paper Shower"** – no objection

n. **"Parties"** – no objection

o. **"Plaintiffs"** – no objection

p. **"Potable Water"** – no objection

q. **"Processing Complete"** – no objection

r. **"Shower"** – no objection

s. **"Time in Detention"**
- Defendants object to this definition to the extent that it is not consistent with the Court's Order and would include CBP facilities outside of Tucson Sector and might include time spend at a non-CBP facility.
- Consistent with Page 18 of the Court's Order, Defendants propose that this definition should be amended to read: "Time in Detention shall mean time in custody at a Tucson Sector Border Patrol station, calculated from book-in at a Tucson Sector Border Patrol station. Temporary book-outs to a hospital, jail, or any other facility where beds and showers are available, will not be counted as Time in Detention, and will not be included in the 48-hour calculation."

t. **"Station"**
- As proposed, this definition is potentially confusing. Defendants propose removing this definition and just referring to the facilities at issue as "Tucson Sector Border Patrol stations"

**II.     Defendants' Objections to "Conditions of Confinement"**

**Section 1**

- Defendants find footnote 1 confusing and propose that it be removed.
- Defendants object to the use of the word "assigned" in Section 1.a. That term is vague and undefined, and was not included in the Court's Order. Defendants propose that it be removed from that Section.
- Defendants object to Section 1.b to the extent that it would require a detainee to have a Shower even if he or she did not want one. For clarity, Defendants propose that Section 1.b be changed to read "Access to Showers"

5

- In Section 1.e, Defendants propose that the term "Medical Assessment" be defined as "an assessment consistent with the assessment that is currently performed at the Tucson Coordination Center on all tender age children and anyone with positive health intake interview or anyone with medical issue identified." This could be accomplished by adding this to the "Definitions" section above.
- Defendants also propose that "Medically-Trained Professional" be changed to "Medical Professional" consistent with the comment above.

**Section 2**

- Defendants object to the inclusion of this Section in its entirety. "Processing Complete" is clearly defined by the Court's Order, and contains no such presumption. Rather, Processing Complete is identified and tracked as a status/function within e3DM. It is unclear how such a presumption would operate or what effect it would have on the implementation of the Court's Order. Defendants propose that this Section be removed in its entirety.

**Section 3**

- Defendants propose that the language of this Section be changed slightly to avoid repetition, address operational realities, and avoid the use of the term "bedding" which has a different meaning in CBP's TEDS Policy. Defendants propose the following edited language for this section: "Defendants shall continue to provide Detainees with the items in ¶ 1.a-d of this Order until Detainees are transferred to another agency, repatriated, released, or otherwise no longer in the custody of Tucson Sector Border Patrol. In particular, Showers and a clean Blanket shall be made available every 48 hours."

**Section 4**

- Defendants object to the second sentence of this Section to the extent that it is unclear what obligations it places on CBP. Defendants submit that there are situations where a detainee may choose to place his or her mat in the toilet area, even though space would permit him or her not to do so. In such cases, CBP asks the Court to provide clarity regarding its obligations to prohibit a detainee from doing so. Defendants propose the inclusion of a "reasonable efforts" standard, requiring that "Where a detainee chooses to place his or her mat in a toilet area, Defendants shall make reasonable efforts to prohibit mat-sleeping in toilet areas."

**Section 5**

- Defendants object to the first and second sentences of this Section to the extent that they would require Defendants to adhere to mat capacities at all times. Defendants propose that the following language be added to the beginning of this Section to reflect this concern: "When Mats are in use inside a hold room . . ."

- Defendants also propose that the following sentence be added to this Section to allow Defendants some flexibility in manage overcrowding for detainees while they are being processed: "To prevent overcrowding, Defendants may retrieve Mats from detainees so long as no detainee is deprived of a Mat for more than twelve hours in any twenty-four hour period."

- Defendants object to the last sentence of this Section because it is internally inconsistent. First, by its definition, operational necessity is precisely what would prohibit Defendants from moving detainees between hold rooms even where space might appear to be available. Second, it is not clear what is meant by the terms "empty or underused" hold rooms. Defendants propose that the last sentence of this Section should be deleted.

7

**Section 6**

- Defendants object to this section to the extent that it contains requirements that go significantly beyond what is required by the Court's Order. The Court's Order permanently extends the requirements of the preliminary injunction, and to the extent that this Section implements that part of the Order Defendants do not object. However, the Court's Order specifically declined to conclude that Defendants are in violation of the Due Process Clause with regard to the conditions identified within this Section during the first 48 hours of confinement, nor does it express any intent to order Defendants to provide conditions that the Court found it is already providing during the first 48 hours of confinement. For the Court to order Defendants to do so, without finding Defendants in violation, is not consistent with applicable law. Therefore, the majority of this Section which seeks to have this Court order Defendants to continue existing practices for which the Court did not find Defendants in violation should be deleted.
    - Defendants therefore propose that Section 6 be deleted in its entirety except for the first sentence of that section which reads as follows: "The sleeping, personal hygiene, and medical provisions of the Preliminary Injunction (Order (Doc. 244) at 28 ¶¶ 1-4) are hereby made permanent."
- If the Court does not agree that Section 6 should be deleted in its entirety, then Defendants propose that instead of the proposed language offered by Plaintiffs, the Court should simply order Defendants to comply with their own National Standards on Transport, Escort, Detention, and Search ("TEDS") policy and any other applicable policies with regard to Sleep, Personal Hygiene, Medical Screening and Care, Food and Water, and Temperature.

- Finally, if the Court determines that it will follow Plaintiffs' proposed language for this Section, then Defendants propose the following edits to this Section so that it is consistent with Defendants' current practices as reflected in the Court's Order.
    - Section a – Defendants propose changing "Mylar Sheet" to "Mylar Blanket" consistent with the proposal above.
    - Section b – Defendants propose the addition of the language "access to personal privacy to use a paper shower" in Section b.1, and "or pre-pasted toothbrush" at the end of Section b.2.
    - Section c – Defendants propose that they be required to provide "<u>access to</u> garbage receptacles as needed"
    - Section d – Defendants propose that the language be changed to say the following: "on demand <u>or</u> ensure that all hold rooms . . ." to reflect the operational realities of how feminine hygiene products are provided
    - Section f – Defendants propose that this Section should read: "Conduct health intake interview on detainees at initial Book-In at all Tucson Sector Border Patrol holding and processing facilities, unless the detainee is being booked-in directly following release from a hospital or local health center."
    - Section g.i. – Defendants propose that the language "immediately report any observed or reported injury or illness" be removed as this language is vague and it is not clear to whom such observations or reports should be reported.
    - Section g ii – This section is needlessly burdensome. Defendants propose that this Section be changed as follows: "Upon a Detainee's

      entry into any <u>Tucson Sector Border Patrol holding or processing facility</u>."

- Section h – Defendants object to the requirement that all meals be "hot" and propose removal of that language. Defendants also object to the language "that are adequate to maintain detainee health" because it is vague, overbroad, and not found in the Court's Order. Defendants propose that this language also should be removed, or at a minimum should be replaced with the language: "that are adequate to meet acceptable dietary standards."
- Section j – Defendants propose that this Section require that food for juveniles and pregnant detainees should be provided in accordance with the *Flores* Settlement Agreement and the TEDS standards.

**Section 7**

- Defendants object to the requirement that they make "every possible effort" as this standard imposes an unreasonable burden on Defendants. Defendants propose that the standard instead be that they are required to make "reasonable efforts consistent with operational necessities."

**Section 8**

- Defendants propose that this Section be amended to add clarity, and to reflect operational realities as follows: "Exigent Circumstances may temporarily excuse compliance with ¶ 1 of this Order only as long as the Exigent Circumstances last<u>, plus a reasonable amount of time following the conclusion of the Exigent Circumstances for Defendants to return to compliance. Non-compliance proximately caused by a bona fide Exigent Circumstance shall not be considered a violation of this Order, so long as best efforts are made to cure the non-compliance as promptly as reasonably practicable</u>."

**III. Defendants' Comments/Objections to "Monitoring and E3DM Documentation"**

**Section 9**

- Defendants object to this Section as written to the extent that it would require Defendants to add tracking requirements into e3DM that would be unnecessary and extremely burdensome. Implementing the proposed tracking requirements would take agents' time away from the tasks necessary to complete processing and move a detainee out of Tucson Sector Border Patrol custody and would result in delays leading to longer times in custody. This is plainly at odds with the purposes of the Court's Order, and at the same time Plaintiffs have provided no basis to find that their proposal is reasonable or serves any useful purpose. Defendants therefore object to this Section as proposed.
    - Defendants propose that instead this Section should be amended to provide Defendants the opportunity to develop a tracking mechanism in e3DM that, as much as possible, utilizes existing data fields, and is consistent with the purposes of the Court's Order.
    - Defendants propose that this Section be amended to read as follows: "Defendants shall track, and document in e3DM, the time that an individual detainee is booked in to a Tucson Sector Border Patrol station and the time that the detainee becomes Processing Complete. Defendants shall ensure that for each individual, Tucson Sector Border Patrol is able to identify, using e3DM, if the individual is Processing Complete at 48 hours. Tucson Sector Border Patrol will ensure that detainees who have reached 48 hours in custody from book-in are Processing Complete as soon as reasonably possible."

**Section 10** – no objection

**Sections 11 and 12**

- Defendants object to these two Sections in their entirety. Defendants object to the imposition of any outside monitoring as unnecessary and unduly burdensome. Defendants specifically object to any monitoring that would require the continued preservation of video by Defendants on an indefinite basis. As the Court is aware, video preservation is extremely costly and burdensome on Defendants, and it has little to no use to Plaintiffs going forward given the resolution of this litigation. Thus there is no reason for any video preservation obligations to continue following the conclusion of this litigation.
- If the Court determines that outside monitoring is appropriate, Defendants would propose that the Court order the following:
    - Defendants will provide Plaintiffs with e3DM data on a quarterly basis for a period of 18 months following the entry of this order.
    - Plaintiffs may request class access visits, under the same terms as such visits have been provided during the course of this litigation, on a quarterly basis for a period of 18 months following the entry of this order.
    - For at least two years following the entry of this order, Defendants will conduct internal compliance evaluations performed by the TCA Policy & Compliance Division. Defendants will ensure that these compliance evaluations are designed to evaluate compliance with the Court's Order and this subsequent order.

### IV. Defendants' Comments/Objections to "Effective Date, Burden, and Notice"

**Section 13**

- Defendants object to this Section to the extent that it would require Defendants to come into immediate compliance with the terms of the Court's Order and this subsequent order. Defendants request that the Court provide a phased-in compliance period for CBP to come into compliance with the Court's Order and this subsequent order. Defendants propose that the Court allow them a period of at least 90 days from the date of this order to come into compliance, and that they be required to file a status report to update the Court regarding their effort to come into compliance every 30 days during that time period.

**Section 14**

- Defendants object to this Section in its entirety. Any motion to enforce any order of this Court should place the burden of proof to show non-compliance on the moving party. Plaintiffs have provided no basis why this burden of proof should be shifted to allow them a presumption of non-compliance.

**Section 15** – no objection

**Continued Jurisdiction**

- Defendants propose the addition of the following language to this Section: "At least seven days before any action is brought to enforce this Order, the parties should meet and confer in an attempt to resolve the allegations of non-compliance. Any motion to enforce compliance must contain a statement that the parties have met and conferred in accordance with this provision, and should explain the efforts taken by the parties to resolve the issues raised in the motion in advance of filing. No sooner than eighteen

months following the entry of this Order, Defendants may seek termination of this injunction by filing a motion with this court and establishing to the Court's satisfaction that they are in substantial compliance with the terms of this Order."

Respectfully Submitted,

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation,<br>District Court Section<br>WILLIAM C. SILVIS<br>Assistant Director | /s/ Sarah B. Fabian<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>United States Department of Justice<br>Civil Division<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 532-4824<br>Fax: (202) 305-7000<br>sarah.b.fabian@usdoj.gov<br>*Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2020, I filed Defendants' Objections to Plaintiffs' Proposed Order for Permanent Injunction on the District of Arizona's ECF website. A copy of the foregoing document will be sent electronically to all counsel of record via the ECF filing system.

<u>/s/ Sarah B. Fabian</u>
Senior Litigation Counsel

A