JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
KATELYN MASETTA-ALVAREZ
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-0120
Fax: (202) 305-7000
katelyn.masetta.alvarez@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe #1; *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>Chad Wolf, Acting Secretary, United States Department of Homeland Security, *et al.*,<br><br>    Defendants. | Case No. 15-cv-250-TUC-DCB<br><br>**DEFENDANTS' SURREPLY TO PLAINTIFFS' RESPONSE**<br><br>**CLASS ACTION**<br><br>Date:   March 26, 2020<br><br>Hon. David C. Bury |

## DEFENDANTS' SURREPLY TO PLAINTIFFS' RESPONSE

**A. Bed**. A raised platform with a mat, as Defendants propose, would cure the deficiency that the court identified as "floor sleeping." Indeed, there is no

constitutional right to comfort when sleeping. "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan,* 98 F. App'x 286, 288 (citing *Bell v. Wolfish,* 441 U.S. 520, 537; 539 (1979)). And mats atop a raised platform are an acceptable, industry-standard bed for detention facilities, even if they may not be as subjectively comfortable as a mattress.[1] *See Smith v. Brady*, No. 4:17-CV-P163-JHM, 2018 WL 1787740, at *2 (W.D. Ky. Apr. 13, 2018) ("Plaintiff's allegations that HCDC is crowded, that inmates must…sleep on mats rather than beds…are not deprivations of the minimal civilized measure of life's necessities."); *see also Roundtree v. NYC*, No. 15-CV-8198, 2015 WL 13855925, at *1–*2 (S.D.N.Y. Nov. 17, 2015) (granting the plaintiff leave to amend his complaint because his allegation that his "steel bed" was too short for his height and that his "child's play mat for a mattress" caused back pain were insufficient to overcome a motion to dismiss). The ability to use mats on raised platforms is especially important for CBP—where there is a high turnover of detainees due to the short detention duration—because mats, unlike mattresses, are easily cleanable and durable. Further, requiring CBP to provide pillows, cloth blankets, *and* cloth sheets to meet minimal due process standards lacks support in the record. The Court should instead require that CBP follow detention-industry standards for bedding, which may not necessarily include all three of these items.

---

[1] Indeed, even a simple search on Google for "jail bed" will bring up hundreds of pictures of raised platforms with mats, as this is the industry standard. https://www.google.com/search?q=jail+bed&sxsrf=ALeKk02Bh9-mgaQqGqaiQrVbPEFEiRMSzw:1585156048277&source=lnms&tbm=isch&sa=X&ved=2ahUKEwjQ8K65jrboAhVIY6wKHXTABvYQ_AUoAXoECA0QAw&biw=1468&bih=678 . For an example of traditional detention mats on a raised platform, *see, e.g.*, Bob Barker Mats [America's Leading Detention Supplier], https://www.bobbarker.com/products/mattresses.html.

B. **Exigent Circumstances.** Plaintiffs misapprehend Defendants' proposed language of "any such occurrences that may affect receiving agencies and their ability to take custody of individuals from CBP." Although capacity constraints are an example of when a receiving agency cannot accept CBP transfers, Defendants intentionally included the caveat that "periodic surges across the border" are not exigent circumstances. ECF 485 at 3, lines 12–13. Other, less frequent occurrences, however, may constitute an exigent circumstance at a receiving agency, such as Acts of God/natural disasters; other emergencies (fires, terrorism, etc.); full or partial government shutdown; or public health concerns in a particular facility. Plaintiffs and Defendants seem to agree that such exigent circumstances at Tucson Sector— as well as at receiving agencies—would fall into the "exigent circumstances" exception. *See* ECF 487, at 4, lines 13–16. Also, the parties likely agree about the scope of "public health concerns": Defendants' proposed addition states that only "*extreme* circumstances caused by an event outside of CBP's control" would constitute an exigent circumstance. Thus, public-health events that are relatively common and not "extreme," such as lice or scabies, would probably not constitute a public health concern.

C. **Medically-Trained Professional.** Plaintiffs' objection to including the medical personnel currently employed by Tucson Sector to complete medical assessments lacks support in the record. The Court found that medical assessments are performed by "medical personnel, who provide in-house medical examinations and/or applicable medical care…." ECF 482 at 30, ¶ 63. Dr. Tarantino testified that the "medical personnel" at the TCC is a team consisting of an advanced practice provider, which is a physician assistant or nurse practitioner, and two technicians, such as an EMT or medical assistant. TR Day 5: Dr. Tarantino (ECF 475) at 14, lines 10–14. These "medical personnel" provide assessments, but if an

EMT or medical technician performs the assessment, certain portions must be performed under the direct supervision of the advanced practice provider. *Id.* at 33, lines 8–14. Thus, the medical personnel team currently employed 24/7 at TCC should be included in the definition of "Medically-Trained Professional" to provide medical assessments.

**D. Time in Detention.** Plaintiffs' proposal that the Time in Detention should be calculated at time of book in at any CBP station would create a remedy beyond the scope of the Court's Findings of Fact and Conclusions of Law, which is based on conditions at the Tucson Sector. *See* ECF 482 at 1. Because Tucson Sector has no control over how much time detainees spend in custody at other sectors, adopting Plaintiffs' definition of "Time in Detention" would allow Plaintiffs to enforce this provision against Tucson Sector, even if Tucson Sector had no hand in a particular detainee's time in custody. For example, Plaintiffs' proposed language would allow Plaintiffs to move for civil contempt under this provision if an individual spends 50 hours in a different sector before being transferred to Tucson Sector—a situation that the Tucson Sector had no control over. Thus, the Court's order should be Tucson Sector specific: when a person is booked in at Tucson Station, the 48-hour window begins.

**E. Section 3.** The Court should require that CBP follow detention-industry standards for bedding, which includes a cloth blanket, but may not necessarily include a pillow and sheets. *Bell,* 441 U.S. at 537, 539 ("The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment."). The permanent injunction will set a constitutional "floor" for Tucson Sector; however, this does not prevent Tucson Sector from exceeding this threshold requirement.

F. **Section 5.** Defendants do not propose to "confiscate" mats; rather Defendants propose that, to prevent overcrowding, mats may be retrieved "so long as no detainee is deprived of a mat for more than twelve hours in a twenty-four hour period." In other words, every detainee would have a mat for at least 12 hours during each 24-hour period. This would provide individuals with a 12-hour window in which to sleep if they choose to.

G. **Sections 11 & 12.** Continuing video monitoring is unwarranted because Plaintiffs have not cast doubt on Defendants' ability or willingness to comply. The remedy for a constitutional violation must be "limited" to the "inadequacy that produced the injury in fact." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citing *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) (holding that the remedy must be limited to the "nature and scope of the constitutional violation.")). Here, because the Court found no evidence that Tucson Sector intended to create punitive conditions, nor did it find non-compliance with the November 18, 2016, Preliminary Injunction Order (ECF 244), there is no reason to believe Tucson Sector will not comply with the permanent injunction. ECF 482 at 5, lines 15–17. Thus, as the costly and burdensome remedy of providing video far exceeds the nature and scope of the constitutional violation that the Court found in this case, video monitoring is an improper remedy. However, if the Court does find that video monitoring is necessary to remedy the unconstitutional custody conditions after 48 hours, Defendants request that the monitoring be limited in scope. Defendants would propose that Defendants have the ability to choose the systems used for video monitoring so that Tucson Sector may continue upgrading its technology as needed, and that, should this Court order video monitoring to assure that the terms of the permanent injunction are being met after 48 hours, the Parties provide a separate, agreed-upon process to the Court.

5

Further, because video data is burdensome and sometimes, due to technical difficulties, its delivery may be delayed, Defendants would propose that the Court prohibit video-production issues—alone—from forming the basis of future lawsuits, motions to enforce, or civil contempt.

DATED: March 26, 2020      By: /s/ Katelyn Masetta-Alvarez

JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
KATELYN MASETTA-ALVAREZ
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-0120
Fax: (202) 305-7000
katelyn.masetta.alvarez@usdoj.gov

*Attorneys for Defendants*