**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Unknown Parties, et al., | No. CV-15-00250-TUC-DCB |
| Plaintiffs, | **ORDER FOR:** |
| v. | **PERMANENT INJUNCTION** |
| Kirstjen M Nielsen, et al., | |
| Defendants. | |

This Court has issued Findings of Fact and Conclusions of Law (Doc. 482) and entered judgment in favor of Plaintiffs (Doc. 483). Good cause appearing,

**Accordingly,**

**IT IS ORDERED** that:

## I. DEFINITIONS

The following terms and definitions shall apply to this Order:

a. "Adequate Food" shall mean food that has been evaluated and approved by a registered dietitian and/or nutritionist to meet the dietary Detention-industry Standards for maintaining Detainee health.

b. "Bed" shall mean a raised cot, bunkbed, or other similar structure with a mattress which meets accepted Detention-industry Standards. A Mat placed directly on a floor is not a Bed.

c. "Blanket" shall mean a cloth blanket, capable of being washed and reused. A Mylar Blanket is not a Blanket.

     d. "Book In" shall mean the time of a person's first arrival at any CBP station as entered in the e3 Detention Module ("e3DM").

     e. "Defendants" shall mean Chad Wolf, Acting Secretary of Homeland Security, in his official capacity; Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Protection, in his official capacity; Carla L. Provost, Chief of United States Border Patrol, in her official capacity; Roy D. Villareal, Chief Patrol Agent-Tucson Sector, in his official capacity, their respective successors in office, and the agents and employees acting under their authority and/or supervision.

     f. "Detainee" shall mean an individual in CBP's custody who is a class member in the above-captioned action.

     g. "Detention-industry Standard" shall mean standards applicable at a jail, prison or ICE-detention facility.

     h. "Exigent Circumstances" shall be narrowly construed and mean any exceptional, sudden, and unforeseeable events caused by an acute event outside of CBP's control that temporarily precludes CBP's full compliance with the terms of this Order, including, for instance, Acts of God/natural disasters; other emergencies (fires, terrorism, etc.); full or partial government shutdown; or public health concerns in a particular facility. Periodic surges that occur along the border are a chronic condition that do not constitute Exigent Circumstances.

     i. "Order" shall mean this Order.

     j. "Logistical Impossibility" shall mean that CBP is unable to transfer a Processing Complete Detainee to the appropriate receiving agency because that agency is operationally closed, such as during the night, weekends and holidays, and closures due to exigent circumstances like those described above.

     k. "Mat" shall mean a mattress or pad which can be disinfected and cleaned. A Mat shall include those currently being provided as of this Order in the Tucson Sector.

     l. "Medical Professional" shall mean an advanced practice provider (a physician, physician assistant, nurse practitioner, or a registered nurse) and medical technicians

(certified Emergency Medical Technician, paramedic, licensed practical nurse, licensed vocational nurse), working under the direct supervision of the advanced practice provider when performing medical assessments.

m. "Parties" shall mean Plaintiffs and Defendants collectively in the above-captioned action.

n. "Plaintiffs" shall mean plaintiff class members in the above captioned action.

o. "Potable Water" shall mean water safe for human consumption and so labeled.

p. "Processing Complete" shall mean that the Detainee has been processed by CBP and the receiving agency has been identified.

q. "Shower" shall mean a bath or stall in which water is showered—i.e., wet with a spray, fine stream, or drops—on the body. A Paper Shower is not a Shower.

r. "Time in Detention" shall mean time in Tucson Sector CBP custody, calculated from first Book In at a Tucson Sector Border Patrol station. Temporary book-outs to a hospital, jail, or any other facility will not be counted as Time in Detention and will not be included in the 48-hour calculation.

s. "Station" shall Tucson Sector Border Patrol Stations.

## II.   CONDITIONS OF CONFINEMENT

1. U.S. Customs and Border Protections ("CBP") shall be permanently enjoined from holding Processing Complete Detainees whose Time In Detention in Tucson Sector CBP facilities is longer than 48 hours, unless CBP provides conditions of confinement to meet Detainees' basic human needs, pursuant to Detention-industry Standards for the following:

   a. Bed and Blanket for sleeping;
   b. Showers;
   c. Adequate Food;
   d. Potable Water; and
   e. Medical assessment by a Medical Professional.

2. Defendants shall continue to provide Detainees with the items in ¶ 1a.–d. of this Order until Detainees are transferred to another agency, repatriated, released, or otherwise no longer in CBP custody in Tucson Sector Border Patrol facilities. In particular, conditions of confinement shall be provided pursuant to Detention-industry Standards for cleanliness and sanitation.

3. Defendants shall be enjoined from overcrowding hold rooms to the extent that Detainees (regardless of Time in Custody) are sleeping within toilet areas. Mat-sleeping shall be prohibited in-hold room toilet areas.

4. When Mats are in use inside a hold room, Defendants shall make every effort not to exceed hold room Mat capacities, which are based on the number of Mats that can be fully unfolded on the floor with minimal or no overlapping, and with sufficient clearance to and from the cell door, toilet(s), and drinking water. If operational necessity requires Defendants to exceed the Mat capacities, Defendants shall make every effort to limit the period during which Mat capacities are exceeded. Operational necessity shall not excuse Defendants from failing to redistribute Detainees when there are empty or underused hold rooms. To prevent overcrowding, Defendants may retrieve Mats from Detainees so long as no Detainee is deprived of a Mat for more than 12 hours in any 24-hour period.

5. The sleeping, personal hygiene, medical provisions, of the Preliminary Injunction (Order (Doc. 244) at 28 ¶¶ 1-4) are hereby made permanent.

6. Logistical Impossibility preventing transfer of a Detainee within 48 hours shall not be construed to extend beyond a third night, with the transfer occurring the next business day.

7. Exigent Circumstances may temporarily excuse compliance with ¶ 1 of this Order only as long as the Exigent Circumstances last, plus a reasonable amount of time following the conclusion of the Exigent Circumstances for Defendants to return to compliance.

### III. MONITORING AND E3DM DOCUMENTATION

8. Defendants shall track, and document in e3DM, the time that an individual Detainee is booked into a Tucson Sector Border Patrol station and the time that the Detainee becomes Processing Complete. Defendants shall ensure that for each individual, Tucson Sector Border Patrol is able to identify, using e3DM, if the individual is Processing Complete at 48 hours. Tucson Sector Border Patrol will ensure that Detainees who have reached 48 hours in custody from Book In are Processing Complete as soon as reasonably possible. Defendants shall track, and document in e3DM, the time when a Processing Complete Detainee is provided the basic human needs guaranteed for Processing Complete Detainees held for more than 48 hours, as required by ¶ 1 of this Order.

9. Defendants shall track and document the beginning, end, and nature of any Exigent Circumstances.

10. The 12-hour conditions of confinement provisions imposed by the Court's Preliminary Injunction (Order (Doc. 244), made permanent herein, *supra* ¶ 5, shall continue to be tracked, documented and monitored through the use of e3DM data. There shall be no requirement going forward for video tracking and monitoring, or preservation and exchange of video recordings.

11. Defendants will provide Plaintiffs with the above described e3DM data on a quarterly basis for a period of 24 months following the entry of this order. Plaintiffs may request class access visits, under the same terms as such visits have been provided during the course of this litigation, on a quarterly basis for a period of 24 months following the entry of this order. For at least two years following the entry of this order, Defendants will conduct internal compliance evaluations performed by the TCA Policy & Compliance Division and provide them to Plaintiffs for at least two years following the entry of this order.

### IV. EFFECTIVE DATE

12. The Order shall become effective upon entry by the Court, with Defendants having 90 days from the filing date of this Order to attain full compliance. The Defendants

shall file a status report with the Court every 30 days until full compliance is attained.

13. Defendants shall ensure that a copy of this Order is kept at all Stations in a location accessible to CBP agents. Defendants shall ensure that all Tucson Sector CBP agents carrying out custodial duties receive and read the Order.

**IT IS FURTHER ORDERED** that this Court retains jurisdiction to reopen this case and return it to the Court's active docket to enforce its Orders, the Permanent Injunction and Judgment entered in this action

**IT IS FURTHER ORDERED** that the framing of relief provided herein is no broader than required by law and the precise facts of this case. *See Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 193 (2000).

**SO ORDERED**.

Dated this 17th day of April, 2020.

Honorable David C. Bury
United States District Judge